DAVE FOX (Bar No. 254651)
Dave@FoxLawAPC.com
JOANNA FOX (Bar No. 272593)
Joanna@FoxLawAPC.com
COURTNEY VASQUEZ (Bar No. 267081)
Courtney@FoxLawAPC.com
**FOX LAW, APC**
225 W. Plaza Street, Suite 102
Solana Beach, CA 92075
Tel:  858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs and
the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALLENSTEIN, MONTGOMERY SUMMA, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>MONDELEZ INTERNATIONAL, INC., a Virginia corporation, MONDELEZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation,<br><br>Defendants. | CASE NO. 3:22-cv-6033<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs David Wallenstein and Montgomery Summa (collectively, "Plaintiffs") bring this putative class action against Mondelez International, Inc., Mondelez Global, LLC and Nabisco, Inc. (collectively, "Defendants" or "MDLZ"), individually and on behalf of all others similarly situated, and allege the following.

# I

# INTRODUCTION

1. This case concerns MDLZ's representation that Wheat Thins crackers are **"100% WHOLE GRAIN"**, meaning that *all* (or *100%*) of the grain ingredients in Wheat Thins are whole grain ingredients. They aren't.

2. One of the primary grain ingredients in Wheat Thins products is cornstarch, which is a refined grain. By definition, refined grains are not and cannot be whole grains. Thus, MDLZ's representation that all (or 100%) of the grain ingredients in Wheat Thins products are "whole grain" is patently false and utterly misleading.

*Figure 1 – Examples of Packaging Prominently Representing Wheat Thins Crackers as "100% Whole Grain"*

  

## II

## 100% WHOLE GRAINS IS A MATERIAL REPRESENTATION

3. The representation that Wheat Thins crackers are "100% Whole Grain" is a pillar of the Wheat Thins brand. The representation is prominently displayed on the front, side and back panel of Wheat Thins packages in large, bold, colorful font. The representation that Wheat Thins are "100% Whole Grain" crackers is uniform across MDLZ's marketing and labeling for the Wheat Thins product line.

*Figure 2 – Example of "100% Whole Grain" Misrepresentation Across Wheat Thins Product Line*




4. "100% WHOLE GRAIN" is a key differentiator that gives MDLZ a unique position in the cracker and snack product market. This representation increases sales and induces consumers to purchase Wheat Thins and pay more than they otherwise would for the products.

## III

## SOME GRAIN INGREDIENTS IN WHEAT THINS ARE REFINED GRAINS, NOT WHOLE GRAINS

5. There are three types of grain ingredients: whole, refined, and enriched.

   a. ***Whole grains.*** All grains begin as whole grains. A whole grain is a kernel comprised of three anatomical components – the germ, the bran and the endosperm. The bran and germ are what offer important antioxidants and good sources of fiber, B vitamins, vitamin E, magnesium, iron, zinc, and protein, and healthy fats. All three primary components of a grain

must be present in their original proportions to qualify as a whole grain ingredient.

        b.    **Refined grains.** Refined grains are processed to remove the "germ" and the "bran" components of the grain. When the bran and the germ are removed from the grain during refining processes, the grain is no longer considered "whole." Moreover, roughly 25% of the protein naturally occurring in grain is reduced during the refining process, and the grain is stripped of important nutrients.

        c.    **Enriched grains.** Enriched grains add nutrients back into the refined grain. However, not even half of the nutrients removed during the refining process are added back into an enriched grain. The nutrients that are added back in are added in different proportions than would be present in a whole grain.

6. MDLZ itself recognizes the importance of whole grains when compared to refined grains. MDLZ has publicly explained that whole grains are superior because they pack in more vitamins, minerals, fiber and protein than refined grains.[1]

7. MDLZ has also recognized that because of the benefits of whole grains over refined or enriched grains, healthcare experts and professionals around the globe are advocating that consumers incorporate whole grains in their daily diet.[2]

8. MDLZ has succeeded in its focus to capitalize on the benefits of "100% WHOLE GRAIN" when advertising, marketing and labeling Wheat Thins products to its consumers.

IV

**MDLZ'S REPRESENTATION "100% WHOLE GRAINS" ON WHEAT THINS IS FALSE AND MISLEADING**

9. Unfortunately, MDLZ has used the representation "100% WHOLE GRAIN" deceptively and has risen to the top of cracker and snack product market through this deceit. MDLZ's representations that Wheat Thins are "100% WHOLE GRAIN" is false. The grain ingredients in MDLZ's products are <u>not</u> *all* (or 100%) whole grains.

---

[1] *https://www.mondelezinternationalnutritionscience.com/~/media/mondeleznutritionscience/com/Files/PDF/plant-based-nutrition/full-articles/Article_whole_grains* (last visited Oct. 11, 2022).
[2] *Id.*

10. A prominent grain ingredient in Wheat Thins is cornstarch.

11. Cornstarch is often listed as one of the top ingredients in Wheat Thins and is a main ingredient in the Wheat Thins product formula. Cornstarch is not, however, a whole grain. Instead, cornstarch is a refined grain.

12. Corn kernels are whole grains. Cornstarch is made from only the endosperm of the corn kernel. The whole grain corn kernels are first refined to remove the germ and the bran part of the grain. Using only the endosperm of the grain, starch is extracted and dried to form a fine white powder. This is cornstarch.

13. Because cornstarch has been refined, it is not a whole grain under any definition or reasonable understanding of the term. Rather, it is a refined grain. Thus, MDLZ's representation that all (or 100%) of the grain ingredients in Wheat Thins are whole grains is false.

14. Plaintiffs and the reasonable consumer expect that a product branded "100% WHOLE GRAIN" would in fact contain the characteristics and qualities as packaged, labeled, marketed and advertised and that ***all of the grain ingredients*** **(100% of them)** would be whole grains. This means that no grain ingredient in the product would be refined or enriched.

15. This understanding of the phrase "100% WHOLE GRAIN" is common sense. The basic definition of 100 percent (100%) is "completely, entirely."[3] Thus, the general understanding of the phrase "100% WHOLE GRAIN" is that all grain ingredients in Wheat Thins consist *entirely or completely* of whole grains – not that *some* grain ingredients are whole grains and *some* grain ingredients are not.

16. MDLZ's use of "100% WHOLE GRAIN" can only be reasonably interpreted to refer to 100% (all of) the grain ingredients in the product. This understanding is consistent with guidance issued by the FDA and the position advocated by the Whole Grains Council.

17. FDA guidance provides that "products labeled with '100 percent whole grain' not contain grain ingredients other than those the agency considers to be whole grains."[4]

---

[3] *https://www.merriam-webster.com/dictionary/100%20percent* (last visited October 11, 2022).
[4] *FDA Draft Guidance for Industry: Whole Grain Label Statements (February 2006), available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/draft-guidance-industryand-fda-staff-whole-grain-label-statements* (last visited October 12, 2022).

-4-

18. The Whole Grains Council is a nonprofit consumer advocacy group with a mission to educate consumers about the definition of "whole grain" and whole grain health benefits.[5]

19. The Whole Grains Council has three different "stamps" that make it easy for consumers to identify the existence of whole grains in a product: the 100% Stamp, the 50%+ Stamp, and the Basic Stamp. The Whole Grains Council utilizes the "100% Stamp" to indicate for a given product that "**all its grain ingredients are whole grain**." (Emphasis added)[6] This is the same, common-sense definition of 100% Whole Grain applicable here.

20. In sum, MDLZ's representation that Wheat Thins are "100% WHOLE GRAIN" is false and misleading:

*A central message is that Wheat Thins are **"100% WHOLE GRAIN"***

⬇

*This representation means that **all grain ingredients** (100% of them) are whole grains*

⬇

*A prominent grain ingredient Wheat Thins is **Cornstarch***

⬇

*Cornstarch is a **refined grain***

⬇

*Thus, **NOT 100%** of the grain ingredients in Wheat Thins are whole grains*

⬇

*Therefore, MDLZ's representation that Wheat Thins are **"100% WHOLE GRAIN"** is false and misleading*

---

[5] https://wholegrainscouncil.org/about-us (last visited October 11, 2022).
[6] https://wholegrainscouncil.org/whole-grain-stamp (last visited October 11, 2022).

21. Self-declaring itself as the leading player in the global snack arena, at all times relevant, MDLZ knew, or should have known, the fact that the inclusion of cornstarch in Wheat Thins made the representation "100% WHOLE GRAIN" false and misleading, but it disregarded this knowledge in order to continue its deception and reap bigger profits.

22. Plaintiffs and other consumers have reasonably relied upon MDLZ's deceptive labeling of Wheat Thins as "100% WHOLE GRAIN" in deciding to purchase MDLZ's products. If Plaintiffs and other consumers had known the representation was false, they would not have purchased MDLZ's products or, alternatively, would have paid less for them. Therefore, Plaintiffs and other consumers similarly situated have suffered injury-in-fact as a result of MDLZ's deceptive, false and misleading practice.

23. MDLZ's false, misleading, and deceptive practices as alleged herein are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and members of the Class.

24. As a result of Defendants' false, misleading, and deceptive representations as alleged herein, Defendants injured Plaintiffs and members of the putative class ("Class"), in that Plaintiff and members of the Class:

    a. Paid a sum of money for Wheat Thins that did not have the characteristics or qualities they were represented and promised to have;

    b. Were deprived of the benefit of the bargain because the Wheat Thins products they purchased were different from what Defendants warranted;

    c. Were deprived the benefit of the bargain because the Wheat Thins products they purchased had less value than what Defendants represented;

    d. Were denied the benefit of truthful food labels.

## V

## THE PARTIES

### Plaintiff David Wallenstein (California)

25. Plaintiff David Wallenstein is, and at all relevant times alleged herein was, a resident of Martinez, California, and over the age of eighteen (18) years. Over the past several

1  years, Mr. Wallenstein purchased various flavors of Wheat Thins, including Original, Reduced
2  Fat, and Hint of Salt at grocery stores in and around Martinez, California.

3        26.    Each time Mr. Wallenstein purchased Wheat Thins, he was exposed to, read, and
4  relied upon the representation that Wheat Thins were "100% WHOLE GRAIN," which was
5  prominently displayed on the packages of the products he purchased.  Based upon this
6  representation, Mr. Wallenstein reasonably expected that *all* of the grain ingredients (100% of
7  them) in Wheat Thins were whole grains, not refined or enriched grains.  Mr. Wallenstein
8  reasonably relied on MDLZ's representation when making the decision to purchase Wheat Thins,
9  and he was actually deceived because the products he purchased contained cornstarch, which is a
10 refined grain.  At the time of his purchases, Mr. Wallenstein did not know that cornstarch was a
11 refined grain ingredient.  As a result of MDLZ's actions, Mr. Wallenstein lost money and suffered
12 injury in fact.

13       **_Plaintiff Montgomery Summa (New York)_**

14       27.    Plaintiff Montgomery Summa is, and at all relevant times alleged herein was, a
15 resident of Whitestone, New York and over the age of eighteen (18) years.  Since about 2020, a
16 few times each year, Mr. Summa purchased various flavors of Wheat Thins, including Original,
17 Reduced Fat, and Big Wheat Thins at grocery stores in and around Whitestone and College Point,
18 New York.

19       28.    Each time Mr. Summa purchased Wheat Thins, he was exposed to, read, and relied
20 upon the representation that Wheat Thins were "100% WHOLE GRAIN," which was prominently
21 displayed on the packages of the products he purchased.  Based upon this representation, Mr.
22 Summa reasonably expected that *all* of the grain ingredients (100% of them) in Wheat Thins were
23 whole grains, not refined or enriched grains.  Mr. Summa reasonably relied on MDLZ's
24 representation when making the decision to purchase Wheat Thins, and he was actually deceived
25 because the products he purchased contain cornstarch, which is a refined grain.  At the time of his
26 purchases, Mr. Summa did not know that cornstarch was a refined grain ingredient.  As a result of
27 MDLZ's actions, Mr. Summa lost money and suffered injury in fact.

28       29.    At the time of each purchase, Plaintiffs reasonably believed that MDLZ's products

-7-

did in fact have the claimed characteristics as labeled and advertised.

30. Plaintiffs relied on the misrepresentation alleged herein in making their decision to purchase Wheat Thins and they would not have purchased Wheat Thins if they had known they were not "100% WHOLE GRAIN." Plaintiffs were injured in fact and lost money as a result of MDLZ's improper conduct.

31. Alternatively, each of the Plaintiffs would not have paid as much as they did for Wheat Thins if they had known they were not "100% WHOLE GRAIN." Plaintiffs were injured in fact and lost money as a result of MDLZ's improper conduct.

32. Therefore, each of the Plaintiffs have suffered injury in fact and have standing to represent all other consumers similarly situated that reside in each of their respective States that purchased sufficiently similar Wheat Thins products that are labeled "100% WHOLE GRAIN," but contain the refined grain ingredient cornstarch. The below list of products (in all sizes) are the Wheat Thins products at issue in this case:

- Original Wheat Thins
- Reduced Fat Wheat Thins
- Sundried Tomato & Basil Wheat Thins
- Big Wheat Thins
- Ranch Wheat Thins
- Hint of Salt Wheat Thins
- Cracked Pepper & Olive Oil Wheat Thins

33. Each of these Wheat Thins products are sufficiently similar to the Wheat Thins products that Mr. Wallenstein and Mr. Summa purchased. Each product is a cracker and snack product. They are all comprised of the same primary ingredients and differ only in flavor and related sub-ingredients. Importantly, MDLZ makes the same uniform "100% WHOLE GRAIN" misrepresentation on every single one of these Wheat Thins products. As a result, all Wheat Thins products at issue in this case uniformly suffer from the same misrepresentation that Wheat Thins are 100% WHOLE GRAIN, when in fact this representation is false and misleading because the products all contain the refined grain cornstarch.

***Defendants MDLZ***

34. Plaintiffs are informed and, on that basis, believe that Defendant Mondelez International, Inc. is a Virginia corporation with its headquarters in Deerfield, Illinois. Mondelez International, Inc. is the parent company of Nabisco, the brand under which Wheat Thins products are sold. Wheat Thins are distributed by Mondelez Global, LLC, also a wholly-owned subsidiary of Mondelez International, Inc. Collectively, these Defendants are referred to as "MDLZ."

35. MDLZ markets and sells Wheat Thins throughout the United States, including sales in California and New York.

36. At all times relevant herein, MDLZ and its subsidiaries, parents, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of MDLZ, and at all times relevant herein, each were acting within the course and scope of that agency and employment.

37. Whenever reference in this Class Action Complaint is made to any act by MDLZ, including its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of MDLZ committed, knew of, performed, authorized, ratified, and/or directed that act or transaction on behalf of MDLZ while actively engaged in the scope of their duties.

## VI

## JURISDICTION AND VENUE

38. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from MDLZ; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interests and costs.

39. Alternatively, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

40. This Court has personal jurisdiction because MDLZ's contacts with the forum are continuous and substantial, and Defendants intentionally availed themselves of the markets within

1  California through marketing and sales of Wheat Thins to consumers, including Plaintiffs.
2  Moreover, MDLZ directed its advertising and marketing efforts to California.

3      41.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because MDLZ
4  engages in continuous and systematic business activities within the State of California. Moreover,
5  venue is proper because a substantial portion of the underlying transactions and events complained
6  of herein occurred and affected entities and persons, including Plaintiff David Wallenstein, in this
7  judicial district. MDLZ has received substantial compensation from such transactions and
8  business activity in this judicial district, including as the result of thousands of purchases of Wheat
9  Thins products. Further, MDLZ's Wheat Thins products inhabit and/or may be found in this
10 judicial district, and the interstate trade and commerce described herein is and has been carried out
11 in part within this judicial district.

## VII

## CLASS ALLEGATIONS

14     42.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil
15 Procedure 23(b)(3) on behalf of the following Multi-State Class or, in the alternative, Single-State
16 Classes of California and New York that all have similar laws across the causes of actions alleged
17 herein.

**Multi-State Class**

All persons that reside in the states of California and New York who purchased Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained cornstarch, from October 13, 2018 until the date the notice is disseminated.

**Single-State Classes (*In the Alternative*)**

*California.* All persons that reside in California who purchased Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained cornstarch, from October 13, 2018 until the date the notice is disseminated.

*New York.* All persons that reside in New York who purchased Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products

1 contained cornstarch, from October 13, 2018 until the date the notice is disseminated.

2   43.   Excluded from the Class are: (i) Defendants and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

   44.   Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

   45.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

   46.   **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** Plaintiffs are informed and believe, and on that basis allege, that members of the class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of potentially millions of consumers dispersed throughout the States of California and New York, and the classes of each State likewise consists of hundreds of thousands or millions of purchasers throughout each respective State. Accordingly, it would be impracticable to join all individual members of the Class before the Court.

   47.   **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

   a.   Whether the representation "100% WHOLE GRAIN" is false and misleading given the inclusion of the refined grain cornstarch in the products;

   b.   Whether Defendants made material representations in the packaging, marketing and sale of Wheat Thins regarding "100% WHOLE GRAIN";

   c.   Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling Wheat Thins as "100% WHOLE GRAIN";

   d.   Whether Defendants violated the applicable consumer protection state statutes;

   e.   Whether Defendants committed a breach of express warranty;

-11-

1  f.  Whether Plaintiffs and the Class members have sustained damage as a result of Defendants' unlawful conduct; and

g.  The proper measure of damages sustained by Plaintiffs and Class members.

48.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because Plaintiffs, like the Class members, purchased Defendants' falsely packaged, labeled and advertised Wheat Thins products and Plaintiffs and the class members were exposed to the same misrepresentation that the products contain "100% WHOLE GRAIN" when a primary grain ingredient in the products is actually a refined grain. Thus, Plaintiffs' claims arise from the same events, practices, and/or course of conduct that gives rise to the claims of the other class members. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class members sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

49.  **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the members of the Class Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect the interests of members of the Class and have retained counsel experienced and competent in the prosecution of complex cases including complex class action questions that arise in consumer protection litigation.

50.  **Predominance and Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy because it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior than any difficulties that might be argued with regard to

the management of this class action. This superiority makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

51. Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

52. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

VII

**CAUSES OF ACTION**

COUNT I

**Violation of the California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

53. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth verbatim herein.

54. Plaintiff David Wallenstein brings this Count individually and on behalf of all other California consumers.

55. Plaintiff brings this claim under the Consumer Legal Rights Act, Civil Code section 1750, *et seq.*, (the "CLRA"), on behalf of themselves individually and the Class against Defendant.

56. At all times relevant hereto, Plaintiff and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

57. At all times relevant hereto, Defendants constituted a "person," as defined in Civil Code section 1761(c).

-13-

58. At all times relevant hereto, the Wheat Thins products manufactured, marketed, advertised, and sold by Defendants constituted "goods," as defined in Civil Code section 1761(a).

59. The purchases of Wheat Thins products by Plaintiff and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

60. Defendants disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that Wheat Thins are "100% WHOLE GRAIN", when they are not.

61. Defendants' representations violate the CLRA in at least the following respects:

   a. In violation of Civil Code § 1770(a)(5), Defendants represented that Wheat Thins products have characteristics, ingredients, uses, and benefits that they do not have;

   b. In violation of Civil Code § 1770(a)(7), Defendants represented that Wheat Thins products are of a particular standard, quality, or grade, which they are not;

   c. In violation of Civil Code § 1770(a)(9), Defendants advertised Wheat Thins with an intent not to sell the products as advertised; and

   d. In violation of Civil Code § 1770(a)(16), Defendants represented that the subject of the sale of Wheat Thins has been supplied in accordance with a previous representation when it has not.

62. Defendants knew or should have known that Wheat Thins are not "100% WHOLE GRAIN" because Defendants manufactured, marketed and sold Wheat Thins without that characteristic that they claimed. Defendants knew or should have known that this representation about Wheat Thins as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

63. Defendants' actions as described herein were done willfully and knowingly with conscious disregard of Plaintiff's and the Class's rights and were wanton and malicious.

64. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants are still representing that Wheat Thins have characteristics which they do not have.

65. Pursuant to Civil Code section 1782, Plaintiffs notified Defendants in writing by

mail, return receipt requested, of the alleged violations of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  A copy of the written notice provided to Defendants is attached hereto as **Exhibit A**.

66. With respect to those violations of Civil Code § 1770 as to which notification was received and accepted by Defendants, Defendants failed to respond to Plaintiff's timely demands within 30 days of Plaintiff's notice.  Accordingly, Plaintiff hereby requests damages from Defendants as provided for in Civil Code § 1780 including:

 a. actual damages in excess of the jurisdictional limits of this Court;
 b. statutory damages allowable under Civil Code § 1780;
 c. punitive damages;
 d. attorneys' fees;
 e. court costs and interest; and
 f. any other relied which the court deems proper.

67. Pursuant to § 1780(d) of the CLRA, attached as **Exhibit B** is an affidavit showing that this action was commenced in a proper forum.

## COUNT II

### Breach of Express Warranty

### (Cal. Com. Code § 2313)

68. Plaintiff re-alleges and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

69. Plaintiff David Wallenstein brings this Count individually and on behalf of all other California consumers.

70. Defendants promised and expressly warranted that its Wheat Thins products are "100% WHOLE GRAIN."

71. This written promise and affirmation of fact constitutes express warranties that became part of the basis of the bargain between Plaintiff and the members of the Class on the one hand and Defendants on the other.  Plaintiff and Class members reasonably relied upon

-15-

Defendants' affirmations of fact when they decided to buy Defendants' products.

72.   All conditions precedent to Defendants' liability under the contract, including notice, have been performed by Plaintiff and the Class. (*See* Ex. A.)

73.   Defendants have breached the terms of its express warranties by failing to provide Wheat Thins products as warranted.

74.   As a direct and proximate result of Defendants' breach of its warranties, Plaintiff and others similarly situated have been damaged in the amount to be proven at trial.

## COUNT III

## New York Consumer Protection from Deceptive Acts and Practices

## (N.Y. Gen. Bus. Law § 349)

75.   Plaintiff re-alleges and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

76.   Plaintiff Montgomery Summa is a consumer of Defendants' goods and brings this Count individually and on behalf of all other New York consumers.

77.   New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce." "Deceptive acts or practices" are those that are likely to mislead a reasonable consumer acting reasonably under the circumstances.

78.   Defendant's conduct as alleged herein constitutes deceptive acts or practices under N.Y. Gen. Bus. Law § 349. MDLZ's conduct was materially misleading to Plaintiff and the class. During the class period, MDLZ carried out a plan, scheme and course of conduct which was consumer oriented. The injuries to Plaintiff and the Class members were foreseeable to MDLZ.

79.   Defendants' conduct also violated N.Y. Agric. & Mkts. Law § 201.

80.   Defendants intended that Plaintiff and the Class members would rely on the unlawful, deceptive and/or unfair business acts and practices alleged herein. In the alternative, Defendants knew or should have known that Wheat Thins did not have the claimed characteristics as alleged herein because Defendants manufactured, marketed and sold the MDLZ products without those claimed characteristics. Defendants knew or should have known that their representations about the MDLZ products as described herein are deceptive and that

these statements or misleading packaging would be relied upon by Plaintiffs and the members of the Class.

81. Defendants' actions as described herein were done willfully and knowingly with conscious disregard of Plaintiff's and the Class's rights and were wanton and malicious.

82. Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' Wheat Thins products.

83. As a direct and proximate cause of Defendants' conduct, Plaintiff and members of the class have been aggrieved as alleged herein. They were deceived by Defendants' conduct and would not have purchased the products or would have paid less for them if Defendants had disclosed the truth about the products. Plaintiffs are therefore entitled to all available remedies under N.Y. Gen. Bus. Law § 349(h), including actual damages sustained by Plaintiff and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, which includes actual damages or fifty dollars ($50) per violation, whichever is greater, or both. Plaintiff and the Class are also entitled to civil penalties and any other relief this Court deems proper.

84. Plaintiffs shall also be entitled to reasonable attorneys' fees and costs in pursuing this action. N.Y. Gen. Bus. Law § 349(h).

## COUNT IV

### New York Consumer Protection from False Advertising

### (N.Y. Gen. Bus. Law § 350)

85. Plaintiff re-alleges and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

86. MDLZ has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

87. As a result of MDLZ's false advertising, Plaintiff and the Class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for

the false and deceptive advertising, and which will continue to occur.

88. Plaintiff Montgomery Summa seeks to recover actual damages on behalf of himself and the Class or five hundred dollars ($500) per violation, whichever is greater, or both, three times actual damages and reasonable attorney fees.

## COUNT V

## Breach of Express Warranty

## (N.Y. UCC § 2-313)

89. Plaintiff re-alleges and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

90. Plaintiff Montgomery Summa brings this Count individually and on behalf of all other New York consumers.

91. MDLZ is and was at all relevant times a merchant with respect to the products at issue in this case.

92. Defendants promised and expressly warranted that Wheat Thins products are "100% WHOLE GRAIN."

93. Each time Plaintiff purchased a Wheat Thins product, these warranties formed the basis of the bargain between Plaintiff and the members of the Class on the one hand and Defendants on the other. Plaintiff and Class Members reasonably relied upon the Defendants' affirmations of fact when they decided to buy Defendant's Products.

94. All conditions precedent to Defendants' liability under the contract, including notice, have been performed by Plaintiffs and the Class. (*See* Ex. A (notice of action by nationwide class that included New York consumers).)

95. Defendants have breached the terms of its express warranties by failing to provide Wheat Thins as warranted.

96. As a direct and proximate result of Defendants' breach of its warranties, Plaintiff and others similarly situated have been damaged in the amount to be proven at trial.

/ / /

/ / /

**PRAYER**

**WHEREFORE,** Plaintiffs, individually, and on behalf of all others similarly situated, pray for relief pursuant to each cause of action set forth in this Class Action Complaint, as follows:

A. Declaring that this action can be maintained as a class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B. Ordering actual and compensatory damages for Plaintiffs and the Class;

C. Ordering statutory damages allowable under California Civil Code § 1780, N.Y. Gen. Bus. L. §§ 349, 350 and any other statute as applicable;

D. Ordering statutory penalties for all Counts for which they are available;

E. Ordering Defendants to pay attorneys' fees and litigation costs;

F. Awarding punitive, exemplary and/or trebling damages;

G. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H. Ordering such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all causes of action and issues so triable.

Dated: October 13, 2022                     **FOX LAW, APC**

*/s/ Courtney Vasquez*
COURTNEY VASQUEZ
courtney@foxlawapc.com
*Attorneys for Plaintiffs*

-19-

CLASS ACTION COMPLAINT