1   Mark C. Goodman, State Bar No. 154692
     mark.goodman@bakermckenzie.com
2   Christina M. Wong, State Bar No. 288171
     christina.wong@bakermckenzie.com
3   Two Embarcadero Center, 11th Floor
    San Francisco, CA  94111
4   Telephone:  +1 415 576 3000
    Facsimile:   +1 415 576 3099
5
6   Attorneys for Defendants
    MONDELĒZ INTERNATIONAL, INC.,
    MONDELĒZ GLOBAL, LLC and NABISCO, INC.

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                      **SAN FRANCISCO DIVISION**

11

12   DAVID WALLENSTEIN, MONTGOMERY          Case No. 3:22-cv-06033-VC
     SUMMA, individually and on behalf of all others
13   similarly situated,                    **REPLY IN SUPPORT OF MOTION TO**
                                            **DISMISS CLASS ACTION**
14                          Plaintiffs,      **COMPLAINT**

15         vs.                              **[Fed. R. Civil P. 12(b)(6)]**

16   MONDELĒZ INTERNATIONAL, INC., a Virginia   Date:      January 19, 2023
     corporation, MONDELĒZ GLOBAL, LLC, a       Time:      10:00 a.m. (Via Zoom)
17   Delaware limited liability company, and NABISCO,   Courtrm:   4, 17th Floor
     INC., a New Jersey corporation             Before:    The Hon. Vince Chhabria
18
                            Defendants.
19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

## TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................................................................ 1

II.  DISCUSSION .................................................................................................... 2

    A.  The Deceptive Practices, False Advertising Claims And Warranty Claims Fail............ 2

        1.  "100% Whole Grain Wheat Thins" is not Inaccurate ........................................... 2

        2.  Plaintiffs' Attempt to Re-Write the Product Packaging is Improper ................... 3

        3.  Any Ambiguity Regarding "100% Whole Grain Wheat Thins" would be Resolved by the Entire Packaging, Including the Ingredient List ........................ 5

    B.  The Court Should Strike Plaintiffs' Defective Class Claims ................................. 7

    C.  The Court Lacks Jurisdiction To Adjudicate Non-Resident Plaintiffs' Claims............. 8

III.  CONCLUSION ................................................................................................. 10

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ...................................................9

*Allen v. ConAgra Foods, Inc.*,
   No. 3:13-cv-01279-WHO, 2018 U.S. Dist. LEXIS 208196 (N.D. Cal. Dec. 10,
   2018) ...................................................9

*Andrade-Heymsfield v. Danone US, Inc.*,
   No. 19-CV-589-CAB-WVG, 2019 U.S. Dist. LEXIS 137667 (S.D. Cal. Aug.
   14, 2019) ...................................................10

*Brazil v. Dell, Inc.*,
   585 F.Supp.2d 1158 (N.D. Cal. July 7, 2008) ...................................................8

*Bristol-Myers Squibb v. Sup. Ct.*,
   137 S.Ct. 1773 (2017) ...................................................8, 9

*Carpenter v. PetSmart, Inc.*,
   441 F.Supp.3d 1028 (S.D. Cal. 2020) ...................................................8

*Cheslow v. Ghirardelli Chocolate Co.*,
   445 F.Supp.3d 8 (N.D. Cal. 2020) ...................................................7

*Clark v. Perfect Bar, LLC*,
   No. C 18-06006 WHA, 2018 U.S. Dist. LEXIS 219487, 2018 WL 7048788
   (N.D. Cal. Dec. 21, 2018) ...................................................6

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ...................................................6

*Gaines v. Gen. Motors, LLC*,
   No. 17-cv-1351-LAB (JLB), 2018 U.S. Dist. LEXIS 133019 (S.D. Cal. Aug. 7,
   2018) ...................................................9

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ...................................................7

*Loomis v. Slendertone Distribution, Inc.*,
   420 F.Supp.3d 1046 (S.D. Cal. 2019) ...................................................1, 6

*Nextdoor.com, Inc. v. Abhyanker*,
   No. C-12-5667 EMC, 2013 U.S. Dist. LEXIS 101440 (N.D. Cal. July 19, 2013) ......................4

*O'Handley v. Padilla*,
    579 F.Supp.3d 1163 (N.D. Cal. 2022) ........................................................9

*Pelayo v. Nestle USA, Inc.*,
    989 F.Supp.2d 973 (C.D. Cal. 2013) .........................................................7

*Reitman v. Champion Petfoods USA, Inc.*,
    No. CV 18-1736-DOC, 2018 U.S. Dist. LEXIS 221284 (C.D. Cal. Oct. 10,
    2018) ............................................................................................................8

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
    No. 16-CV-06391-BLF, 2018 U.S. Dist. LEXIS 54850 (N.D. Cal. Mar. 30,
    2018) ............................................................................................................8

*Sanders v. Apple, Inc.*,
    672 F.Supp.2d 978 (N.D. Cal. 2009) .........................................................7

*Shiry v. Moore*,
    No. C 94-1485 .........................................................................................4, 5

*Sloan v. GM LLC*,
    No. 16-cv-07244-EMC, 2019 U.S. Dist. LEXIS 210191 (N.D. Cal. Dec. 5,
    2019) ............................................................................................................9

*Truxel v. General Mills Sales, Inc.*,
    No. C 16-04957 JSW, 2019 U.S. Dist. LEXIS 144871 (N.D. Cal. Aug. 13,
    2019) ........................................................................................................1, 7

*Williams v. Gerber*,
    552 F.3d 934 (9th Cir. 2008) ..................................................................6, 7

*Yumul v. Smart Balance, Inc.*,
    733 F.Supp.2d 1117 (C.D. Cal. 2010) .......................................................7

## **Other Authorities / Statutes**

FDA Draft Guidance For Industry and FDA Staff: Whole Grain label Statements
    (Feb. 17, 2006), available at https://www.fda.gov/regulatory-
    information/search-fda-guidance-documents/draft-guidance-industry-and-fda-
    staff-whole-grain-label-statements ...........................................................5

Fed. R. Civ. P. 12(f) ..................................................................................................7

Fed. R. Civ. P. 23 (c)(1)(A) ......................................................................................7

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1

## I.    INTRODUCTION

2          Despite opposing Defendants' motion to dismiss, the plaintiffs do not dispute that Wheat

3   Thins are made from whole grain wheat, that the **only** whole grain statement on Wheat Thins

4   packaging is "100% **Whole Grain Wheat** Thins" or that cornstarch is prominently listed as an

5   ingredient on the packaging so that any consumer can easily see that the product contains cornstarch,

6   if that were truly important to their purchasing decision.   Because there are no incorrect or

7   misleading statements on the packaging of the products allegedly purchased by the plaintiffs, their

8   deceptive practices, false advertising and breach of warranty claims cannot survive.

9          Desperate to create a misleading statement where none exists, the plaintiffs allege that "100%

10  Whole Grain Wheat Thins" means that **any and all** grains used in Wheat Thins -- not just the wheat

11  -- are whole grains.   Using that improper foundation, the plaintiffs argue that the statement is false

12  because Wheat Thins contain cornstarch.   But this proposed reading of the label improperly

13  disregards the context in which the statement is used.   As demonstrated by the packaging images

14  used in the complaint, the "100% Whole Grain" statement is **always** used in conjunction with and

15  preceding the word "wheat." (Dkt. 1 at ¶2, Fig. 1.)   Moreover, the statement is always surrounded

16  by images of wheat stalks and wheat grains, further confirming that it refers specifically to wheat

17  and not "any and all" grain ingredients in the product.   Plaintiffs also ignore the ingredient list on

18  the Wheat Thins packaging, which prominently discloses cornstarch as an ingredient, dispelling any

19  purported confusion as to whether the product includes only whole grain ingredients.

20         While the plaintiffs argue they should be allowed to disregard the context of the product label

21  and ingredient list, the law is clear that the Court must view "representations in their complete

22  context to determine whether Defendant's advertisements would deceive a reasonable consumer"

23  and cannot disregard express disclosures on ingredient lists, as the plaintiffs urge.   *See Loomis v.*

24  *Slendertone Distribution, Inc*., 420 F.Supp.3d 1046, 1082 (S.D. Cal. 2019); *Truxel v. General Mills*

25  *Sales, Inc*., No. C 16-04957 JSW, 2019 U.S. Dist. LEXIS 144871, at *1, 4 (N.D. Cal. Aug. 13,

26  2019).   When viewed in context, no reasonable consumer could be deceived into believing that the

27  Wheat Thins grain statement was meant to apply to corn ingredients, particularly since the ingredient

28  list on the packaging expressly lists cornstarch as a "prominent" ingredient.   (Dkt. 1 at 10.)

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1

CASE NO. 3:22-cv-06033-VC
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

Because there is no misrepresentation on the Wheat Thins packaging at issue and because no reasonable consumer would be deceived by the statements about which the plaintiffs complain given the context of the labels at issue, the plaintiffs' claims should be dismissed in their entirety with prejudice. If the Court somehow finds that these claims should not be dismissed for failure to state a claim, it should at the very least narrow the claims and issues in this dispute by striking the class claims and dismissing non-resident plaintiffs' claims for lack of personal jurisdiction. (Dkt. 21.)

## II. DISCUSSION

### A. The Deceptive Practices, False Advertising Claims And Warranty Claims Fail

#### 1. "100% Whole Grain Wheat Thins" is not Inaccurate

Plaintiffs do not dispute that Wheat Thins products are made with 100% whole grain wheat. Nor do the plaintiffs dispute the *only* time the phrase "100% Whole Grain" appears on Wheat Thins products is when it is used directly preceding and in conjunction with the word "wheat." Thus, the "100% Whole Grain Wheat Thins" statement is accurate and the plaintiffs have not identified any false or misleading statement on which they could base a false advertising or deceptive practices claim. On this basis alone, the Court should dismiss the plaintiffs' claims with prejudice.

Ignoring this plain reading of the grain statement, the plaintiffs insist that the Court should ignore the canons of construction and read the phrase "100% Whole Grain" in isolation to mean that any and all of the grains used in Wheat Thins are whole grains. Of course, the packaging does not refer to "100% Whole *Grains*" (plural) or otherwise indicate that the "100% whole" statement encompasses more than one grain, as it would have to in order to be grammatically correct as interpreted by the plaintiffs. And if the grain statement were meant to be a standalone phrase indicating that all grains in Wheat Thins are whole grains, as the plaintiffs contend, the statement would have to be: "*Made With* 100% Whole Grains;" "*Contains Only* Whole Grains;" or "100% *Of The Grains* Are Whole Grain." There is no such reference to multiple grains being whole in any of the product packaging alleged by the plaintiffs. As a matter of basic English grammar, syntax and reading comprehension, "100% Whole Grain Wheat Thins" refers to a single grain -- wheat -- and represents that grain is 100% whole. This is a true and accurate statement.

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1          **2.      Plaintiffs' Attempt to Re-Write the Product Packaging is Improper**

2          Plaintiffs baldly argue that the labeling statement cannot be read to describe the wheat in

3   Wheat Thins because "wheat" is in the product's name.  In essence, the plaintiffs urge the Court to

4   disregard the context of the word "wheat," and all the images of wheat on the packaging, because

5   wheat is part of the product's name.  Based on this reading, the plaintiffs leap to the conclusion that,

6   if Defendants intended to indicate that Wheat Thins contain whole grain wheat, they should have

7   labeled the product "100% Whole Grain ***Wheat*** Thins."  (Dkt. 24 at 6.)  To support this position, the

8   plaintiffs cite (1) the product packaging of Triscuit products and (2) a motion that Nabisco filed in

9   2012 to dismiss another frivolous class action relating to Wheat Thins.  Of course, these documents

10  were not part of the pleadings.  As discussed in the concurrently filed opposition to the plaintiffs'

11  request for judicial notice, documents outside of the pleadings cannot be considered on a motion to

12  dismiss.  Thus, the plaintiffs' gambit fails.  Even if the Court were to consider these extraneous

13  documents, they would not support the plaintiffs' unreasonable reading of the packaging.

14         Plaintiffs first cite to the packaging of Triscuit[1] -- an entirely different product sold under a

15  different brand -- to argue that, if the Wheat Thins grain statement were intended to apply exclusively

16  to wheat, Defendants would have used the same language that appears on Triscuit packaging:

17  "Baked with 100% Whole Grain Wheat." (Dkt. 24 at 6.)  Not so.  As an initial matter, the issue here

18  is whether the phrase "100% Whole Grain Wheat Thins" is false or misleading as to the ingredients

19  in Wheat Thins, not Triscuit or any other products.  How Triscuit products are labeled has no bearing

20  on how the labels of an entirely different product should be read or if that product's labels are

21  accurate.  Moreover, even if the Triscuit label were somehow relevant to show what Defendants

22  intended when labeling Wheat Thins, the Triscuit and Wheat Thins grain statements are not

23  inherently inconsistent, as the plaintiffs claim.  For example, both products specifically state that

24  they contain "100% Whole Grain ***Wheat***."  (*Compare* "100% Whole Grain Wheat Thins" and

25  "Baked with 100% Whole Grain Wheat.")  Indeed, the Triscuit label confirms that "100% Whole

26  Grain" (singular) must be read to modify "wheat" in order to be grammatically correct.

27

28

---

[1] Plaintiffs repeatedly refer to the product as "Triscuits" but the product name is "Triscuit."

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

3

CASE NO. 3:22-cv-06033-VC
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

Plaintiffs next cite to a motion to dismiss that Nabisco filed in another (but equally frivolous) lawsuit involving Wheat Thins to claim that Defendants "agree" that "100% Whole Grain" means that all of the grain ingredients in Wheat Thins are whole grain.  Nonsense.  In *Garcia v. Nabisco*, the plaintiff unsuccessfully alleged that phrase "100% Whole Grain" was misleading because Wheat Thins contain ingredients other than whole grains, including "salt, baking soda, cornstarch, oil and coloring."  (Declaration of Christina M. Wong in Opposition to Plaintiffs' Request for Judicial Notice ("Wong Decl."), Ex. A at 1.)  Plaintiffs ignore the fact that the issue in *Garcia* was not what type of whole grains are used in Wheat Thins but whether there were non-grain ingredients in the products.  (*Id.*; *see also* Dkt. 24-3.)  Nabisco's statements from an entirely different litigation, made in response to an entirely different argument and submitted in an entirely different context, do not support the plaintiffs' claims in this case.  And they certainly do not constitute a binding admission by Nabisco that the plaintiffs' grammatically incorrect reading of the grain statement is reasonable. *See Nextdoor.com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 U.S. Dist. LEXIS 101440, at *29 (N.D. Cal. July 19, 2013) ("While an admission in a prior lawsuit may be admissible evidence in a later proceeding, it is not a binding admission, and thus does not control a motion to dismiss" (internal cites omitted)); *Shiry v. Moore,* No. C 94-1485 SBA, 1995 U.S. Dist. LEXIS 22054, at *19 (N.D. Cal. Mar. 9, 1995) (judicial notice of a superseded pleading is inappropriate because the allegations are not binding admissions).  Perhaps more egregiously, the plaintiffs omit the full quote from *Garcia*, which makes clear that the statement in that case refers to the ***wheat*** flour ingredients in Wheat Thins.  (Dkt. 24-3 ("the '100% whole grain' label merely indicates that the only type of ***grain*** used in the crackers is 'whole grain' ***as opposed to non-whole grains used in enriched flour***") (emphasis added).)  Thus, the statement in *Garcia* is consistent with Defendants' position here that the whole grain statement refers exclusively to wheat and does not apply to non-wheat ingredients.

In a further attempt to bolster their strained interpretation of "100% Whole Grain Wheat Thins," the plaintiffs claim that their reading is supported by: (1) draft guidance from the FDA on whole grain statements and (2) recommendations by Oldways Whole Grains Council.  But these documents do not constitute authority for the plaintiffs' position.  In both their complaint and their Opposition, the plaintiffs gloss over the fact that the FDA guidance on which they rely is not federal

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

authority; it is a **draft** statement that FDA released over fifteen years ago but never finalized or adopted.  (Dkt. 1 at 4, n.5.)[2]  The draft guidance clearly states that it is a "draft," is "[n]ot for implementation" and "[c]ontains non-binding recommendations."  (*Id.*)  Even if the draft guidance statement had been finalized, it would not be binding: it prominently states that it "does not create or confer any rights for or on any person and does not operate to bind FDA or the public" and "do[es] not establish legally enforceable responsibilities."  (*Id.*)  As if that were not enough to disregard their arguments, the plaintiffs do not allege that they read or relied on the draft FDA document in interpreting the Wheat Thins packaging.  Nor do they explain how consumers would have read and relied on the 2006 guidance in purchasing Wheat Thins when the draft states it is expressly "intended for the regulated food industry and FDA personnel," not consumers.

Plaintiffs' supposed reliance on the Oldways Whole Grains Council website is likewise no help to their case.  Oldways Whole Grains Council is a private "consumer advocacy group" that seeks to "educate consumers" about whole grains.  (Dkt. 1 at ¶18, n.5 & n.6.)  That organization created a "stamp" for manufacturers to use on product packaging to help consumers identify products that contain whole grain ingredients, including a "50%+ Stamp," which indicates at least half of the grain ingredients are whole grain, and a "100% Stamp," which indicates all of the grain ingredients in the product are whole grains.  (Dkt. 1 at ¶19.)  Plaintiffs suggest, without explanation, that the Wheat Thins packaging should be held to the Oldways "100% Stamp" standard (Dkt. 24 at 2-3; Dkt. 1 at ¶19) even though  none of the Wheat Thins products bear the "100% Stamp."  Because the product packaging at issue in this case does not include an Oldways Whole Grain Council stamp, the Oldways Whole Grain Council's standards and recommendations have no bearing on the Court's analysis of the "100% Whole Grain Wheat Thins" statement in this litigation.

### 3.   Any Ambiguity Regarding "100% Whole Grain Wheat Thins" would be Resolved by the Entire Packaging, Including the Ingredient List

Disregarding the myriad authority requiring product labels to be read as written, in full and in context to determine whether a reasonable consumer would be deceived (*see, e.g.,* Dkt. 21. at 7),

---

[2] The complaint cites to the FDA Draft Guidance For Industry and FDA Staff: Whole Grain label Statements (Feb. 17, 2006), available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/draft-guidance-industry-and-fda-staff-whole-grain-label-statements.

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

the plaintiffs argue that the Court should ignore the remainder of the Wheat Thins packaging, including the part expressly disclosing cornstarch as an ingredient.  Of course, courts addressing product statements hold that "[i]n determining whether a reasonable consumer would have been misled… context is crucial."  *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *Loomis*, 420 F.Supp.3d at 1082 ("The Court proceeds by looking at the representations in their complete context to determine whether Defendant's advertisements would deceive a reasonable consumer").

Plaintiffs predictably rely heavily on *Williams v. Gerber*, 552 F.3d 934 (9th Cir. 2008) to argue that they had no obligation to read the ingredient list, which they admit discloses cornstarch as a "prominent" ingredient in Wheat Thins.  As Defendants previously noted, the thrust of *Williams* is that product statements must be read in the full context of the product packaging, which does not help the plaintiffs' cause.  Indeed, *Williams* involved "Fruit Juice Snacks" products displaying images of different fruits and a statement that they were made with fruit juice and other all-natural ingredients.  *Id*. at 939.  The Ninth Circuit determined that a reasonable consumer could be deceived by the packing because of the multiple images depicting "a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product."  *Id*.  In the context of that specific factual scenario, the court found that the ingredient list alone could not overcome the multiple juice statements and images depicting fruits elsewhere on the product packaging because, taking the packaging as a whole, it would not be unreasonable for a consumer to conclude that those fruits or their juices were in the product.  The same scenario does not exist in this case.

Unlike in *Williams*, the Wheat Thins packaging does not contain any potentially misleading language or images.  The packaging specifically states "100% **Whole Grain Wheat** Thins" and, consistent with that statement, displays images of wheat stalks and wheat grains.  The packaging at issue here does not depict images of corn cobs or kernels such that a consumer could potentially be misled into believing the products are made from whole corn or that they do not contain cornstarch.  As the plaintiffs' admit, the Wheat Thins ingredient list explicitly discloses cornstarch as a "prominent" ingredient. (Dkt. 1 at ¶10.)  Where ingredients are disclosed, as cornstarch was here, a consumer may not ignore them. *See Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 U.S. Dist. LEXIS 219487, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) (no reasonable consumer

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

6

CASE NO. 3:22-cv-06033-VC
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

could be deceived about the product's sugar content when the label plainly disclosed the amount of sugar in the product); *Pelayo v. Nestle USA, Inc.,* 989 F.Supp.3d 973, 980 (C.D. Cal. 2013) ("to the extent there [was] any ambiguity regarding the definition of 'All Natural' with respect to each of the Buitoni Pastas, it [was] clarified by the detailed information contained in the ingredient list"). Indeed, multiple courts have rejected the very position the plaintiffs advance here that *Williams* permits consumers to ignore the ingredient list. *Cheslow v. Ghirardelli Chocolate Co.*, 445 F.Supp.3d 8, 20 (N.D. Cal. 2020) ("*Williams*' holding is not a license to entirely disregard the ingredient list"); *Truxel*, 2019 U.S. Dist. LEXIS 144871, at *4 (*Williams* "did not hold that litigants may ignore the information on a product's label").

When viewed in context and as a whole, as required, the "100% Whole Grain Wheat Thins" statement, along with images of wheat stalks and wheat grains -- and no other grains, including corn -- and the fact that cornstarch is prominently disclosed as an ingredient, no consumer could reasonably be deceived into believing that Wheat Thins contain do not contain cornstarch.[3]

## B.    The Court Should Strike Plaintiffs' Defective Class Claims

As discussed on Defendants' motion, Rule 23 (c)(1)(A) provides that the Court should determine class certification issues "[a]t an early practicable time." As previously explained, while courts in the Ninth Circuit frequently wait until after the pleading stage to determine class certification, they do not do so where, as here, defects in the allegations preclude class certification. Instead, courts routinely strike patently defective class claims under Rule 12(f). *See e.g., Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975) (affirming order striking class allegations for failure to meet superiority requirement); *Sanders v. Apple, Inc.*, 672 F.Supp.2d 978, 990-91 (N.D. Cal. 2009) ("the Supreme Court has noted that '[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the

---

[3] Plaintiffs concede the complaint fails to allege that Wallenstein purchased Wheat Thins within the applicable limitations periods. Instead, they argue that the Court should infer that the conduct fell within the statutory period. But the Court cannot rewrite deficient allegations. Nor does a vague reference to the "discovery rule" save these claims because the complaint does not "specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence," as required. *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1130-31 (C.D. Cal. 2010) ("this rule applies even where plaintiff is prosecuting a class action").

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

7

CASE NO. 3:22-cv-06033-VC
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

named plaintiff's claim'"); *Brazil v. Dell, Inc.*, 585 F.Supp.2d 1158, 1166-67 (N.D. Cal. July 7, 2008) (striking class allegations because class was not "presently ascertainable").

As detailed on Defendants' motion, the plaintiffs' claims are predicated on a series of highly unreasonable assumptions that render class treatment inappropriate and impractical.  For instance, the plaintiffs' class allegations are based on the assumption that all reasonable consumers would: (1) misinterpret "100% Whole Grain Wheat Thins" to mean all grain ingredients, including non-wheat ingredients, are whole grains; (2) not know that cornstarch is not a whole grain ingredient; (3) rely on their misinterpretation of the grain statement and ignorance of cornstarch in purchasing Wheat Thins such that they would be harmed; and (4) pay a premium for wheat cracker products that do not use cornstarch as a binding agent.  Given the unusual and highly specific characteristics that would be required for individuals to qualify for the plaintiffs' proposed classes, the Court would need to make numerous individualized inquiries -- including the damages that each putative class member would have incurred -- that would make class treatment impracticable.  The necessarily individualized nature of the plaintiffs' claims means the Court should strike the class allegations.

## C.   The Court Lacks Jurisdiction To Adjudicate Non-Resident Plaintiffs' Claims

Plaintiffs do not dispute that Defendants are not subject to general jurisdiction in California. While they baldly assert that the Court has "specific jurisdiction over claims of all class members" (Dkt. 24 at 11), the plaintiffs fail to identify any facts or authority supporting specific jurisdiction over Montgomery Summa's New York state law claims.  (Dkt. 24 at 11-13.)  Instead, the plaintiffs argue vaguely that the Supreme Court's ruling in *Bristol-Myers* -- which precludes the exercise of specific jurisdiction over purely out-of-state activities (*Bristol-Myers Squibb v. Sup. Ct.*, 137 S.Ct. 1773, 1782 (2017))  -- is "inapplicable" in class action cases.  That is not the law.

Courts regularly apply *Bristol-Myers* to dismiss class actions where, as here, non-resident plaintiffs purport to assert state-law claims on behalf of state-wide classes.  *See Carpenter v. PetSmart, Inc.*, 441 F.Supp.3d 1028, 1036-37 (S.D. Cal. 2020); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-CV-06391-BLF, 2018 U.S. Dist. LEXIS 54850, at *2 (N.D. Cal. Mar. 30, 2018) (dismissing claims under *Bristol-Myers* as to plaintiffs seeking to represent a state-wide class of non-residents under foreign law); *Reitman v. Champion Petfoods USA, Inc.*, No.

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

8

CASE NO. 3:22-cv-06033-VC
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

CV 18-1736-DOC (JPRx), 2018 U.S. Dist. LEXIS 221284, at *5 (C.D. Cal. Oct. 10, 2018) (no jurisdiction over non-residents' claims where "no nonresident Plaintiff states that she purchased [the products] in California, saw labels in California, or suffered any injury in California"); *Gaines v. Gen. Motors, LLC*, No. 17-cv-1351-LAB (JLB), 2018 U.S. Dist. LEXIS 133019, at *3 (S.D. Cal. Aug. 7, 2018) ("no basis for the Court to exercise personal jurisdiction over the proposed out-of-state named plaintiffs' claims against GM arising entirely from out-of-state activities").

Because *Bristol-Myers* applies in this case and the plaintiffs have no facts showing a nexus between Summa's claims and California, the plaintiffs have not met their burden to demonstrate jurisdiction. *Bristol-Myers*, 137 S.Ct. at 1782  (no personal jurisdiction over claims where "the conduct giving rise to [plaintiff's] claims occurred elsewhere"); *O'Handley v. Padilla*, 579 F.Supp.3d 1163, 1178 (N.D. Cal. 2022) ("plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant").  Indeed, apparently recognizing that the Court lacks jurisdiction to adjudicate Summa's claims, the plaintiffs propose that the Court exercise ***pendent*** jurisdiction over his New York claims.  But exercising pendent jurisdiction in a diversity case alleging state law claims is improper:  Pendent jurisdiction refers to a federal court's authority to exercise "jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004).

Courts can only exercise pendent jurisdiction "where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id*. at 1180-81.  Where there are no federal claims, "pendent party jurisdiction ***cannot be exercised by a federal court sitting in diversity***." *Sloan v. GM LLC*, No. 16-cv-07244-EMC, 2019 U.S. Dist. LEXIS 210191, at *27 (N.D. Cal. Dec. 5, 2019) (emphasis added); *Allen v. ConAgra Foods, Inc*., No. 3:13-cv-01279-WHO, 2018 U.S. Dist. LEXIS 208196, *5-6 (N.D. Cal. Dec. 10, 2018) ("when it comes to a federal court sitting in diversity . . . [i]f due process were to allow a federal court to assert personal jurisdiction over a purely state law cause of action when a state court could not do the same, problematic dis-uniformity

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

could result"); *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 U.S. Dist. LEXIS 137667, at *5 (S.D. Cal. Aug. 14, 2019), appeal dismissed, No. 19-56082, 2020 U.S. App. LEXIS 25754 (9th Cir. Aug. 13, 2020) (dismissing New York plaintiff's state law claims for lack of personal jurisdiction without prejudice to re-filing in an appropriate jurisdiction).  Because this case is based on diversity, and there is no federal claim to which to attach his state law claims, the Court cannot exercise pendent jurisdiction over Summa's claims.[4]

## III.    CONCLUSION

The "100% Whole Grain Wheat Thins" statement on Wheat Thins packaging is not actionable because Wheat Thins contain 100% whole grain wheat.  Plaintiffs' theory requires construing the whole grain wheat statement on the packaging to mean that all of the grain ingredients in Wheat Thins are whole grains, which is not what the label says, meaning the Court would have to ignore the context in which the statement is made, ignore the inclusion of cornstarch in the ingredient list and ignore the rules of reading comprehension.  When read in the context of the packaging as a whole, no reasonable consumer would think that any and all grains in Wheat Thins are whole grains.  Accordingly, the deceptive practices, false advertising and breach of warranty claims must be dismissed.  Even if those claims were not entirely dismissed, the Court should (1) strike the class allegations, (2) dismiss Summa's claims and those of the out-of-state class members he purports to represent, (3) dismiss Summa's breach of warranty claim for lack of privity and (4) dismiss David Wallenstein's claims as outside of the statutory limitations period.

Dated:  January 3, 2023

**BAKER & McKENZIE LLP**

By:    /s/ Mark C. Goodman
        Mark C. Goodman
Attorneys for Defendants
MONDELĒZ INTERNATIONAL, INC.,
MONDELĒZ GLOBAL, LLC and NABISCO,
INC.

---

[4] If Summa's claims are dismissed for lack of jurisdiction, the New York claims will necessarily fail because Wallenstein lacks standing to represent the New York class.  (Dkt. 1 at ¶25.)

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000