DAVE FOX (Bar No. 254651)
Dave@FoxLawAPC.com
JOANNA FOX (Bar No. 272593)
Joanna@FoxLawAPC.com
COURTNEY VASQUEZ (Bar No. 267081)
Courtney@FoxLawAPC.com
**FOX LAW, APC**
201 Lomas Santa Fe Drive, Suite 420
Solana Beach, CA 92075
Tel: 858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

DAVID WALLENSTEIN, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

MONDELĒZ INTERNATIONAL, INC., a Virginia corporation, MONDELĒZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation,

Defendants.

Case No. 3:22-cv-06033-VC

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES; AND APPOINTMENT OF CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: September 12, 2024
Time: 10:00 a.m. (in person)
Judge: The Hon. Vince Chhabria
Ctrm: 4, 17th Floor

## TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION……………………………………………………………………………1

MEMORANDUM OF POINTS & AUTHORITIES……………………………………………...2

I. INTRODUCTION……………………………………………………………………….2

II. RELEVANT PROCEDURAL HISTORY………………………………………………3

III. THE CLASS CLAIMS WILL BE PROVED BY COMMON EVIDENCE………….3

A. Every Class Product is Labeled with the "100% WHOLE GRAIN" Misrepresentation……………………………………………………………………..4

B. "100% WHOLE GRAIN" is a "Key" Representation on the Wheat Thins Package and is Material to Consumers……………………………………….5

C. The "100% WHOLE GRAIN" Misrepresentation is Uniformly False and Misleading…………………………………………………………………………7

D. The "100% WHOLE GRAIN" Misrepresentation Concerns the Product, Not the Word "Wheat"……………………………………………………………..8

IV. LEGAL STANDARD FOR CLASS CERTIFICATION……………………………10

V. PLAINTIFF SATISIES ALL REQUIREMENTS OF RULE 23

A. The Class Is Adequately Defined……………………………………………..10

B. Numerosity is Undisputed – Fed. R. Civ. P. 23(a)(1)…………………………11

C. Commonality is Satisfied - Fed. R. Civ. P. 23(a)(2)…………………………..12

D. Typicality is Satisfied - Fed. R. Civ. P. 23(a)(3)……………………………...14

E. Adequacy is Satisfied - Fed. R. Civ. P. 23(a)(4)……………………………...15

1. Plaintiff is an Adequate Representative……………………………………15

2. Fox Law is Adequate Class Counsel………………………………………15

F. Plaintiff Meets Rule 23(b)(3)'s Predominance Requirement…………………16

1. Common Issues of Law Predominate - the Objective Reasonable Consumer Standard Applies to Both the CLRA and Breach of Warranty Claims………………………………………………………………………..17

2. Common Issues of Fact regarding Exposure, Materiality and Deception Predominate…………………………………………………….17

a. Classwide Exposure……………………………………………………….18

b. Common Evidence of Deception……………………………………….18

c. Common Evidence of Materiality……………………………………20

3. Classwide Method of Awarding Relief……………………………………......21

4. Class Litigation is Superior to Other Methods…………………………….24

G. Rule 23(G) is Satisfied………………………………………………………….24

VI. CONCLUSION…………………………………………………………………….25

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Allen v. Similasan Corp.*, 306 F.R.D. 635 (S.D. Cal. 2015)……………………………………..17

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)………………………………………10, 16

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013)…………………………………11, 14, 15

*Bailey v. Rite Aid Corp.*, 338 F.R.D. 390 (N.D. Cal. 2021)……………………………………..22

*Bebault v. DMG Mori USA, Inc.*, 2020 WL 2065646 (N.D. Cal. Apr. 29, 2020)………………..16

*Bechtel v. Fitness Equip. Servs., LLC*, 339 F.R.D. 462 (S.D. Ohio 2021)……………………….23

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir .1975)……………………………………………10, 12

*Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014)………..21-22

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)…………………………...11, 22

*Brockey v. Moore*, 107 Cal. App. 4th 86 (2003)……………………………………………………17

*Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519 (N.D. Cal. Sep. 25, 2018)……........13, 17

*Castro v. Paragon Indus., Inc.*, 2020 WL 1984240 (E.D. Cal. Apr. 27, 2020)…………………16

*Chapman v. Skype*, 220 Cal. App. 4th 217 (2013)………………………………………………..17

*Chavez v. Blue Sky Natural Beverage Corp.*, 268 F.R.D. 365 (N.D. Cal. 2010)………………...21

*Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S. Ct. 1426m 185 L. Ed. 2d 515 (2013)……...21

*Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016)……………………24

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)…………10

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018) ………12

*Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417 (N.D. Cal. 2013)…………………………10

*Gunaratna v. Dennis Gross Cosm.y LLC*, 2023 WL 5505052
(C.D. Cal. Apr. 4, 2023)……………………………………………………………18, 21, 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) …………………….................*passim*

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)……………………………………14

*Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479 (S.D. Cal. Nov. 29, 2018)………14

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)……………………………………………20

*Holt v. Noble House Hotels & Resort, LTD*, 2018 WL 5004996, (S.D. Cal. Oct. 16, 2018)…….10

*Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505 (N.D. Cal. 2007) ……………………….….10

*Immigrant Defs. L. Ctr. v. Mayorkas*, 2023 WL 3149243 (C.D. Cal. Mar. 15, 2023)…………...11

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015)……………………...12, 17

*Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334 (N.D. Cal. July 15, 2016)…………………..20

*Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768 (E.D. Cal. Jan. 24, 2020)…………..16

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013)…………………………………21

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014) ……………………………..11, 14, 16

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

244 F.3d 1152, (9th Cir.2001)………………………………………………... …..24

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) …………………………...12

*Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012)…………………...12-13

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012)……………………..17, 24

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016))…………………………………16

*Tran v. Sioux Honey Ass'n, Coop.*, 2020 WL 905571 (C.D. Cal. Feb. 24, 2020)………………..12

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)………………………………..24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ………………………………………12, 13

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009)……………………………………..24

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010)………………………..21

**STATUTES**

Cal. Com. Code § 2313………………………………………………………………………3

Cal. Civ. Code § 1750……………………………………………………………………..3

Fed. R. Civ. P. 23(a)………………………………………………………………………*passim*

Fed. R. Civ. P. 23(b)(3)…………………………………………………………………….*passim*

Fed. R. Civ. P. 23(g)……………………………………………………………………...1, 25

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to the Court's Order Granting Stipulation to Modify Stipulated Scheduling Order regarding Class Certification and Pre-Trial Deadlines (ECF No. 54), Plaintiff David Wallenstein, individually and on behalf of all others similarly situated, hereby moves the Court for an Order that this case proceed to the merits as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on Count Nos. 1-2 as set forth in Plaintiff's Class Action Complaint for Damages ("Complaint") (ECF No. 1) against Defendants Mondelez International, Inc., Mondelez Global, LLC, and Nabisco, Inc. (collectively "Defendants") on behalf of the following Class:

> **The Class**: All persons that reside in California who purchased Wheat Thins products bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained cornstarch, from October 13, 2018 until the date the notice is disseminated (the "Class").
>
> Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

Plaintiffs further request that the Court certify the Class and appoint Plaintiff David Wallenstein as Class Representative, and appoint Fox Law, APC as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the Declarations of Courtney Vasquez ("Vasquez Decl."), Joanna Fox ("Fox Decl."), Steven Gaskin ("Gaskin Decl."), and Colin Weir ("Weir Decl."), and all exhibits thereto, the concurrently filed Request for Judicial Notice ("RJN"), the pleadings, record and files of this case and any further oral or documentary evidence that may be submitted in support of this Motion.

**MEMORANDUM OF POINTS & AUTHORITIES**

## I. INTRODUCTION

This is a consumer class action concerning the prominent representation that Wheat Thins crackers are "100% WHOLE GRAIN." Defendants make this representation on every box of Wheat Thins. The bold representation appears on the front, back *and* side of the Wheat Thins box in colorful, capitalized, large font second only to the name of the product itself.

***Wheat Thins Packaging Prominently Displaying "100% Whole Grain"***




This representation, however, is false and deceptive. Wheat Thins **are not** "100% WHOLE GRAIN." In actuality, Wheat Thins contain ingredients that are refined (i.e., not whole) grains, such as cornstarch. In fact, cornstarch is listed as one of the top ingredients across all Wheat Thins crackers (*fourth* out of 7-18 total ingredients across flavors). Cornstarch—which is admittedly a grain ingredient—is not, however, a *whole grain*. Defendants admit this much. Cornstarch is a refined grain. Thus, *not* all (or 100%) of the grain ingredients in Wheat Thins are whole grain, despite what Defendants prominently represent to consumers.

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff filed this action on October 13, 2022.[1] (ECF No. 1.) The Class Action Complaint ("Complaint") asserted two counts for (i) violation of California's Consumers Legal Remedies Act, Civil Code §§ 1750, et seq. ("CLRA") and (ii) breach of express warranty (Cal. Com. Code § 2313). (*See id.*) The Complaint sought relief for purchasers of Wheat Thins crackers based on Defendants' misrepresentation that Wheat Thins are "100% WHOLE GRAIN" when in fact an ingredient in Wheat Thins is cornstarch, which is a refined grain. (*See id.* ¶¶ 1-2.) Thus, *not* all grains in Wheat Thins are whole grains.

On December 12, 2022, Defendants sought to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6). (ECF No. 21.) Defendants argued that the phrase "100% WHOLE GRAIN" is not misleading because it is only ever used immediately before the word "wheat" as used in the product name "Wheat Thins," supposedly making it clear to consumers that only the wheat ingredient—and not all grain ingredients—are whole grain. (ECF No. 21, at 7-9.) The Court held that this argument is "borderline silly" and concluded that "reasonable consumers would therefore read the packaging to mean that the product contains no grain ingredients that aren't whole." (ECF No. 40, at 4-5.) The Court denied Defendants' Motion to Dismiss as to Mr. Wallenstein's claims under California law. (ECF No. 40.)

Plaintiff now seeks to certify the Class to pursue violations of the CLRA and breach of express warranty based on Defendants' false representation that Wheat Thins are "100% WHOLE GRAIN."

## III. THE CLASS CLAIMS WILL BE PROVED BY COMMON EVIDENCE

Plaintiff alleges that the packaging for Wheat Thins crackers is misleading because it falsely characterizes the crackers as "100% WHOLE GRAIN," which means that all (or 100%)

---

[1] The Complaint also included claims brought by New York resident, Montgomery Summa, for violation of New York consumer protection laws and breach of express warranty. The Court found that it lacked personal jurisdiction over the Defendant as to these claims and granted Defendants' Motion to Dismiss in part on this basis. (ECF No. 40.) As a result, only the California claims of Plaintiff Wallenstein remain in this action and are addressed by this Motion.

of the grain ingredients in Wheat Thins are whole grain. (ECF No. 1, Compl., ¶ 1.) Plaintiff alleges that a top ingredient in Wheat Thins products is cornstarch, which is a refined grain. (*Id.* ¶¶ 2, 10-11.) Plaintiff alleges that refined grains are not and cannot be whole grains. (*Id.* ¶¶ 2, 5, 11-13.) Thus, Defendants' representation that all (or 100%) of the grain ingredients in Wheat Thins products are "whole grain" is patently false and utterly misleading. (*Id.* ¶ 2.)

### A. Every Class Product is Labeled with the "100% WHOLE GRAIN" Misrepresentation

Defendants uniformly and prominently labeled the Class Products with the false and misleading "100% WHOLE GRAIN" representation throughout the entire Class Period. (Vasquez Decl., Ex. 1, Class Product List; Ex. 7, Product Labels.) The "100% WHOLE GRAIN" representation is made in large font on the front of the package second only to the product name "WHEAT THINS" on every package. (*See id.*) Defendants labeled Wheat Thins with the "100% WHOLE GRAIN" misrepresentation across all flavors (i.e., original, ranch, reduced fat, etc.), sizes (i.e., standard, family size, party size, etc.) and limited editions (i.e., holiday) of Wheat Thins sold during the Class Period. (*Id.*; *see also id.* Ex. 14, Example of holiday label.)

***<u>Example of Uniform Misrepresentation Across the Class Products</u>***



### B. "100% WHOLE GRAIN" is a "Key" Representation on the Wheat Thins Package and is Material to Consumers

Defendants *know* that whole grains are distinctive and important to relevant consumers. Charged with this knowledge, Defendants purposely designed the Wheat Thins package to emphasize "100% WHOLE GRAIN" to maximize profitability of the Class Products.

Defendants' internal documents establish that whole grains [redacted] and [redacted]. (Vasquez Decl., Ex. 8, [redacted], at 2, 5.) Defendants recognized that [redacted] and that [redacted]. (*Id.* at 2.) Defendants concluded that [redacted] and defined whole grains as a [redacted] (*Id.* at 2-3.)

Given this insight, Defendants [redacted] (Vasquez Decl., Ex. 9, [redacted] at 2.) This included [redacted] (*Id.*, at 2 [redacted]).)

This led to [redacted] of Wheat Thins in and around the 2016/2017 timeframe. In a [redacted] dated May 12, 2016, Defendants' consultants reported that [redacted] (Vasquez Decl., Ex. 10, [redacted], at 28; *see also id.* Ex. 11, 4/22/16 [redacted] It was suggested that Defendants consider [redacted] which would [redacted] (*Id.*, Ex. 10, [redacted] at 28; *see also* Ex. 11, 4/22/16 [redacted]

[redacted].) That is exactly what Defendants did.

In [redacted], Defendants recognized that [redacted]" (Vasquez Decl. Ex. 12, 6/27/2016 Email re [redacted] (emphasis in original).) Defendants proceeded to include the bold "100% WHOLE GRAIN" representation above the Wheat Thins name in the package design and performed consumer qualitative research to [redacted] (Vasquez Decl., Ex. 13, [redacted], at 10.) Consumer research results demonstrated that [redacted] (*Id.*)

Over the years, Defendants continued to capitalize on the "100% WHOLE GRAIN" representation ensuring that the representation maintained "[redacted]" on Wheat Thins packaging. In a graphic design for Wheat Thins limited holiday packaging, Eric Altschul, Senior Brand Manager for Wheat Thins, noted that the "[redacted] (Vasquez Decl., Ex. 14, 3/27/2019 Email re [redacted]) Concerned that the proposed holiday design was compromising the cracker's key messaging, Mr. Altschul instructed the team to [redacted]" on the holiday package design of Wheat Thins. (*Id.*)

Defendants' whole grain initiative had proved successful. Through the COVID-19 pandemic, Defendants' internal records show that Wheat Thins had [redacted] through the 100% WHOLE GRAIN representation. (Vasquez Decl., Ex. 15, [redacted], at 3.) Defendants committed to "[redacted] (*Id.* at 7.) An internal report noted that a key finding is that [redacted] (*Id.*) Studies confirmed that [redacted]" had become a "[redacted] with the [redacted] (*Id.*, at 7, 11.) The "100% WHOLE GRAIN" representation on the product package had become one of the

[redacted] (*Id.* at 14.)

### C. The "100% WHOLE GRAIN" Misrepresentation is Uniformly False and Misleading

Despite the prominent "100% WHOLE GRAIN" representation on every package of Wheat Thins, the Class Products all contain cornstarch, which is a refined – not whole – grain. Defendants' internal documents, communications and testimony in this case confirm that (i) corn is a grain, (ii) the whole corn kernel with all three anatomical parts (bran, germ, and endosperm) present in their original proportions is a whole grain, (iii) cornstarch is made by removing the bran and germ, leaving only the "starchy" endosperm of the grain, (iv) cornstarch is therefore *not* a whole grain, (v) cornstarch is a refined grain, and (vi) cornstarch is a refined grain ingredient in Wheat Thins.

**Corn is a grain.** In an internal PowerPoint presentation dated September 23, 2014, Defendants concluded themselves that "[redacted]." (Vasquez Decl., Ex. 9, [redacted], at 5.) The presentation explained that [redacted] (*Id.* at 4-5.)

**All Whole Grains Contain the Bran, Germ and Endosperm**. Defendants agree that [redacted]. (Vasquez Decl., Ex. 9, [redacted], at 5, 11; Ex. 4, Tiso 30(b)(6) Depo 42:20-43:7.)

**Cornstarch Removes the Bran and the Germ.** Defendants' internal documents demonstrate that [redacted] emoves the [redacted] (Vasquez Decl., Ex. 9, [redacted], at 8.) These [redacted] (*Id.*; *see also* Ex. 4, Tiso 30(b)(6) Depo., at 81:13-82:8.) The milling process [redacted] (*Id.* Ex. 9, [redacted] at 9.)

**Cornstarch is NOT a Whole Grain – It is a Refined Grain.** Defendants admit that cornstarch is not a whole grain. (Ex. 4, Tiso 30(b)(6) Depo., 82:19-23 [redacted]

[redacted]"), 88:25-89:1 [redacted]); Ex. 3, Def.'s RFA Resp. ("Admit that cornstarch is not a whole grain. . . Admit.").) Moreover, Defendants' internal communications establish that cornstarch is in fact a refined grain. For example, Regulatory Affairs Specialist, Judy Faber, specifically informed her team that "**Cornstarch would be consider[ed] a refined grain**." (Vasquez Decl., Ex. 16, 3/4/2021 Faber Email.) In addition, when calculating the grain ingredients in the Sundried Tomato and Basil Wheat Thins for sale in Canada, Regulatory Specialist, Grace Tsai, calculated the grain ingredients as follows: "Whole Grain Wheat 20 g per serving" and "**Refined grains (corn, barley): 2 g per serving**" for a Total Grains calculation of 22 g per serving. (Vasquez Decl., Ex. 17, 2/18/2022 Email Grace Tsai.) Defendants' corporate designee, Ms. Paula Tiso confirmed that the Canadian product formula for the Sundried Tomato and Basil Wheat Thins is the same formula as the one sold in the United States, thereby confirming that the Sundried Tomato & Basil Class Product contains refined grains. (*Id.*, Ex. 4, Tiso 30(b)(6) Depo., 9:6-15.)

**Cornstarch is an Ingredient in Wheat Thins.** Defendants agree that cornstarch is an ingredient in every one of the Class Products. (Ex. 4, Tiso 30(b)(6) Depo., 116:16-19; Ex. 3, Def.'s Resp. to RFA No. 2 ("Responding Party admits that cornstarch is an ingredient in the challenged products.").) Because it is a refined grain ingredient as shown above, Wheat Thins contain grain ingredients that are not whole grain. Thus, Wheat Thins are patently *not* "100% WHOLE GRAIN" as they are represented to be and this fact will be proven uniformly across all members of the Class by common evidence such as the examples cited above.

### D. The "100% WHOLE GRAIN" Misrepresentation Concerns the Product, Not the Word "Wheat"

Since the inception of this case, Defendants have argued that the bold representation "100% Whole Grain" can only be interpreted as meaning that 100% of the wheat ingredients in Wheat Thins is whole grain. This is because, "100% Whole Grain" precedes the word "wheat" in "Wheat Thins." The Court rejected this argument as "borderline silly" and held:

> **"'Wheat Thins' is clearly the name of the product, and the phrase '100% Whole Grain' clearly modifies the name of the**

> **product in its entirety, not just the word "wheat."** The design of the product packaging makes this abundantly clear. The phrases '100% Whole Grain' and 'Wheat Thins' are differentiated not only by their respective font size but also by their color. Reasonable consumers would therefore read the packaging to mean that the product contains no grain ingredients that aren't whole."

(ECF No. 40 (emphasis added).)

Nonetheless, Defendants continue to argue for this unnatural interpretation of their label. At the outset of the deposition of Defendants' 30(b)(6) witness, Ms. Paula Tiso initially referred to the product name as [redacted] Later, however, Ms. Tiso refused [redacted] This makes no sense.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Ms. Tiso's testimony is easily refuted—not only by common sense but also by the trademarked name of the cracker, "**Wheat Thins,**" which was originally registered by Nabsico, Inc. in 1975 and has been renewed through the present. (RJN, Wheat Thins Trademark, Ex. A.)

| | | | |
|---|---|---|---|
| **Generated on:** | This page was generated by TSDR on 2024-05-24 16:17:38 EDT | | |
| **Mark:** | WHEAT THINS<br>WHEAT THINS | | |
| **US Serial Number:** | 73045498 | **Application Filing Date:** | Feb. 28, 1975 |
| **US Registration Number:** | 1022799 | **Registration Date:** | Oct. 14, 1975 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |
| **TM5 Common Status Descriptor:** | | LIVE/REGISTRATION/Issued and Active<br>The trademark application has been registered with the Office. | |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Oct. 08, 2015 | | |

## IV. LEGAL STANDARD FOR CLASS CERTIFICATION

Consumer protection claims are ideal for class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) ("[c]lass action certifications to enforce compliance with consumer protection laws are desirable") (internal quotation marks omitted); *Holt v. Noble House Hotels & Resort, LTD*, 2018 WL 5004996, at *5 (S.D. Cal. Oct. 16, 2018) ("Claims arising under consumer protection statutes are generally well-suited for class certification.") (citation omitted).

"[I]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974). Plaintiffs need not make an extensive evidentiary showing so long as the court is provided enough information to form a reasonable judgment on each certification requirement. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir .1975).

The party seeking class certification bears the burden of demonstrating that all four Rule 23(a) requirements and at least one Rule 23(b) requirement are met. *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 424 (N.D. Cal. 2013). Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

As relevant here, certification under Rule 23(b)(3) is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## V. PLAINTIFF SATISIES ALL REQUIREMENTS OF RULE 23

### A. The Class Is Adequately Defined

Plaintiff seeks to certify the following Class pursuant to Rule 23(b)(3):

**The Class**: All persons that reside in California who purchased Wheat Thins bearing the representation "100% WHOLE GRAIN" for personal use, when in fact those products contained cornstarch, from October 13, 2018 until the date the notice is disseminated (the "Class"). Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

Although the Ninth Circuit does not impose a threshold "ascertainability" requirement, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. 2017), the Class must be identifiable and sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member. *Immigrant Defs. L. Ctr. v. Mayorkas*, 2023 WL 3149243, at *44 (C.D. Cal. Mar. 15, 2023). Here, the class is adequately defined and based on objective criteria – California purchasers of Wheat Thins crackers, within a specified class period, all of whom were exposed to the 100% WHOLE GRAIN representation that was uniformly labeled on the front (and side and often back) of every Class Product. Thus, the Class is adequately defined "[b]ecause the alleged misrepresentation appeared on the actual packages of the products purchased, [and] there is no concern that the class includes individuals who were not exposed to the misrepresentation." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013).

**B. Numerosity is Undisputed - Fed. R. Civ. P. 23(a)(1)**

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014). The Class includes all purchasers of Wheat Thins in California over several years. Sales data produced by Defendants and non-parties in this case indicate that well more than [redacted] units of the Class Products were sold during the Class Period totaling more than $[redacted] in dollar sales. (*See* Declaration of Colin B. Wear, Table 1.) Numerosity is readily

satisfied. *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 326 F.R.D. 592, 607 (N.D. Cal. 2018) (where "Dr. Pepper sold millions of units of Canada Dry during the class period," it was "clear that the class is sufficiently numerous").

**C. Commonality is Satisfied - Fed. R. Civ. P. 23(a)(2)**

The commonality requirement is a "low bar" that is easily surmountable. *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008). "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stors., Inc. v. Dukes*, 564 U.S. 338 (2011). "Even a single common question" suffices. *Wal-Mart*, 564 U.S. at 359 (internal quotation omitted).

The commonality requirement of Rule 23(a)(2) is met where "the class members' claims depend upon a common contention' such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim with one stroke." *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *5 (N.D. Cal. Sep. 25, 2018) (citations omitted). "A claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer." *Id.* (citations omitted); *see also Blackie,* 524 F.2d at 902 (a "common course of conduct over the entire period" against all class members satisfies the commonality requirement); *Tran v. Sioux Honey Ass'n, Coop.*, 2020 WL 905571, at *4 (C.D. Cal. Feb. 24, 2020) ("By definition, all class members were exposed to such representations and purchased [Sioux] products, creating a 'common core of salient facts … 'variation among class members in their motivation for purchasing the product [and] the factual circumstances behind their purchase ... does not defeat the relatively 'minimal' showing required to establish commonality.'") (citations omitted); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015) ("Determinations of whether Defendant misrepresented its products and, as a result, whether warranties were breached, are common issues appropriate for class treatment."). Importantly, "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the

relatively 'minimal' showing required to establish commonality." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon*, 150 F.3d at 1020).

Commonality is readily established, here. The product packaging was consistent throughout the Class Period across all of the Class Products, exposing every purchaser of Wheat Thins in the Class to the same "100% WHOLE GRAIN" misrepresentation. (Vasquez Decl., Ex. 7, Product Labels.) At no time did the label change as it relates to the prominent "100% WHOLE GRAIN" representation front-and-center on the package. (*See id.*) Even when Defendants ran limited versions of the product packaging for holidays or other special limited designs, Defendants made it a point to maintain the "[redacted]" of the "100% WHOLE GRAIN" representation. (*See, e.g., id.*, Ex. 14, [redacted].)

The product formulation was also nearly identical as it relates to the percent composition of cornstarch and the formula did not change during the Class Period, either. (Vasquez Decl., Ex. 2, Def.'s Resp. to Interrog., No. 2 (identifying percentages of cornstarch across all Class Products without change during Class Period); Ex. 4, Tiso 30(b)(6) Depo., at 39:18-40:18 ([redacted]).) Specifically, for every Wheat Thins product during the Class Period, cornstarch ranked as the fourth most prominent ingredient in the formula and represents between [redacted] of the product formulation. (*Id.*, Ex. 2, Def.'s Resp. to Interrog., No. 2 (identifying constant percentages of cornstarch in product formulas across all Class Products); *see also* Ex. 7, Product Labels.)

Thus, common questions exist as to whether (i) Wheat Thins contain ingredients that are not whole; (ii) whether the "100% WHOLE GRAIN" representation is false and misleading; (iii) whether Defendants committed a breach of express warranty that Wheat Thins are "100% WHOLE GRAIN;" and (iv) whether Plaintiffs and the Class members have sustained damage as a result of Defendants' conduct. (*See also* ECF No. 1, Compl., ¶ 47 (listing common questions).) If Plaintiff is right (or wrong) about Defendants' conduct, they are right (or wrong) as to all members of the Class, thus resolving issues "central to the validity of each of the claims in one stroke." *Wal-Mart.*, 564 U.S. at 350. Commonality is satisfied.

**D. Typicality is Satisfied - Fed. R. Civ. P. 23(a)(3)**

Rule 23(a)(3) is satisfied if a plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." "In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the injury caused to the plaintiff." *Astiana*, 291 F.R.D. at 502 (citation omitted).

Here, typicality is satisfied because Plaintiff and the Class Members all purchased Wheat Thins bearing the same bold, colorful "100% WHOLE GRAIN" representation on the front package label (in addition to the side and back) and suffered a point-of-purchase loss because the Class Products contain cornstarch, a refined (not whole) grain ingredient. Plaintiff saw, read and relied on the "100% WHOLE GRAIN" representation in deciding to buy Wheat Thins, and he might not have purchased Wheat Thins at all, or would have paid less for it had he known that *not* all of the grain ingredients in Wheat Thins are whole grain as Defendants represented to him. (Vasquez Decl., Ex. 5, Decl. of Wallenstein, ¶ 11; Ex. 6, Excerpt from Dep. of D. Wallenstein, 239:20-240:13; 241:5-11.) Thus, Plaintiff alleges to have suffered the same type of injury and seeks the same type of relief as the putative class members; namely, the money they lost because of the misrepresentation. As such, Plaintiffs' interests "align[ ] with the interests of the class." *Astiana*, 291 F.R.D. at 502. Nothing more is required. *Id.*; *see Lilly*, 308 F.R.D. at 240 ("Plaintiffs … clearly have a similar alleged injury as the rest of the proposed class, since they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class."); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *6 (S.D. Cal. Nov. 29, 2018) (finding typicality because plaintiff was "deceived by the false and deceptive labeling and lost money as a result" of her purchase, and "[a]ll class members were exposed to the same …

misrepresentation on the labels of the Products.”).

### E. Adequacy is Satisfied - Fed. R. Civ. P. 23(a)(4)

Adequacy requires that “the representative parties will fairly and adequately protect the interests of the class.” Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has articulated two criteria for determining adequacy: (1) whether the named plaintiff and his or her counsel have any conflicts of interest with other class members; and (2) whether the named plaintiff and his or her counsel will prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020.

#### 1. Plaintiff Is an Adequate Representatives

Plaintiff’s interests are fully aligned with the Class, because he is a bona fide purchaser with standing, who vigorously seeks redress from Defendants’ deceptive “100% WHOLE GRAIN” misrepresentation on Wheat Thins packages, on which he relied. *Astiana*, 291 F.R.D. at 503 (holding that plaintiff’s interests aligned with the class because they “were exposed to the same alleged misrepresentation on Kashi product labels, and she testified that she would have either paid less or purchased other products had she not been deceived.”). (Vasquez Decl., Ex. 5, Decl. of Wallenstein, ¶ 11; Ex. 6, Excerpt from Dep. of D. Wallenstein, 239:20-240:13; 241:5-11.) Further, Plaintiff has no discernable interest in conflict with the Class’s interest for honest and transparent labels on the Class Products. (*Id.* ¶ 14.)

Plaintiff has actively cooperated in representing the Class in this case over the past two years. Plaintiff has timely responded to discovery requests, produced numerous documents in response to Defendants’ discovery requests, prepared for and was available for a mediation that lasted several hours, traveled to San Francisco and sat for a full-day deposition, and exposed himself to the risks of filing a lawsuit. (Decl. of Wallenstein, ¶¶ 12-13.) Plaintiff will continue to participate in this litigation, advocating for the rights of class members.

#### 2. Fox Law is Adequate Class Counsel

Plaintiff retained Fox Law, APC, a law firm with extensive experience in prosecuting large mass torts and consumer fraud class actions and the resources to continue to litigate this case. (Fox Decl., ¶ 2; Ex. 18, Firm Resume.) There are no conflicts between Fox Law and the proposed

class. Fox Law, APC has vigorously protected the interests of the Class and litigated this action efficiently and effectively. (Fox Decl. ¶ 4.) Plaintiff's counsel prevailed at the pleading stage against Defendants' 12(b) motion, adequately resolved discovery disputes, obtained records from various vendors/third parties as well as Defendants, and hired top tier experts to offer opinions in this case. (*Id.*) Fox Law, APC satisfies the adequacy requirement.

**F. Plaintiff Meets Rule 23(b)(3)'s Predominance Requirement**

As the Supreme Court has stated, "[p]redominance is a test readily met in certain cases alleging consumer ... fraud." *Amchem*, 521 U.S. at 625. This is one of those cases.

Predominance should be found when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal citation omitted). "Each element of a claim need not be susceptible to classwide proof . . . and the 'important questions apt to drive the resolution of the litigation are given more weight . . . over individualized questions which are of considerably less significance to the claims of the class.'" *Bebault v. DMG Mori USA, Inc.*, 2020 WL 2065646, at *5 (N.D. Cal. Apr. 29, 2020) (internal citation omitted) (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)).

"In evaluating predominance, courts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020) (citation omitted). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) (citations omitted). Thus, this case particularly satisfies the predominance inquiry because it presents only one issue—the 100% WHOLE GRAIN misrepresentation—which appear on all Class Products, each of which also contains cornstarch, which is a refined grain. Courts in this district have previously found facts like this sufficient for a finding of predominance. *See Lilly*, 308 F.R.D. at 242 (predominance satisfied in a case that "presents specific alleged misrepresentations common to the class. Only

one representation is at issue . . . as it appears on five products, with substantially the same challenged ingredients.") (internal citation omitted).

#### 1. Common Issues of Law Predominate - the Objective Reasonable Consumer Standard Applies to Both the CLRA and Breach of Warranty Claims

The CLRA and breach of express warranty claims both use the objective "reasonable consumer" standard to prove liability. This makes these claims ideal for class certification because they will "not require the court to investigate class members' individual interaction with the product." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

A plaintiff asserting violations based on violation of the CLRA need only to show that members of the public have the "capacity to be deceived." *Chapman v. Skype*, 220 Cal. App. 4th 217, 226 (2013); *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003) (packaging is misleading if it objectively presents "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care"); *Broomfield*, 2018 WL 4952519, at *10 ("Claims under the CLRA, UCL and FAL are governed by an objective, 'reasonable consumer' test.").

Similarly, to prevail on a breach of express warranty claim ... a plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 984 (C.D. Cal. 2015) (internal citation and quotation marks omitted). "Proof of reliance on specific promises or representations is not required." *Id.* (citing *Weinstat v. Dentsply Int'l Inc.*, 180 Cal. App. 4th 1213, 1227, 103 Cal.Rptr.3d 614 (2010)). "As with California's consumer protection statutes, [ ] class treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer . . . Privity is not required for breach of express warranty claims." *Allen v. Similasan Corp.*, 306 F.R.D. 635, 648 (S.D. Cal. 2015).

#### 2. Common Issues of Fact regarding Exposure, Materiality and Deception Predominate

In addition to common issues of law, common issues of fact also predominate. At trial,

Plaintiff will address classwide exposure and the objective reasonable consumer standard with common evidence.

**a. Classwide Exposure**

Exposure will be proven through the testimony of Plaintiff and Defendants' own documents that show uniformity of the labels and formulas of the Class Products throughout the Class Period. (*See, e.g.,* Vasquez Decl., Exs. 2, Def's Resp. to Interrog.; Ex. 7, Product Labels.); *Gunaratna v. Dennis Gross Cosmetology LLC*, No., 2023 WL 5505052, at *1 (C.D. Cal. Apr. 4, 2023) ("The uniform nature of the labels placed on Defendant's products creates a presumption of class-wide exposure and reliance.").

**b. Common Evidence of Deception**

Deception will be proven by common evidence under the objective reasonable consumer standard, thereby satisfying predominance. *Gunaratna*, 2023 WL 5505052, at *1 ("[b]ecause deception and materiality under California's consumer protection and express warranty laws are based on an objective standard, common questions predominate the litigation.").

The representation "100% WHOLE GRAIN" has a plain dictionary meaning that cannot be genuinely disputed – namely that, *all* (100%) of the grain ingredients in Wheat Thins are whole grain. The basic definition of 100 percent (100%) is "completely, entirely." *See https://www.merriam-webster.com/dictionary/100%20percent* (last visited May 24, 2024). Thus, the general understanding of the phrase "100% WHOLE GRAIN" is that all grain ingredients in Wheat Thins consist entirely or completely of whole grains – *not* that some grain ingredients are whole grains and some grain ingredients are not.

Defendants agreed to this understanding in prior cases, constituting judicial admissions. In 2012, for example, Defendant Nabisco, Inc. defended a potential class action that also concerned Wheat Thins. See *Garcia v. Nabisco, Inc., et al.*, 2:12-cv-04272 (C.D. Cal.). There, the plaintiff alleged that the representation "100% Whole Grain" led consumers to believe that *all ingredients* – both grain and non-grain – were whole grain and there were no other non-grain ingredients, such as salt, in the cracker at all. (RJN, Ex. B.) In response, Defendants explained exactly what "100%

Whole Grain" on Wheat Thins packaging meant: "A reasonable consumer would understand that the '100% Whole Grain' label merely **indicates that the only type of grain used in the crackers is 'whole grain.'**" (RJN, Ex. B.) These are Defendants' own words, which comport directly with Plaintiffs' claims here. (Vasquez Decl., Ex. 6, Dep. of David Wallenstein, 180:24-181:18; 181:22-182:2; ECF No. 1, Compl. ¶¶ 1-2, 14.)

In addition, the Food and Drug Administration ("FDA" or the "agency") has issued guidance to the "regulated food industry" about "what the agency considers to be 'whole grain' to assist manufacturers in labeling their products." (Vasquez Decl., Ex. 4, Tiso 30(b)(6) Dep., 111:22-113:17.)[2] To ensure product labeling is truthful and not misleading, the FDA recommended "**that products labeled with '100 percent whole grain' not contain grain ingredients other than those the agency considers to be whole grains**." (*Id.*) Regulatory Affairs Specialist at Mondelez Global, LLC, Ms. Paula Tiso, admitted that [redacted] (*Id.*, at 113:18-19.)

The plain meaning interpretation of "100% WHOLE GRAIN" asserted by Plaintiff is also endorsed by the Whole Grains Council, which is a nonprofit consumer advocacy group with a mission to educate consumers about the definition of whole grain and whole grain health benefits. (ECF No. 1, Compl. ¶ 18; Ex. 4, Tiso 30(b)(6) Depo. 101:12-25.) The Whole Grains Council has three different "stamps" that make it easy for consumers to identify the existence of whole grains in a product: the 100% Stamp, the 50%+ Stamp, and the Basic Stamp. (*Id.* ¶ 19; *see also* Ex. 4, Tiso 30(b)(6) Depo., 102:20-104:10 (testifying that [redacted]).) The Whole Grains Council utilizes the **"100% Stamp"** to indicate for a given product that "**all its grain ingredients are whole grain**." (Compl. ¶ 19 (emphasis added).) This is the same, common-sense definition of 100% Whole Grain that will be applied to this case.

---

[2] *See also* Draft Guidance for Industry and FDA Staff: Whole Grain Label Statements (Feb. 2006) *available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/draft-guidance-industry-and-fda-staff-whole-grain-label-statements* (last visited May 24, 2024).

Nevertheless, Defendants continue to assert their unnatural and implausible interpretation of their packaging that 100% Whole Grain" only refers to the *wheat* ingredient in the crackers since "100% Whole Grain" always precedes the word "wheat" in "Wheat Thins." The Court already rejected this argument and agreed with the plethora of support for the plain meaning that "100% WHOLE GRAIN" tells the reasonable consumers that Wheat Thins contains no grain ingredients that are not whole. (ECF No. 40 at 5.)

Defendants next argue that cornstarch is not a "refined" grain, instead it is a [redacted]. (*Compare* Vasquez Decl., Ex. 4, Tiso 30(b)(6) Dep., 82:15-18; *with* Exs. 16 (3/4/2021 [redacted] Email), Ex. 17, 2/18/2022 Email [redacted] When questioned about [redacted] (*Id.* at 95:8-96:23.) Regardless, to charge the reasonably prudent consumer with an understanding of the difference between a derivative grain and non-derivative grain (if such a distinction even exists) would be to replace the reasonable consumer standard with something much more demanding. The Court has previously rejected a similar argument. (ECF No. 40 at 5.) None of Defendants' semantics arguments will destroy predominance in this case.

**c. Common Evidence of Materiality**

Common evidence will establish materiality. Even at this early stage of the case, the record is replete with internal documents from Defendants that establish that the "100% WHOLE GRAIN" representation was material to Wheat Thins consumers, and Defendants *knew* as much. Materiality is established where "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), as amended on denial of reh'g and reh'g en banc (July 8, 2013); *see also Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers.").

In addition, the conjoint survey and damages calculation supported by Steven P. Gaskin and Colin Weir, discussed more fully below regarding classwide damages, establishes common evidence of materiality as well. (Weir Decl. ¶ 63.) The conjoint survey established a market price premium for the "100% WHOLE GRAIN" representation of 3.24%, meaning that consumers are willing to pay 3.24% *more* for the Class Products with the "100% WHOLE GRAIN" misrepresentation than without it. (Gaskin Decl. ¶¶ 12, 58.) If the "100% WHOLE GRAIN" representation was not material, there would be no corresponding change in market value. (Weir Decl. ¶ 63.) Thus, the finding of a change in market value demonstrates that the "100% WHOLE GRAIN" representation is sufficiently material to cause a change in the market price. (*Id.*)

### 3. Class-wide Method of Awarding Relief

The "predominance" requirement is satisfied when plaintiffs demonstrate a class-wide method of awarding relief that is consistent with the plaintiffs' theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S. Ct. 1426, 1433-35, 185 L. Ed. 2d 515. At the class certification stage, Plaintiff need only present a "likely method" for determining class damages, and "it is not necessary to show that this method will work with certainty." *Chavez v. Blue Sky Natural Beverage Corp.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (emphasis added, quotation omitted); *Gunaratna*, 2023 WL 5505052, at *30 ("[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery."). "[I]n this circuit . . . damage calculations alone cannot defeat class certification." *Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). The presence of individualized damages does not defeat Rule 23(b)(3) certification where damages from a uniform practice "could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Id.* at 514.

In the Ninth Circuit, a price premium is the proper of method of calculating classwide damages attributable to a misleading claim or a breached warranty. *See Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014) ("The proper measure of

restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received."); *Gunaratna,* 2023 WL 5505052, at *21 (certifying class of consumer protection and express warranty claims based on proposed conjoint model). Indeed, the Ninth Circuit has affirmed a district court's certification of a consumer-fraud class action which proposed to measure damages through a "classwide price premium attributable" to the products' labeling. *Briseno*, 674 F. App'x at 657.

Here, Plaintiffs' theory of liability and damages is that consumers paid excess money, i.e., a price premium, for Wheat Thins under the mistaken belief that *all* (100%) of the grain ingredients in the crackers are whole grain. Plaintiff utilized a conjoint-based damages model to measure the price premium consumers paid because of their mistaken belief. Courts in the Ninth Circuit routinely hold that choice-based conjoint models that are designed to measure the price premium attributable to the alleged misrepresentation satisfy *Comcast's* requirements. *Briseno*, 674 F. App'x at 657; *see also Bailey v. Rite Aid Corp*., 338 F.R.D. 390, 409 (N.D. Cal. 2021); *see also* Weir Decl. ¶¶ 24-25. Plaintiff's conjoint model is comprised of two components.

First, Steven Gaskin, independent survey expert and Senior Consultant and Principal at Applied Marketing Science, Inc. ("AMS"), measured the price premium attributed to the "100% WHOLE GRAIN" misrepresentation on the Class Products. Mr. Gaskin's model showed 316 relevant consumers three product profiles made up of varying features that were asked, as part of a series of "choice sets" composed of (i) Brand, (ii) Claims and (iii) Price to indicate their preferred product profile. (Gaskin Decl. ¶¶ 24-26, 43-46.) The results were then calculated using Hierarchical Bayes regression, which provides for, among other factors, the ability to estimate better market-level results from the study. (*Id.* ¶¶ 19-20, 47, 51-56.) The results obtained from the conjoint analysis survey allowed Mr. Gaskin to calculate the market price premium (measured in dollars and/or percentage terms) of the "100% WHOLE GRAIN" representation on the Class Products, specifically, the difference in market value of the Class Products with the misrepresentation compared to the market value of the Class Products without the misrepresentation. (*Id.* ¶¶ 51-56.) Applying these methods and analyses and using the most

conservative method, Mr. Gaskin calculated a **price premium of 3.24%**. (*Id.* ¶¶ 57-58.) An alternative accepted method is to use linear price partworths, which calculates a price premium of 4.37%. (*Id.* ¶ 57, n. 54.)

Second, Colin Weir, President at Economics and Technology, Inc. provides a damages framework to calculate total class-wide damages. He utilized retail unit and dollar sales data on a product-by-product (UPC) basis for Class Products sold in California for a portion of the Class Period between four week-ending February 3, 2019 through January 28, 2024. (Weir Decl. ¶ 64.) During this portion of the Class Period, [redacted] units of the Class Products were sold totaling dollar sales of [redacted]. (*Id.*, Table 1.) Mr. Weir anticipates estimating relevant retail sales to consumers when merits discovery concludes, including obtaining supplemental data covering the period between October 13, 2018 and the end date of any certified class period. (*Id.* ¶ 65.)

Next, with the data presently available, Mr. Weir calculated the Price Premium using the conservative conjoint price premium percentage 3.24% that Mr. Gaskin calculated. (Weir Decl. ¶ 69.) Taking the [redacted] in dollars sales and applying the 3.24% conjoint price premium percentage calculates damages of [redacted] to the Class for Wheat Thins products sold from February 3, 2019 through January 28, 2024. (*Id.*, Table 2.) Importantly, this conjoint model does not require individualized inquiry and accounts for supply side factors. (*Id.* ¶¶ 45-61, 70-75.)

Courts have consistently accepted Gaskin and Weir's conjoint analyses as will be offered in this case. Indeed, the Western District of Ohio in *Bechtel v. Fitness Equip. Servs., LLC*, 339 F.R.D. 462, 484 (S.D. Ohio 2021) recognized that several federal courts have had the opportunity to evaluate Gaskin and Weir's methodologies as applied to false advertising price premium putative class actions. The *Bechtel* court proclaimed that in **"every one of these cases, courts found that the Weir and Gaskin CBC analysis 'satisfied [plaintiffs'] obligation to demonstrate predominance.'"** *Bechtel*, 339 F.R.D. at 484.

Gaskin and Weir's damages model, which calculates the price premium associated with the "100% WHOLE GRAIN" representation on the Class Products, is consistent with Plaintiff's theory of liability. *Comcast*, 569 U.S. at 35.

**4. Class Litigation is Superior to Other Methods**

Whether "a class action is superior . . . for fairly and efficiently adjudicating the controversy" depends on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). All factors weigh in favor of superiority.

***First,*** Class Members have little to no interest in controlling individual actions because the relatively low cost of Wheat Thins crackers. *Wiener v. Dannon Co.*, 255 F.R.D. 658, 672 (C.D. Cal. 2009) ("[T]he alternative methods of resolution are Individual claims for a small amount of . . . damages." Thus, "[i]f plaintiffs cannot proceed as a class, . . . most will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.") (quoting *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands*, Inc., 244 F.3d 1152, 1163 (9th Cir.2001)); *Tait*, 289 F.R.D. at 486 ("Superiority is met where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.") (quotation omitted). ***Second,*** Plaintiffs are also not aware of any similar litigation. ***Third,*** Plaintiff resides in this District, where the action was originally filed, and Defendants sell their products within this District, so it is a preferable location. *See Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 590 (N.D. Cal. 2018) ("This factor . . . weighs in favor of certification because the Stadium is located in this district, as are the Stadium Defendants"). ***Fourth,*** any manageability concerns will be minimal and cannot, in any event, scuttle class certification "if no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *see also Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016) (class action the "only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums"). For these reasons, superiority is satisfied.

**G. Rule 23(G) is Satisfied**

"Unless a statute provides otherwise, a court that certifies a class must appoint class

counsel." Fed. R. Civ. P. 23(g)(1)(A). In evaluating adequacy of counsel, the Court examines the following factors: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to represent the class." *Id.*

Plaintiff's counsel has and will continue to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Plaintiffs' counsel has performed substantial work to date litigating Plaintiff's claims against Defendants. (Fox Decl. ¶ 4.) Plaintiff's counsel has invested thousands of hours prosecuting claims on behalf of Plaintiffs and the Class, including defeating Defendants' Rule 12(b) motion, propounding and responding to discovery to Defendants and non-parties, defending and taking depositions in the case, retaining renowned experts, and attempting mediation before a retired federal judge. Moreover, Plaintiffs' counsel possesses extensive experience in prosecuting complex class actions and mass torts. (Fox Decl. ¶ 2; Vasquez Decl., Ex. 18, Firm Resume.) As evidenced by the fact that counsel has already devoted substantial time, costs, and effort to the prosecution of this proceeding, there can be no doubt that Plaintiffs' counsel will continue to devote the resources necessary to representing the Class following appointment as Class Counsel and appointment under Rule 23(g) is appropriate.

## VI. CONCLUSION

Based on the forgoing, Plaintiff respectfully requests that the Court grant his Motion for Class Certification, appoint him as the representative of the Class, and appoint Fox Law, APC as class counsel pursuant to Fed. R. Civ. P. 23(a), (b)(3), (g).

Dated: May 24, 2024

**FOX LAW, APC**

s/ *Courtney Vasquez*
COURTNEY VASQUEZ
courtney@foxlawapc.com
*Attorneys for Plaintiffs*
*and the Proposed Class*