Jennifer Salzman Romano (SBN. 195953)
   JRomano@crowell.com
CROWELL & MORING LLP
515 South Flower Street
41st Floor
Los Angeles, CA 90071
Telephone:  213.622.4750
Facsimile:   213.622.2690

Rebecca M. Suarez (SBN 284853)
   RSuarez@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
Telephone:  415.986.2800
Facsimile:   415.986.2827

Jason Stiehl (admitted *pro hac vice*)
   JStiehl@crowell.com
CROWELL & MORING LLP
455 N. Cityfront Plaza
Suite 3600
Chicago, IL 60611
Telephone: 312.321.4200

Attorneys for Defendants MONDELĒZ
INTERNATIONAL, INC., MONDELĒZ
GLOBAL, LLC and NABISCO, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALLENSTEIN, *individually and on behalf of all others similarly situated*,<br><br>      Plaintiffs,<br><br>   v.<br><br>MONDELĒZ INTERNATIONAL, INC., a Virginia corporation, MONDELĒZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation,<br><br>      Defendants. | Case No. 3:22-cv-06033-VC<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF [REDACTED]**<br><br>Hearing Date: January 23, 2025<br>Hearing Time: 10:00 a.m.<br>Judge:     The Hon. Vince Chhabria<br>Ctrm.:     4, 17th Floor<br><br>Date Action Filed: October 13, 2022 |

# TABLE OF CONTENTS

FACTUAL BACKGROUND ....................................................................................................... 2

    A.    Defendants And Wheat Thins ...................................................................... 2

    B.    Plaintiff David Wallenstein ......................................................................... 5

    C.    Cornstarch Is Not A Grain Ingredient ......................................................... 6

    D.    Plaintiff's Consumer Survey And Expert Evidence ..................................... 8

    E.    Defendants' Consumer Survey And Expert Evidence .................................. 9

LEGAL STANDARD ............................................................................................................... 10

I.    PLAINTIFF CANNOT PROVE THAT REASONABLE CONSUMERS ARE
      LIKELY TO BE MISLED BY THE LABEL REPRESENTATIONS .......................... 11

    A.    Plaintiff's Evidence Regarding The Challenged Claim Does Not Address
        Whether It Is Misleading To Consumers. ................................................... 12

        1.    Plaintiff Offered No Consumer Survey Evidence To Show That
            Reasonable Consumers Would Be Misled. ................................... 13

        2.    Plaintiff's Self-Serving Testimony Is Insufficient To Create A
            Triable Issue Of Fact. ................................................................... 15

        3.    Eighteen-Year-Old Draft Regulatory Guidance And Third-Party
            Industry Certifications Are Not Evidence Of What Reasonable
            Consumers Believe. ...................................................................... 16

    B.    Conversely, Defendants' Evidence Demonstrates That The "100% Whole
        Grain" Representation Is True And Accurate. ............................................. 18

        1.    Wheat Thins Are 100% Whole Grain Because Cornstarch Is Not A
            Grain. ........................................................................................... 19

        2.    Defendants Produced Evidence Showing That The "100% Whole
            Grain" Representation Here Means That 100% Of The Wheat In
            Wheat Thins Is Whole Grain. ....................................................... 20

II.    PLAINTIFF'S INABILITY TO PROVE DAMAGES INDEPENDENTLY
       WARRANTS SUMMARY JUDGMENT .................................................................... 21

    A.    Mr. Gaskin's Damages Model Does Not Match Plaintiff's Theory Of
        Liability. .................................................................................................... 22

    B.    Defendants' Evidence Refutes The Existence Of A Price Premium
        Associated With The "100% Whole Grain" Representation. ...................... 23

CONCLUSION ......................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
No. ML 13-2438_PSG, 2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) .............................. 16

*Alvarez v. Ashley Furniture Indus., Inc.*,
No. CV-16-630-MWF, 2017 WL 4785970 (C.D. Cal. Sept. 20, 2017) ......................... 11, 13

*Bush v. Mondelez Int'l, Inc.*,
No. 16-cv-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ................................... 17

*Bush v. Rust-Oleum Corp.*,
No. 20-CV-03268-LB, 2024 WL 308263 (N.D. Cal. Jan. 26, 2024) ............................. 12, 15

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ........................................................................................... 12

*Culley v. Lincare Inc.*,
No. 2:15-cv-00081-MCE-CMK, 2017 WL 3284800 (E.D. Cal. Aug. 2, 2017) .............. 22, 23

*Delman v. J. Crew Grp., Inc.*,
No. CV 16-9219-MWF (ASX), 2017 WL 3048657 (C.D. Cal. May 15, 2017) ................... 18

*Flodin v. Cent. Garden & Pet Co.*,
No. 21-cv-01631-JST, 2024 WL 4565340 (N.D. Cal. Oct. 23, 2024) ..................... 15, 22, 23

*Ford v. Ford Motor Co.*,
No. CV 13-8335 PSG (SSX), 2014 WL 10293763 (C.D. Cal. July 10, 2014) ............... 11, 16

*Forrett v. Gourmet Nut, Inc.*,
634 F. Supp. 3d 761 (N.D. Cal. 2022) ............................................................................... 17

*Gasser v. Kiss My Face, LLC*,
No. 17-cv-01675-JSC, 2018 WL 4847071 (N.D. Cal. Apr. 4, 2018) ................................... 11

*In re iPhone App. Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ............................................................................ 10, 11

*Khasin v. Hershey Co.*,
No. 5:12-cv-01862-EJD, 2015 WL 13307405 (N.D. Cal. Mar. 31, 2015) ........................... 17

*Khasin v. R.C. Bigelow, Inc.*,
No. 12-cv-02204-WHO, 2016 WL 4502500 (N.D. Cal. Aug. 29, 2016) ....................... 11, 13

*Kim v. Bluetriton Brands, Inc.*,
   No. 22-56063, 2024 WL 243343 (9th Cir. Jan. 23, 2024)....................................................11

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   713 F. Supp. 3d 660 (N.D. Cal. 2024) ..................................................................................15

*Orr v. Bank of Am.*,
   285 F.3d 764 (9th Cir. 2002)................................................................................................11

*Rahman v. Mott's LLP*,
   No. CV 13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014).................................. 14, 16

*Ries v. Arizona Beverages USA LLC*,
   No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013).........................................12

*Robie v. Trader Joe's Co.*,
   No. 20-CV-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021).................................11

*S. Utah Wilderness All. v. Dabney*,
   222 F.3d 819 (10th Cir. 2000)................................................................................2, 17, 22, 24

*Senne v. Kansas City Royals Baseball Corp.*,
   No. 14-CV-00608-JCS, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017) ....................................21

*Silva v. B&G Foods, Inc.*,
   No. 20-cv-00137-JST, 2023 WL 4712195 (N.D. Cal. July 24, 2023) ...................................14

*Sultanis v. Champion Petfoods USA Inc.*,
   No. 21-CV-00162-EMC, 2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) ................................18

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*,
   673 F. Supp. 3d 1083 (N.D. Cal. 2023) ................................................................................18

*Tran v. Sioux Honey Ass'n, Coop.*,
   471 F. Supp. 3d 1019 (C.D. Cal. 2020) ........................................................................... 14, 15

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-CV-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ............................12

*Vrugtman v. Its Just Lunch Int'l LLC*,
   No. EDCV 20-2352_JGB, 2023 WL 6369765 (C.D. Cal. Aug. 25, 2023)............................21

*Weiss v. Trader Joe's Co.*,
   838 F. App'x 302 (9th Cir. 2021) .........................................................................................11

## Other Authorities

21 C.F.R. § 170.3(o)(32) ............................................................................................................4

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
                    CASE NO. 3:22-CV-06033-VC

## <u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>

TO THIS COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 23, 2025 at 10:00 a.m. or as soon thereafter as counsel may be heard, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 4, 17th Floor, before the Honorable Vince Chhabria, Defendants Mondelēz International, Inc., Mondelēz Global, LLC and Nabisco, Inc., (collectively, "Defendants") will, and hereby do, move this Court for an order pursuant to Federal Rule of Civil Procedure 56 granting summary judgment for Defendants on all individual and class claims of Plaintiff Wallenstein, for the following reasons.

First, the record contains no evidence that a reasonable consumer would be misled by the challenged label representations. Without that evidence, Plaintiff cannot prove his claims under the Consumer Legal Remedies Act and for breach of express warranty.

Second, the record contains no evidence sufficient to prove class damages, because Plaintiff's proffered class damages model does not match his theory of liability.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jason Stiehl and accompanying exhibits, the Declaration of Karoline M. Matyjas and accompanying exhibits, the Declaration of Paula Tiso and accompanying exhibits, Defendants' Request for Judicial Notice and accompanying exhibits, and such argument as may be presented to the Court.

Dated:  December 19, 2024

Respectfully submitted,

CROWELL & MORING LLP

By: */s/ Jason Stiehl*
    Jason Stiehl
    Attorneys for Defendants
    MONDELĒZ INTERNATIONAL, INC.,
    MONDELĒZ GLOBAL, LLC and
    NABISCO, INC.

## <u>MEMORANDUM AND POINTS OF AUTHORITIES</u>

Plaintiff David Wallenstein brought this California consumer class action alleging that the "100% Whole Grain" representation on Wheat Thins packaging violates the Consumer Legal Remedies Act ("CLRA") and constitutes a breach of express warranty. Plaintiff alleges that this phrase means that "all (or 100%) of the grain ingredients in Wheat Thins products are 'whole grain,'" which he asserts is false and misleading because Wheat Thins contains cornstarch, which he contends is a "refined grain" and not a whole grain. Compl. ¶ 2. Plaintiff's claims should not proceed to trial because discovery confirms there is no triable issue of fact and that Defendants are entitled to judgment as a matter of law.

The core facts in this case are undisputed:

- Wheat Thins is made with 100% whole grain wheat, and contains a small amount of cornstarch, used as a texturizing ingredient.

- The Wheat Thins packaging lists the number of grams of whole grain per serving (e.g., "21 g Whole Grain per 31 g Serving").

- The ingredient list on Wheat Thins packaging identifies whole grain wheat flour as the first ingredient and cornstarch as the fourth ingredient.

- The U.S. Department of Agriculture and the California Department of Social Services do not consider cornstarch to be a grain ingredient, and disregard cornstarch in evaluating whether a product is whole grain rich.

In addition, Defendants' expert performed a consumer study that demonstrated that consumers do not place a higher value on the representation "100% Whole Grain" compared to the representation "100% Whole Grain Wheat," in the context of the Wheat Thins packaging. And Defendants' own studies pre-dating this litigation confirm that consumers do not differentiate between "Whole Grain" and "100% Whole Grain" representations, and they do not value a "100% Whole Grain" claim over a "made with whole grain" claim. There is no dispute that Wheat Thins are made with whole grain.

This undisputed evidence establishes that the presence of cornstarch in Wheat Thins renders the alleged "100% Whole Grain" representation neither false nor misleading. By contrast, Plaintiff has not presented evidence sufficient to prove his claims. Accordingly,

summary judgment should be granted in favor of Defendants for the following independent reasons:

*First*, Plaintiff produced no evidence demonstrating that a reasonable consumer would be misled by the "100% Whole Grain" representation. He has not offered any expert or consumer survey evidence evaluating whether consumers agree with his theory that Wheat Thins, made with 100% whole grain wheat and a small amount of cornstarch as a texturizer, is less than "100% Whole Grain." Plaintiff also presented no evidence demonstrating that a reasonable consumer would be misled by the "100% Whole Grain" representation in the context of the Wheat Thins packaging viewed as a whole.

*Second*, Plaintiff's damages model does not evaluate class damages in accordance with his theory of liability, which is an independent basis to grant summary judgment for Defendants. Plaintiff theorizes that consumers paid a "price premium" for Wheat Thins "under the mistaken belief that *all* (100%) of the grain ingredients in the crackers are whole grain." Mot. for Class Cert. at 22 (emphasis in original). Plaintiff's expert, however, did not address the central question of this theory: whether consumers were willing to pay more for a product with *all* (100%) whole grain ingredients, compared to a product that is undisputedly made with 100% whole grain wheat and contains a substantial amount of whole grain per serving (like Wheat Thins). All Plaintiff's expert did was show that consumers value products with whole grains (which would include Wheat Thins).

Accordingly, the Court should grant summary judgment for Defendants on all of Plaintiff's claims.

## FACTUAL BACKGROUND

### A.    Defendants And Wheat Thins

Defendant Mondelēz International, Inc. ("Mondelēz") sells snacks—including Oreo, Ritz, Toblerone, and of course, Wheat Thins—in over 150 countries, and has approximately 91,000 employees around the world.[1] Defendant Nabisco, Inc., is not a distinct entity, and instead

---

[1] Declaration of Karoline M. Matyjas in Support of Motion for Summary Judgment ("Matyjas

functions solely as a brand ("Nabisco") that appears on snack packaging, including on Wheat Thins. ECF No 21 at 1, 13.

Wheat Thins was launched in 1947 and has remained popular ever since. Matyjas Decl. Ex. 2, MDLZ-WT091987 at 91988. As times have changed, so have Wheat Thins. Notably, the Wheat Thins recipe evolved in 2011 to include wheat solely milled from whole grains. *See id.* ("2011 [-] Conversion to 100% Whole Grain Wheat."). This change responded to consumer demand for whole grain wheat, and the Wheat Thins advertising and packaging were updated to reflect that. Matyjas Decl. Ex. 3, MDLZ-WT 009807 at 9818.

Since then, Defendants have promoted Wheat Thins' 100% whole grain wheat quality in two forms. First, the 2014 marketing guidelines emphasize the brand message "100% Irresistible. 100% Whole Grain Wheat." Matyjas Decl. Ex. 4, MDLZ-WT 003985 at 3997, 4000. Second, in 2016 the Wheat Thins packaging was updated to place the phrase "100% Whole Grain" directly above "Wheat Thins" on the product packaging. Matyjas Decl. Ex. 3, MDLZ-WT 009807 at 9819–22. Further, where the "100% Whole Grain" claim does not accompany the brand name "Wheat Thins," the packaging and marketing materials instead read "100% Whole Grain Wheat." Declaration of Jason Stiehl ("Stiehl Decl.") Ex. 4, Tiso Decl. I ¶ 4 ("[W]hen the statement '100% whole grain' is not above the term 'Wheat Thins,' it appears as '100% whole grain wheat' on packaging and marketing materials.").

Mondelēz employees view the two forms of advertising as substantively identical because the phrase "100% Whole Grain" refers to the wheat in the product. *See id.* ¶ 4 ("The internal guidance and protocol at the company is, and has been during the entirety of the class period beginning on October 13, 2018, to keep the '100% whole grain' description on Wheat Thins products next to 'wheat' in order to modify the term."). For that reason, Mondelez

---

Decl."), Ex. 1, Mondelēz International, Inc., *About Us*, https://www.mondelezinternational.com/about-us/ (last visited Dec. 5, 2024). Defendant Mondelēz Global LLC is the operating company for Mondelēz International, Inc., which is merely a holding company and does not conduct any business. ECF No. 21 at vii, n.1.

employees often use both phrases—"100% Whole Grain Wheat Thins" and "100% Whole Grain Wheat"—interchangeably. *See, e.g.,* Matyjas Decl. Ex. 5, MDLZ-WT 093568 at 93574 (referring both to Wheat Thins being "anchored in [its] 100% whole grain wheat claim" and its "strength in 100% Whole Grain"); ECF No. 70-3 at 2 ("I think we're ok to keep '100% Whole Grain' when it's immediately above Wheat Thins").

Mondelēz applied the "100% Whole Grain Wheat Thins" representation to several varieties of Wheat Thins, including Original, Big, Cracked Pepper & Olive Oil, Hint of Salt, Ranch, Reduced Fat, and Sundried Tomato & Basil. *See, e.g.*, ECF No. 1 ¶ 32. Each of these products is made with 100% whole grain wheat. The product also contains a small amount of cornstarch, a grain-derivative ingredient used as a texturizer (i.e., an ingredient used to improve the product texture).[2] Stiehl Decl. Ex. 4, Tiso Decl. I, ¶¶ 4–5; Stiehl Decl. Ex. 1, Tiso Dep. 95:8–11, 109:15–23. For each of these Wheat Thins varieties, the grams of whole grain per serving are included on the front and side of the product packaging. For example, the Wheat Thins "Original" 9.1 oz product states that it contains 21 grams whole grain per 31 gram serving:

 

_____

[2] A texturizer is defined by federal regulations as a "[s]ubstance[] which affect[s] the appearance or feel of the food." 21 C.F.R. § 170.3(o)(32). As Rachel Green, Mondelēz's nutrition strategy and communications senior specialist explained, cornstarch is "used as a functional ingredient to either thicken a recipe or improve texture." Stiehl Decl. Ex. 3, Green Dep. 45:24–46:3.

ECF No. 21 at 1; *see also* Matyjas Decl. Ex. 6, MDLZ-WT 000010. Wheat Thins products also contain an ingredient list panel on the side of the packaging, listing whole grain wheat as the first and predominant ingredient, as well as identifying the presence of cornstarch. Matyjas Decl. Ex. 6, MDLZ-WT 000010.

**B.    Plaintiff David Wallenstein**

Plaintiff Wallenstein purchased different varieties of Wheat Thins over the past several years, including Original, Reduced Fat, and Hint of Salt. ECF No. 1 ¶ 25. Mr. Wallenstein estimates that he first purchased Wheat Thins over ten years ago, and that he purchased approximately four to five boxes of Wheat Thins per year prior to filing this lawsuit. Stiehl Decl. Ex. 2, Wallenstein Dep. 136:24–137:2, 146:9–24.

At some unspecified time, Mr. Wallenstein reviewed the ingredients list on the Wheat Thins box. *Id.* at 189:14–24. He characterized this list as "not that long." *Id.* And he agreed that he had the opportunity to review the ingredients list on the Wheat Thins packaging before purchasing the product. *Id.* at 199:21–24. He also conceded that "cornstarch is listed as one of the top ingredients across all Wheat Thins crackers (*fourth* out of 7–18 total ingredients across flavors)." ECF No. 57 at 2.

Mr. Wallenstein believes that "cornstarch is not a whole grain." Stiehl Decl. Ex. 2, Wallenstein Dep. 196:15. He contends that "[c]orn is a grain," there are "the other components of corn," "[t]here's probably a skin of the corn," and he "want[s] to know what they did with the rest of it." *Id.* at 196:22–25. Mr. Wallenstein said that he developed this belief about cornstarch from "an article somewhere online" and from his visits to the "Chicago Field Museum" "18, 20 years" earlier. *Id.* at 197:3–5, 15.

Even though Mr. Wallenstein long believed that cornstarch was not a whole grain ingredient and read the Wheat Thins ingredient list, he now alleges that he "reasonably expected that all of the grain ingredients (100% of them) in Wheat Thins were whole grains" and that "he was actually deceived because the products he purchased contained cornstarch[.]" ECF No. 1 ¶ 26. He further alleges that he would not have purchased Wheat Thins had he "known the [100%

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-06033-VC

Whole Grain] representation was false," or alternatively, he would have paid less for them. *Id.* ¶ 22. To redress his alleged injuries, Mr. Wallenstein brings claims on behalf of himself and a California class for violation of the CLRA and for breach of express warranty.

### C.     Cornstarch Is Not A Grain Ingredient

Despite Plaintiff's personal understanding, cornstarch is not actually a grain ingredient. Rachel Green, Mondelēz's nutrition strategy and communications senior specialist, explained that "cornstarch, which is a grain derivative, has been so far changed from the original form that it no longer acts as a grain. It is used as a functional ingredient to either thicken a recipe or improve texture." Stiehl Decl. Ex. 3, Green Dep. 45:24–46:3.

Paula Tiso, Mondelēz's regulatory specialist, also explained that cornstarch is instead a grain derivative, and that cornstarch functions as a texturizer in Wheat Thins, not as a grain ingredient. Stiehl Decl. Ex. 4, Tiso Decl. I ¶¶ 4–5; Stiehl Decl. Ex. 1, Tiso Dep. 95:8–11, 109:15–23. Ms. Tiso's evaluation of the ingredients in Wheat Thins is based on over 30 years of experience in the food industry, including as a regulatory specialist for General Foods, Kraft, and Mondelēz. Stiehl Decl. Ex. 1, Tiso Dep. 23:4–26:22.

Ms. Tiso's views are also informed by the U.S. Department of Agriculture ("USDA"), which does not consider cornstarch to be a grain ingredient. For example, in a USDA presentation regarding "Identifying Whole Grain-Rich Foods," USDA states that a product with the following ingredients only has "one grain ingredient":

**Foods with One Grain Ingredient**



Ingredients:
Whole Grain Durum Wheat Flour



Ingredients:
Whole Grain Wheat Flour,
Soybean Oil, Sugar, Cornstarch,
Malt Syrup, Salt, Refiner's Syrup,
Leavening, Vegetable Color

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
                                                                CASE NO. 3:22-CV-06033-VC

Stiehl Decl. Ex. 8 at 24 ("Identifying Whole Grain-Rich Foods for the CACFP Using the Ingredient List" presentation available for download at https://www.fns.usda.gov/tn/identifying-whole-grain-rich-foods-cacfp) (red box in original).[3] Despite the presence of cornstarch as the fourth ingredient in the second product pictured above, USDA considers the "Whole Grain Wheat Flour" to be the only grain ingredient in the product. *Id.*

USDA materials setting forth its criteria for determining if a food is whole-grain rich require examination of all the whole-grain and non-whole grain ingredients in a product, such as enriched wheat flour. These materials consistently state that certain ingredients, including cornstarch, should be "disregarded" when determining if a food product is whole-grain rich.[4] *See, e.g.*, Stiehl Decl. Ex. 6 at 2-3 (print out of USDA webpage Identifying Whole Grain-Rich Foods for the Child and Adult Care Food Program Using the Ingredient List, instructing readers to look at grain ingredients, such as enriched wheat flour and wheat bran, when evaluating if a product is whole-grain rich, and listing cornstarch as a "Disregarded Ingredient"); Stiehl Decl. Ex. 7 at 6 (print out of USDA's April 4, 2018 memorandum entitled "Grain Requirements in the Child and Adult Care Food Program; Questions and Answers," available at https://fns-prod.azureedge.us/sites/default/files/cacfp/CACFP09_2018os.pdf, stating that "Brans and Germs" and "Enriched Grain" should be considered, but "grain derivatives which are generally presented in only small amounts, such as … corn starch" "may be ignored").

The California Department of Social Services ("CDSS") uses the same criteria as USDA for determining if a product is whole grain rich, and likewise describes cornstarch as a "[g]rain derivative" that is a "[d]isregarded [i]ngredient" in evaluating whole-grain rich foods. Declaration of Paula Tiso in Support of Motion for Summary Judgment ("Tiso Decl. II") Ex. 1 at 10, (California Department of Social Services webpage, Determining Whole Grain-rich Products

---

[3] Notably, the USDA's example of single-grain products in the picture contains nearly an identical ingredient profile and appears identical to Wheat Thins.

[4] Stiehl Decl. Ex. 5 (print out of USDA webpage Identifying Whole Grain-Rich Foods For CACFP | Food and Nutrition Service, linking to USDA's worksheet listing cornstarch as a "Disregarded Ingredient").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-06033-VC

in the CACFP, https://www.cdss.ca.gov/cacfp/resources/determining-whole-grain-rich-products-in-the-cacfp).

    **D.    Plaintiff's Consumer Survey And Expert Evidence**

    Plaintiff disclosed three experts in this case: Stephen P. Gaskin, Colin B. Weir, and J. Michael Dennis, PhD. None of these three experts addressed the USDA guidance or the CDSS criteria, or otherwise evaluated whether the presence of cornstarch is inconsistent with a "100% whole grain" representation.

    Mr. Gaskin's task was to develop a consumer survey to "assess the price premium, if any . . . due to the misrepresentation of '100% WHOLE GRAIN' on the Class Products." Report of Stephen P. Gaskin ("Gaskin Rep."), ECF No. 57-21 ¶ 9. For purposes of his assignment, Mr. Gaskin assumed that the product labeling was "factually inaccurate" and misleading, but he did not test or verify that assumption. *See id.* ¶ 8. His study evaluated "the market price premium" due to "a change from cracker products without the '100% WHOLE GRAIN' misrepresentation to cracker products with the '100% WHOLE GRAIN' misrepresentation." *Id.* ¶ 58. Mr. Gaskin **did not**:

- evaluate how consumers interpreted the phrase "100% WHOLE GRAIN";
- assess if consumers view the phrase "100% WHOLE GRAIN" as inconsistent with the presence of a small amount of cornstarch, used as a texturizer ingredient;
- assess if there was a market price premium associated with the "100% WHOLE GRAIN" representation, compared to undisputably accurate representations for Wheat Thins which Plaintiff does not challenge, such as "100% WHOLE GRAIN WHEAT" or "MADE WITH WHOLE GRAIN";
- assess if there was a market price premium associated with the "100% WHOLE GRAIN" representation in context of the Wheat Thins packaging; or
- show the Wheat Thins packaging to any consumer.

*See generally* Gaskin Rep; Rebuttal Report of Steven P. Gaskin, ECF No. 73-7, ¶¶ 33–35. Aside from Mr. Gaskin's conjoint study, Plaintiff has offered no other consumer survey evidence in this case.

    Plaintiff's damages expert, Colin B. Weir, was tasked with (1) "ascertain[ing] whether it would be possible to determine materiality and damages arising from Plaintiffs' theory of liability on a class-wide basis"; (2) "provid[ing] a framework for the calculation of damages";

and (3) assisting Mr. Gaskin in designing a conjoint survey, and "evaluat[ing] the economic

suitability of a conjoint survey . . . to measure the price premium" for the Wheat Thins products.

*See* Declaration of Colin B. Weir ("Weir Decl."), ECF No. 57-22, ¶¶ 7–8. For purposes of his

assignment, Mr. Weir was "advised by Counsel for Plaintiffs that individuals purchased certain

Wheat Thins brand products that were labeled as containing '100% Whole Grain' . . . where in

reality the Products contain refined grains and therefore not all of the grain ingredients are whole

grain." *Id.* ¶ 5. Mr. Weir did not test that assumption or engage in any analysis of how consumers

interpreted the phrase "100% WHOLE GRAIN." *See generally* Weir Decl. And like Mr. Gaskin,

he never assessed if consumers view the phrase "100% WHOLE GRAIN" as inconsistent with

the presence of a small amount cornstarch as a texturizer. *Id.*

Plaintiff's rebuttal expert, Michael Dennis, PhD, had the limited assignment of

"respond[ing] to and comment[ing] on Defendants' expert report authored by Dr. Bruce

Isaacson." Rebuttal Declaration and Expert Report of J. Michael Dennis, PhD ("Dennis Decl."),

ECF No. 73-6, ¶ 20. For purposes of his assignment, he noted that "Plaintiffs allege that

Defendants advertise the Wheat Thins crackers to be '100% WHOLE GRAIN,' which I

understand is factually untrue." *Id.* ¶ 19. Dr. Dennis did nothing to confirm that understanding,

or to otherwise evaluate how consumers interpreted the phrase "100% WHOLE GRAIN." *See

generally*, *id.*

### E.    Defendants' Consumer Survey And Expert Evidence

In contrast to Plaintiff, Defendants presented direct evidence as to the value consumers

place on certain representations, including "100% Whole Grain Wheat" and "Made with Whole

Grain."

In 2020, Mondelēz commissioned a conjoint survey that evaluated the value consumers

place on certain label representations. The results of the survey showed that consumers attached

████ relative importance to the "Whole Grain" representation, in isolation. Matyjas Decl. Ex. 7,

MDLZ-WT 016947 at 17041. *Id.* The survey also evaluated the net benefits consumers associate

with the representations "100% Whole Grain Wheat" and "Made with Whole Grain,"

respectively. The results demonstrated that consumers value these representations similarly. *Id.*

at 17034 (██████████████████████████████████████████████████████████

████████████████████████████████████).

     Mondelēz's expert, Dr. Bruce Isaacson, had similar findings. Stiehl Decl. Ex. 9

("Isaacson Rep.") ¶ 5. In addition to rebutting Mr. Gaskin's survey and opinions, Mr. Isaacson

conducted a separate, unrelated survey to compare the value consumers attribute to the

representation read as "100% Whole Grain" versus it read as "100% Whole Grain Wheat," in the

context of Wheat Thins packaging. *Id.* ¶¶ 5, 108. Based on the results of his study, and consistent

with other record evidence discussed *supra*, no material difference exists between the value

consumers attach to the two representations in the context of the Wheat Thins packaging, and it

had no effect on consumer purchasing decisions. *Id.* ¶¶ 5, 158 i.v. For example, when asked,

"Which attributes would you consider if you were deciding whether to purchase the package of

Wheat Thins that you just viewed," slightly more respondents (1.7% more) selected "The

crackers are 100% whole grain wheat" than "The crackers are 100% whole grain." *Id.* ¶¶ 150,

152.[5] In other words, there was less than 2% difference in the value consumers attributed to

either representation, and consumers placed a slightly higher value on the "The crackers are

100% whole grain wheat" representation, as compared to "The crackers are 100% whole grain"

representation.

## LEGAL STANDARD

     Summary judgment is appropriate where there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." *In re iPhone App. Litig.*, 6 F.

Supp. 3d 1004, 1011 (N.D. Cal. 2013) (quoting Fed. R. Civ. P. 56(a)). Once the moving party

"demonstrate[s] the absence of a genuine issue of material fact," the burden then shifts to the

non-moving party, who must "set forth specific facts showing that there is a genuine issue for

---

[5] Similarly, consumers attributed about the same value (within a percentage point) to both
representations when asked "The last time that you purchased a package of Wheat Thins, why
did you decide to purchase this brand of crackers, instead of a different brand," and when asked
to assign a number of points out of 100 to the two representations. *Id.*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-06033-VC

trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment." *Id*. at 1011. Evidence that is "[m]erely colorable" or is "not significantly probative" is insufficient to raise a genuine factual dispute. *Id.* Furthermore, "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted).

## **ARGUMENT**

I. **Plaintiff Cannot Prove That Reasonable Consumers Are Likely To Be Misled By The Label Representations.**

Plaintiff's CLRA and express warranty claims require that Plaintiff prove that a "reasonable consumer" would likely have been deceived by the label representations. *Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2016 WL 4502500, at *2 (N.D. Cal. Aug. 29, 2016), *aff'd*, 708 F. App'x 333 (9th Cir. 2017) (CLRA claims); *Ford v. Ford Motor Co*., No. CV 13-8335 PSG (SSX), 2014 WL 10293763, at *5–6 (C.D. Cal. July 10, 2014), *aff'd*, 651 F. App'x 665 (9th Cir. 2016) (CLRA and express warranty claims). To be "likely to deceive," Plaintiff must demonstrate that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Robie v. Trader Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *4 (N.D. Cal. June 14, 2021) (citations omitted).[6] The Court must consider the packaging "as a whole" when determining whether it could mislead. *Alvarez v. Ashley Furniture Indus., Inc.*, No. CV-16-630-MWF (MRWx), 2017 WL 4785970, at *6 (C.D. Cal. Sept. 20, 2017), *aff'd sub nom. Razo v. Ashley Furniture Indus., Inc.*, 782 F. App'x 632 (9th Cir. 2019) ("[T]he reasonable consumer standard requires consideration of the product label as a whole; context matters.").[7]

---

[6] *See also Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343, at *2 (9th Cir. Jan. 23, 2024) (affirming dismissal of CLRA and express warranty claims because the plaintiff's failure to show "consumer deception is fatal to all her claims.").

[7] *See also Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021) ("[P]roduct packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception."); *Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC, 2018 WL 4847071, at *5 (N.D. Cal. Apr. 4, 2018) (in evaluating CLRA and express warranty

Here, Plaintiff has introduced no evidence demonstrating that a reasonable consumer would be misled by the "100% Whole Grain Wheat Thins" representation. This alone warrants entry of summary judgment for Defendants on all claims. By contrast, Defendants have introduced evidence demonstrating that the challenged representation is true and accurate, which further confirms Plaintiff's inability to prove his case.

### A. Plaintiff's Evidence Regarding The Challenged Claim Does Not Address Whether It Is Misleading To Consumers.

At summary judgment, a defendant "does not need to prove that its statements are true or that its statements are not misleading." *Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2016 WL 4502528, at *3 (N.D. Cal. Aug. 29, 2016), *aff'd*, 708 F. App'x 333 (9th Cir. 2017). Instead, a defendant "can succeed on summary judgment by showing that [plaintiff] has failed to provide sufficient evidence that the statements are likely to mislead." *Id.* A plaintiff cannot carry this burden of production through "anecdotal evidence alone." *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *6 (N.D. Cal. Mar. 28, 2013) (quoting *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997)). To survive summary judgment, the plaintiff "must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers." *Id.*; *Bush v. Rust-Oleum Corp.*, No. 20-CV-03268-LB, 2024 WL 308263, at *2 (N.D. Cal. Jan. 26, 2024), *appeal denied,* No. 24-913, 2024 WL 1328234 (9th Cir. Mar. 26, 2024), and *reconsideration denied,* No. 20-CV-03268-LB, 2024 WL 1892286 (N.D. Cal. Apr. 29, 2024) (same); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025–26 (9th Cir. 2008) ("'[A] few isolated examples' of actual deception are insufficient" to meet plaintiff's burden on summary judgment.).

Here, Plaintiff has failed to offer any relevant, extrinsic evidence of consumer deception. While Plaintiff disclosed three experts in this case, none evaluated whether the challenged representation is misleading. Significantly, Plaintiff hired a consumer survey expert who simply *assumed* the representation was misleading without ever testing how relevant consumers

---

claims the court must "consider[] the [challenged] terms in the context of the packaging as a whole").

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-06033-VC

interpret the challenged representation—even though the *same* expert has performed consumer perception surveys in other lawsuits alleging false or misleading product labeling, for the *same* Plaintiff's counsel. And Plaintiff's self-serving, anecdotal testimony is insufficient, as a matter of law, to substitute for the views of the reasonable consumer. Lacking consumer survey evidence, expert testimony, or other admissible facts showing consumer deception, Plaintiff has failed to create a triable issue.

### 1. Plaintiff Offered No Consumer Survey Evidence To Show That Reasonable Consumers Would Be Misled.

Plaintiff only disclosed one consumer survey expert, Stephen P. Gaskin. Mr. Gaskin's purpose when developing a survey for Plaintiff was to "assess the price premium, if any . . . due to the misrepresentation of '100% WHOLE GRAIN" on the Class Products." Gaskin Rep. ¶ 9. Critically, Mr. Gaskin just assumed that the product labeling constituted a misrepresentation—he was not testing to see if it was, in fact misleading. *See id.* ¶ 8 ("Defendants advertise the Wheat Thins crackers to be "100% WHOLE GRAIN," which, to my understanding, is factually inaccurate[.]"). That is, all Mr. Gaskin did was evaluate "the market price premium" of a "100% WHOLE GRAIN" representation to no "whole grain" representation at all. *Id.* ¶ 58. Mr. Gaskin never assessed how consumers interpreted the phrase "100% WHOLE GRAIN." *See generally* Gaskin Rep. And he never assessed if consumers view the phrase "100% WHOLE GRAIN" as inconsistent with the presence of a small amount of cornstarch as a texturizing ingredient. In fact, Mr. Gaskin did not even show the Wheat Thins packaging to any consumer. *Id.*; *see also* Rebuttal Report of Steven P. Gaskin, ECF No. 73-7, ¶¶ 33–35; *cf. Alvarez*, 2017 WL 4785970, at *6, *aff'd sub nom. Razo*, 782 F. App'x 632 ("[T]he reasonable consumer standard requires consideration of the product label as a whole; context matters.").

Courts routinely grant summary judgment where, as here, the plaintiff's expert fails to provide evidence that the challenged claim was misleading to a reasonable consumer. *See, e.g.*, *Khasin*, 2016 WL 4502500, at *4 (finding that plaintiff's reliance on his expert's declaration "fails as [the expert] offers no opinion on whether Bigelow's label statements are likely to mislead reasonable consumers," and granting summary judgment because plaintiff "presented no

extrinsic evidence in support of his conclusory statement that Bigelow's claims are likely to mislead consumers"); *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at *10 (N.D. Cal. Oct. 15, 2014) (granting summary judgment on CLRA claims, finding that plaintiff failed to submit sufficient evidence to raise a genuine issue of fact as to whether a reasonable consumer would be deceived by the statement "No Sugar Added," because his expert's testimony was conclusory and "unsupported by any independent facts or data."). And courts reject price premium surveys as substitutes for surveys showing that a claim was misleading. *See Silva v. B&G Foods, Inc.*, No. 20-cv-00137-JST, 2023 WL 4712195, at *3 (N.D. Cal. July 24, 2023) (price premium survey was "not relevant to whether the reasonable consumer test has been violated" because "it measured only the effect that the presence or absence of the statement 'would have on demand and price'" which "says nothing about whether the statement itself is misleading or otherwise fraudulent.").

For example, in *Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019 (C.D. Cal. 2020), the plaintiff claimed that the word "Pure" on the defendant's honey packaging was misleading because the honey product allegedly contained trace amounts of pesticides. The plaintiff relied on the report of an expert, Dr. Maronick, in support of her argument that reasonable consumers would be deceived by the challenged statements. *Id.* at 1026. Unlike in this case, the plaintiff's expert actually attempted to measure consumers' perception of the challenged labeling by asking consumers about the meaning of the word "pure." *Id.* at 1028. However, the court determined that Dr. Maronick's survey was still insufficient because it avoided asking consumers the essential question underpinning the plaintiff's theory of liability: whether "pure" meant that the product could not contain "trace amounts" of pesticide chemicals. *Id.* The court explained:

> It would have been simple to present the Survey participants with a question going to whether the participant viewed a honey product containing trace amounts, or 41 parts per billion, of glyphosate, as less than "Pure" or "100% Pure." Maronick did not come close to doing so—instead, the raw Survey data and the Maronick Report offer no foundation upon which a factfinder could conclude that a reasonable consumer would be misled by Sioux Honey's labeling.

*Id*. at 1029. Ultimately, the court granted summary judgment for the defendant on the plaintiff's CLRA claim, because "it is incumbent upon [the plaintiff] to introduce evidence that could support a finding that reasonable consumers believe the word 'Pure' on the label means that there will be no *trace amounts* of pesticide in their honey" and "[s]he has failed to do so." *Id*.

Likewise, here, it would have been simple for Plaintiff Wallenstein's survey expert to ask consumers if they believed that a product that is "100% Whole Grain" could not contain cornstarch as a texturizer. Yet Mr. Gaskin failed to ask that core question. Therefore, like in *Tran*, Mr. Gaskin's survey cannot constitute evidence of a misleading claim. And, like in *Tran*, the Court should grant Defendants summary judgment due to the lack of such evidence.[8]

### 2. Plaintiff's Self-Serving Testimony Is Insufficient To Create A Triable Issue Of Fact.

In the absence of any relevant consumer survey evidence or expert testimony, Plaintiff's only evidence that the packaging could mislead is Plaintiff's own claim that he was personally misled by the "100% Whole Grain" representation. *E.g.*, ECF No. 1, ¶¶ 13–14, 22; Stiehl Decl. Ex. 2, Wallenstein Dep. at 260:1–22. Plaintiff's own testimony, however, cannot create a triable

---

[8] Plaintiff's counsel and Plaintiff's experts are no strangers to introducing proper survey evidence. For example, in *Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631-JST, 2024 WL 4565340, at *8 (N.D. Cal. Oct. 23, 2024), the plaintiff, represented by the same counsel (David Adam Fox, Joanna L. Fox, and Courtney M. Vasquez), alleged that the defendant's product labels created "deception in the implied amount of avocado." In support of his CLRA claim, the plaintiff hired a survey expert to design a "consumer perception survey to evaluate 'the effect of the alleged Avocado Representations . . . on relevant consumers' belief regarding *how much avocado* consumers believe [the product] contains.'" *Id*. (quotations omitted) (emphasis in original).

Similarly, in *Bush v. Rust-Oleum Corp.*, No. 20-CV-03268-LB, 2024 WL 308263, at *2 (N.D. Cal. Jan. 26, 2024), *appeal denied,* No. 24-913, 2024 WL 1328234 (9th Cir. Mar. 26, 2024), and *reconsideration denied,* No. 20-CV-03268-LB, 2024 WL 1892286 (N.D. Cal. Apr. 29, 2024), in support of his CLRA and express warranty claims, the plaintiff's expert J. Michael Dennis (one of Plaintiff's experts in this case) submitted a "consumer perception survey" regarding how consumers interpreted the challenged language, which the plaintiff relied upon in opposing summary judgment. *See id.*, Ps. Opp'n. to MSJ, 3:20-cv-03268, ECF 142; *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 669 (N.D. Cal. 2024) (in support of his CLRA and express warranty claims, "Plaintiff offers the expert testimony of Dr. Michael Dennis, Ph.D., a survey researcher, for a proposed consumer perception survey and proposed conjoint analysis. For the consumer perception survey, Dr. Dennis proposes a method for conducting a market research study that can measure consumers' perceptions of the Challenged Statements with respect to whether class members were misled as alleged by the Plaintiff.").

issue of fact as to whether a reasonable consumer would be misled. *See, e.g.*, *Ford*, 2014 WL 10293763, at *5–6, *aff'd*, 651 F. App'x 665 (9th Cir. 2016) (granting summary judgment on CLRA and express warranty claims because "Plaintiffs' declarations are not enough to show that FMC's omission was likely to deceive the public."); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-2438_PSG (PLAx), 2018 WL 11354864, at *8 (C.D. Cal. Jan. 24, 2018) (granting summary judgment on express warranty claims, holding that "Plaintiffs' deposition testimonies are insufficient to create a dispute as to whether 5HE's on-label representations have a capacity, likelihood or tendency to deceive or confuse the public.") (quotations omitted).

In an analogous case, *Rahman*, the court considered the plaintiff's claim that the "No Sugar Added" representation on the defendant Mott's apple juice was misleading because it failed to comply with FDA regulations. *Rahman*, 2014 WL 5282106 at *9. Mott's moved for summary judgment based on the plaintiff's lack of evidence that a reasonable consumer would be misled; in particular, the plaintiff relied solely on his own deposition testimony that he was misled by the challenged labeling. *Id*. at *10. The court granted summary judgment for Mott's, holding that "standing alone, evidence of his experience with the Mott's 100% Apple Juice product is not sufficient to draw a conclusion as to whether a reasonable consumer would have been similarly misled." *Id*. The court concluded that the plaintiff was required to "introduce some additional evidence in order to raise a triable issue of fact as to whether a reasonable consumer would be misled by the labeling on Mott's 100% Apple Juice," but failed to do so. *Id*.

Plaintiff Wallenstein has similarly offered no additional, relevant evidence that consumers would be misled by the "100% Whole Grain" representation, beyond his own anecdotal experience. Summary judgment is likewise appropriate here.

### 3. Eighteen-Year-Old Draft Regulatory Guidance And Third-Party Industry Certifications Are Not Evidence Of What Reasonable Consumers Believe.

In support of his motion for class certification, Plaintiff argued that 2006 FDA draft guidance regarding the meaning of the term "100% Whole Grain," and requirements by a third party that charges money to use a "100% Whole Grain" stamp constitute "common evidence of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-06033-VC

deception." *See, e.g.*, ECF No. 57 at 18–19. Regardless of whether those third-party sources suffice to establish commonality for class certification, they are insufficient to create a triable issue on liability.

First, the FDA guidance was never finalized—it is draft guidance from 2006 that never represented the FDA's final interpretation. *See* 71 Fed. Reg. 8597 (Feb. 17, 2006); FDA, *Draft Guidance for Industry and FDA Staff: Whole Grain Label Statements*, February 2006, https://www.fda.gov/regulatory-information/search-fda-guidance-documents/draft-guidance-industry-and-fda-staff-whole-grain-label-statements ("FDA Draft Guidance") ("This draft guidance, when finalized, will represent the Food and Drug Administration's (FDA's) current thinking on this topic. It does not create or confer any rights for or on any person and does not operate to bind FDA or the public."); *see also S. Utah Wilderness All. v. Dabney*, 222 F.3d 819, 828 (10th Cir. 2000) (draft, non-binding agency policies are not "valid agency position[s]" and do not warrant court deference).

Moreover, even if it the FDA guidance had been finalized, California courts have made clear that "FDA guidance [] is not binding authority for purposes of [] consumer deception claims." *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016) ("Courts, not the FDA, determine whether a product is misleading under" California's consumer protection laws). This is especially true where the plaintiff has not shown that a reasonable consumer is "sufficiently familiar" with FDA's regulations or guidance. *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 765–66 (N.D. Cal. 2022) (dismissing CLRA claim for failure to show that the challenged representation is likely to mislead a reasonable consumer); *see also Khasin v. Hershey Co.*, No. 5:12-cv-01862-EJD, 2015 WL 13307405, at *5 (N.D. Cal. Mar. 31, 2015) (granting summary judgment for defendant Hershey, in part because "FDA letters . . . [are] not relevant to showing that consumers are likely to be misled by Hershey's statements"). Here, Plaintiff produced no evidence that a reasonable consumer would ever discover—let alone attribute value to—draft FDA guidance from 2006. Moreover, the draft guidance is also irrelevant because it says *nothing* to support Plaintiff's theory that cornstarch "is

a refined grain"; in fact, it does not mention cornstarch at all. *See* Tiso Decl. II ¶ 3; *see also* FDA Draft Guidance.

Second, California federal courts regularly hold that the standards set by third-party certification groups, like the Whole Grains Council, are not a substitute for evidence of what a "reasonable consumer" believes. *See, e.g.*, *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083, 1097 (N.D. Cal. 2023) (dismissing CLRA claims, and rejecting as implausible the plaintiff's argument that "a reasonable consumer would interpret [the challenged representation] to refer to the minimum standards . . . set by certain third-party certification groups"); *cf. Sultanis v. Champion Petfoods USA Inc*., No. 21-CV-00162-EMC, 2021 WL 3373934, at *9–10 (N.D. Cal. Aug. 3, 2021) ("How [third party] authorities define the [challenged representation] is therefore irrelevant to establish, as a matter of law, whether that term is false or misleading"); *Delman v. J. Crew Grp., Inc*., No. CV 16-9219-MWF (ASX), 2017 WL 3048657, at *7 (C.D. Cal. May 15, 2017) ("The question is not what meaning a neutral third-party might give to the [challenged representation] standing on its own. The question is how a reasonable consumer would interpret the [challenged representation] in the context of the specific commercial interaction that Plaintiff has challenged.").

Highlighting the irrelevance of the Whole Grains Council's standards in particular, the USDA has expressly considered the Whole Grains Council's certification stamps and determined that they "are not sufficient documentation to determine if a food is whole grain-rich." Stiehl Decl. Ex. 7 at 17. The USDA took that position even though the USDA requires evaluation of all the grain ingredients in a food product to determine if it is whole grain rich. *Id.* at 5–6.

FDA's never-finalized 2006 draft guidance and the views of the Whole Grains Council (a third-party certification group) do not constitute evidence of whether a reasonable consumer would be misled by the challenged labeling as a matter of law. Therefore, these materials do not establish a triable issue of fact.

### B. Conversely, Defendants' Evidence Demonstrates That The "100% Whole Grain" Representation Is True And Accurate.

While Defendants do not need to present evidence establishing the truthfulness of their

statements to prevail on summary judgment, the fact that Defendants have done so here further underscores Plaintiff's failure to proffer any evidence regarding how reasonable consumers interpret the challenged representation. Specifically, Defendants produced several pieces of evidence showing that the "100% Whole Grain" statement is factually true, and that Defendants carefully crafted the Wheat Thins labeling to avoid misleading consumers.

### 1. Wheat Thins Are 100% Whole Grain Because Cornstarch Is Not A Grain.

Plaintiff presented no testimony from food scientists, agriculture specialists, or the like, to establish that cornstarch is a grain ingredient. On the other hand, Mondelēz's nutrition strategy and communications senior specialist, Rachel Green, and Mondelēz's regulatory specialist, Paula Tiso, testified that (1) cornstarch is a grain derivative, rather than a grain ingredient; and (2) cornstarch functions as a texturizer in Wheat Thins, not as a grain ingredient. Stiehl Decl. Ex. 3, Green Dep. 45:24–46:3; Stiehl Decl. Ex. 4, Tiso Decl. I, ¶¶ 4–5; Stiehl Decl. Ex. 1, Tiso Dep. 95:8–11, 109:15–23.

Consistent with Ms. Green and Ms. Tiso's testimony, the USDA and the CDSS do not consider cornstarch to be a grain ingredient. These government agencies require evaluation of all the grain ingredients in a food product to determine if it is whole grain rich, and consistently state that cornstarch should be "disregarded" in making this determination. *See* Section C (Factual Background), *supra*.[9] And unlike the never-finalized draft FDA guidance Plaintiff has repeatedly relied upon, the USDA and the CDSS have published materials on the topic of cornstarch in the context of grain products, which refute Plaintiff's position that cornstarch should be considered a grain ingredient. Indeed, USDA's presentation regarding "Identifying Whole Grain-Rich Foods," states that a product with the following ingredients only has "one

---

[9] The National CACFP Association, a national organization that supports individuals with USDA's Child and Adult Care Food Program, also states that there are "ingredients you can disregard when determining if a product is whole grain-rich." Tiso Decl. II, Ex. 2, National CACFP Association, Grain Requirement in the CACFP; Q&A, https://www.cacfp.org/2018/04/04/62188/, April 4, 2018. One of those ingredients is "cornstarch."

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:22-CV-06033-VC

grain ingredient":





**Foods with One Grain Ingredient**

Ingredients:
Whole Grain Durum Wheat Flour

Ingredients:
Whole Grain Wheat Flour,
Soybean Oil, Sugar, Cornstarch,
Malt Syrup, Salt, Refiner's Syrup,
Leavening, Vegetable Color

Stiehl Decl. Ex. 8 at 24 (red box in original). Like Wheat Thins, the second product pictured

above lists whole grain wheat flour as its first ingredient, and cornstarch as its fourth ingredient.

*Id*. According to USDA criteria, Wheat Thins likewise contains only one grain ingredient—

whole grain wheat flour. *See id*.

Ms. Green and Ms. Tiso's testimony, the USDA guidance, and the CDSS criteria all

establish that the phrase "100% Whole Grain" on Wheat Thins is accurate because cornstarch is

not a grain ingredient, and because it does not count in determining a product's whole grain

content. Indeed, the only grain ingredient in Wheat Thins—whole grain wheat—is 100% whole

grain. This evidence stands in stark contrast to Plaintiff's lack of evidence establishing either that

the "100% Whole Grain" statement is false or that any reasonable consumer would be misled.

> **2.    Defendants Produced Evidence Showing That The "100% Whole Grain"
> Representation Here Means That 100% Of The Wheat In Wheat Thins
> Is Whole Grain.**

While Defendants could truthfully assert that 100% of the grains in Wheat Thins are

whole, per USDA guidelines, Defendants always intended "100% Whole Grain" above "Wheat

Thins" to mean that 100% of the wheat in the product is whole grain. As Ms. Tiso explained:

"The internal guidance and protocol at the company is, and has been during the entirety of the

class period beginning on October 13, 2018, to keep the '100% whole grain' description on

Wheat Thins products next to 'wheat' in order to modify the term. That is why, when the

statement '100% whole grain' is not above the term 'Wheat Thins,' it appears as '100% whole

grain wheat' on packaging and marketing materials." Stiehl Decl. Ex. 4, Tiso Decl. I ¶ 4. Pre-

litigation emails corroborate this. *See* ECF No. 70-3 at 2 (internal Mondelez email chain from September 2020, pg. 2 ("[W]e should say '100% Whole Grain Wheat' in the claims section of the product pages. I think we're ok to keep '100% Whole Grain' when it's immediately above Wheat Thins")).[10]

Even if Plaintiff disagrees with this interpretation, he produced absolutely no evidence that a reasonable consumer would likewise disagree—even his experts failed to test how consumers actually interpreted the language at issue. By contrast, the only consumer survey evidence in this litigation comparing the terms "100% Whole Grain" and "100% Whole Grain Wheat" demonstrates that consumers view these representations similarly. Defendant's expert, Dr. Bruce Isaacson, performed a consumer survey to determine the relative importance of those two phrases to consumers, and "conclude[d] that there is no material difference to consumers between the language on the Wheat Thins package that reads '100% Whole Grain' and language that reads '100% Whole Grain Wheat.'" Isaacson Rep. ¶ 5.

Ultimately, Plaintiff has the burden of producing evidence that reasonable consumers would be misled by the challenged "100% Whole Grain" representation. He has not carried that burden. Because "Defendants, as the moving party, have presented evidence negating that they engaged in a misrepresentation and have shown that Plaintiff[] do[es] not have enough evidence to prove otherwise and to carry [his] ultimate burden of persuasion at trial," Plaintiff has "failed to show a triable issue of fact." *Vrugtman v. Its Just Lunch Int'l LLC*, No. EDCV 20-2352_JGB (SPx), 2023 WL 6369765, at *16 (C.D. Cal. Aug. 25, 2023) (quotations omitted).

## II.    Plaintiff's Inability To Prove Damages Independently Warrants Summary Judgment.

A defendant may prevail on summary judgment based on a plaintiff's failure to prove class damages, even after a class has been certified. *See Senne v. Kansas City Royals Baseball*

---

[10] *See also* Matyjas Decl. Ex. 4, MDLZ-WT 003985 at 3997, 4000 (Wheat Thins marketing guidelines from 2014 showing Pack Imagery with "100% Whole Grain" above "Wheat Thins" along with the Brand Message "100% Irresistible. 100% Whole Grain Wheat"); Matyjas Decl. Ex. 5, MDLZ-WT 093568 at 93574 (Wheat Thins product strategy presentation from September 2020 referring both to Wheat Thins "remain[ing] anchored in 100% whole grain wheat claim" and its "strength in 100% Whole Grain").

*Corp.*, No. 14-CV-00608-JCS, 2017 WL 897338, at \*32 (N.D. Cal. Mar. 7, 2017), *aff'd in relevant part, rev'd in part and remanded*, 934 F.3d 918 (9th Cir. 2019) ("[C]ertification of the proposed classes will not preclude Defendants from challenging the sufficiency of the . . . Plaintiffs' damages model on summary judgment and/or at trial."); *see also Culley v. Lincare Inc.*, No. 2:15-cv-00081-MCE-CMK, 2017 WL 3284800, at \*2, \*4–5 (E.D. Cal. Aug. 2, 2017) (granting summary judgment and decertifying class claims because "Plaintiff's proposed damages model" did not match with plaintiff's theory of liability).

Here, Plaintiff's theory is that "consumers paid excess money, i.e., a price premium, for Wheat Thins under the mistaken belief that *all* (100%) of the grain ingredients in the crackers are whole grain." Mot. for Class Cert. at 22 (emphasis in original). Plaintiff's survey and damages expert, however, did not determine a price premium in accordance with Plaintiff's theory of liability. That is, Plaintiff's expert only established that consumers value products with whole grain (not necessarily 100% whole grain), a characteristic Wheat Thins undisputedly has. By contrast, Defendants' evidence establishes that consumers do not attach additional value to the statement that something is "100%." Accordingly, the Court should grant summary judgment on Plaintiff's claims.

### A.    Mr. Gaskin's Damages Model Does Not Match Plaintiff's Theory Of Liability.

Mr. Gaskin's consumer survey and damages analysis do not address the central question of Plaintiff's theory of liability: whether consumers are willing to pay more for a product with "*all* (100%)" whole grain ingredients, compared to a product such as Wheat Thins, which undisputedly has 100% whole grain wheat ingredients. Instead, Mr. Gaskin identified a price premium solely based on the value consumers associated with "100% Whole Grain," *see* Section D (Factual Background) *supra*, without any comparison to the value consumers associated with representations such as "Made with Whole Grain" or "100% Whole Grain Wheat"—which are undisputably accurate with respect to Wheat Thins. Mr. Gaskin's survey—and the damages model based on it—therefore cannot establish class damages.

The recent ruling in *Flodin* is instructive. There, the plaintiffs (represented by the same

counsel as in this case) alleged that the statement "Made with Avocado" on the defendant's product packaging was misleading, because the product was made with dried avocado meal, rather than fresh avocado. 2024 WL 4565340, at *9. The plaintiffs' theory of liability was that the defendants had engaged in "deception in the implied amount of avocado." *Id*. at *8. The plaintiffs hired the same expert, Mr. Gaskin, to evaluate a price premium associated with the challenged "Made with Avocado" representation. *Id*. Just as in this case, Mr. Gaskin performed a conjoint analysis solely to determine the price premium associated with the challenged representation "Made with Avocado." *Id*. at *7. He did not evaluate the price premium associated with any other representations regarding the product's avocado content. *Id*.

The court found Mr. Gaskin's model insufficient to measure class damages, because it did not match the plaintiff's theory of liability regarding the "implied amount of avocado":

> [B]y proposing to measure the price premium attributable to the claim 'Made with Avocado' generally, the proposed survey would not explain whether the respondents would pay a price premium because the product is advertised as [having avocado at all], or because it is advertised as [having avocado in a particular amount], or a combination of the two.

*Id*. at *10 (quotations omitted, brackets in original).

Mr. Gaskin's survey is likewise fatally flawed here, because evaluating the price premium attributable to the "100% Whole Grain" language alone does not assess whether consumers are willing to pay a price premium because the product is advertised as containing whole grain, or because it is advertised as having 100% whole grain, or a combination of the two. *See id*.

Accordingly, because Mr. Gaskin's class damages model does not correspond to Plaintiff's liability theory, Plaintiff has no evidence of class damages, and the Court should grant summary judgment on Plaintiff's claims. *Culley*, 2017 WL 3284800, at *2, *4–5.

### B.   Defendants' Evidence Refutes The Existence Of A Price Premium Associated With The "100% Whole Grain" Representation.

Defendants produced the only evidence in this case evaluating Plaintiff's theory of whether consumers are willing to pay more for a product with "100%" whole grain ingredients, compared

to a product with "100% Whole Grain Wheat," or a product that is simply made with "Whole Grain." This evidence refutes the existence of a price premium to support Plaintiff's claims.

Defendant's survey expert, Dr. Isaacson, performed a consumer survey evaluating the value consumers attribute to the representations "100% Whole Grain" and "100% Whole Grain Wheat," respectively. Isaacson Rep., ¶ 5. The survey demonstrates that there is no material difference in the value consumers attach to the two representations, and that adding the word "Wheat" to the representation has no meaningful effect on consumer purchasing decisions. *Id.* ¶¶ 5, 158 i.v. In fact, the survey shows that consumers attributed a slightly *higher* value to the "100% Whole Grain Wheat" representation as compared to the "100% Whole Grain" representation." *Id.* ¶¶ 150, 152.[11] Accordingly, Dr. Isaacson's survey indicates that consumers are willing to pay about the same amount (not more) for products advertised as having *all* (100%) whole grain ingredients, as compared to Wheat Thins—which undisputedly contains 100% whole grain wheat ingredients. *See id.*

Further, a 2020 conjoint survey commissioned by Mondelēz also suggested that consumers view the representations "Whole Grain" and "100% Whole Grain" similarly. The results of the survey showed that consumers attached ██████ relative importance to the term "Whole Grain." Matyjas Decl. Ex. 7, MDLZ-WT 016947 at 17041. ████████████████████ ████████████████, the 3.24% price premium Mr. Gaskin calculated for the challenged "100% Whole Grain" representation. This suggests that the price premium Mr. Gaskin observed in his conjoint study is just as likely to be due to the "Whole Grain" portion of the challenged representation, not the "100%" portion. The 2020 Mondelēz survey also evaluated the net benefits consumers associate with the representations "100% Whole Grain Wheat" and "Made with Whole Grain," respectively. *Id.* The results demonstrated no meaningful difference in how

---

[11] For example, survey respondents were asked, "Which attributes would you consider if you were deciding whether to purchase the package of Wheat Thins that you just viewed." Slightly more (1.7%) of the respondents selected "The crackers are 100% whole grain" compared to "The crackers are 100% whole grain wheat." *Id.* ¶¶ 150, 152. *See also* Section E (Factual Background), *supra*.

consumers value these representations. *Id*. at 17034 (█████████████████████████████████

███████████████████████████████████████████████████████████).

In sum, the only evidence testing Plaintiff's damages theory *refutes* that there is a price premium associated with the "100% Whole Grain" representation, compared to undisputedly accurate representations about Wheat Thins such as "100% Whole Grain Wheat" or "Made with Whole Grain." Accordingly, summary judgment in favor of Defendants is warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment for Defendants on all claims.

Dated:  December 19, 2024                              Respectfully submitted,

                                                       CROWELL & MORING LLP

                                                       By:  */s/ Jason Stiehl*
                                                            Jennifer Salzman Romano
                                                            Jason Stiehl
                                                            Rebecca M. Suarez
                                                            Attorneys for Defendants MONDELĒZ
                                                            INTERNATIONAL, INC., MONDELĒZ
                                                            GLOBAL, LLC and NABISCO, INC.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
                                        CASE NO. 3:22-CV-06033-VC