Jennifer Salzman Romano (SBN 195953)
JRomano@crowell.com
CROWELL & MORING LLP
515 South Flower Street
41st Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Rebecca M. Suarez (SBN 284853)
RSuarez@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

Jason Stiehl (admitted *pro hac vice*)
JStiehl@crowell.com
CROWELL & MORING LLP
455 N. Cityfront Plaza
Suite 3600
Chicago, IL 60611
Telephone: 312.321.4200

Attorneys for Defendants MONDELĒZ INTERNATIONAL, INC., MONDELĒZ GLOBAL, LLC and NABISCO, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID WALLENSTEIN, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

MONDELĒZ INTERNATIONAL, INC., a Virginia corporation, MONDELĒZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation,

Defendants.

Case No. 3:22-cv-06033-VC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Hearing Date: January 23, 2025
Hearing Time: 10:00 a.m.
Judge: The Hon. Vince Chhabria
Ctrm.: 4, 17th Floor

Date Action Filed: October 13, 2022

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1
ARGUMENT ..... 2
I. PLAINTIFF BEARS THE BURDEN TO ESTABLISH ACTUAL CONSUMER CONFUSION. ..... 2
II. PLAINTIFF FAILED TO CARRY HIS BURDEN TO OFFER EVIDENCE OF CONSUMER CONFUSION. ..... 5
A. EVIDENCE REGARDING THE NATURE OF CORNSTARCH IS NOT EVIDENCE OF CONSUMER CONFUSION. ..... 6
B. THE PARTIES' INTERPRETATION OF THE "100% WHOLE GRAIN WHEAT THINS" LABELING IS NOT EVIDENCE OF CONSUMER CONFUSION. ..... 8
C. THE WHOLE GRAINS COUNCIL'S REQUIREMENTS TO OBTAIN ITS 100% WHOLE GRAIN STAMP AND EIGHTEEN-YEAR-OLD DRAFT FDA GUIDANCE ARE NOT EVIDENCE OF CONSUMER CONFUSION. ..... 9
D. PLAINTIFF RELIES ON ONLY TWO DOCUMENTS RELATING TO CONSUMERS, BUT NEITHER EVIDENCES CONFUSION ABOUT THE CHALLENGED REPRESENTATION ON WHEAT THINS PACKAGING. ..... 11
III. PLAINTIFF'S CONJOINT STUDY DOES NOT EVIDENCE THAT EITHER PLAINTIFF OR ANY CLASS MEMBERS PAID MORE FOR WHEAT THINS BECAUSE THEY THOUGHT IT CONTAINED NO CORNSTARCH. ..... 13
CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bush v. Rust-Oleum Corp.*,
No. 20-CV-03268-LB, 2024 WL 308263 (N.D. Cal. Jan. 26, 2024) ....................................... 2

*Chaplin v. Walmart, Inc.*,
No. 3:23-cv-00878-WHO, 2023 WL 4843956 (N.D. Cal. May 25, 2023)............................... 3

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ............................................................................... 2, 12

*Delman v. J. Crew Grp., Inc.*,
No. CV 16-9219-MWF (ASX), 2017 WL 3048657 (C.D. Cal. May 15, 2017)........................ 9

*Flodin v. Cent. Garden & Pet Co.*,
No. 21-cv-01631-JST, 2024 WL 4565340 (N.D. Cal. Oct. 23, 2024).................................... 15

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2017) ........................................................................ 3

*Hawkins v. Kroger Co.*,
512 F. Supp. 3d 1079 (S.D. Cal. 2021)......................................................................... 4

*Ivie v. Kraft Foods Glob., Inc.*,
No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013)............................. 10, 11

*Krause-Pettai v. Unilever United States, Inc.*,
696 F. Supp. 3d 916 (S.D. Cal. 2023)................................................................. 2, 4, 6

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020)............................................................................... 14

*Krueger v. Wyeth, Inc.*,
396 F. Supp. 3d 931 (S.D. Cal. 2019)......................................................................... 13

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) .................................................................................. 15

*Lytle v. Nutramax Labs., Inc.*,
No. 22-55744, 2024 WL 3915361 (9th Cir. Aug. 23, 2024) .............................................. 15

*Morales v. Kraft Foods Grp., Inc.*,
LA CV14-04387 JAK (PJWx), 2016 WL 11743532 (C.D. Cal. Dec. 2, 2016). ..................... 10

*Mullins v. Premiere Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) .......................................................................... 3

*Orr v. Bank of Am.*,
285 F.3d 764 (9th Cir. 2002) ....................12

*Robie v. Trader Joe's Co.*,
No. 20-CV-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) ....................8

*Sali v. Corona Regional Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ....................15

*Silicon Image, Inc. v. Analogix Semiconductor*,
642 F. Supp. 2d 957 (N.D. Cal. 2008) ....................4

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*,
673 F. Supp. 3d 1083 (N.D. Cal. 2023) ....................9

*Victor v. R.C. Bigelow, Inc.*,
No. 13-CV-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ....................2, 3

**California Cases**

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006) ....................4

## INTRODUCTION

When a plaintiff cannot identify record evidence supporting every element on which he bears the burden at trial, the defendant is entitled to summary judgment. This is black letter law. Here, Plaintiff does not carry his burden of production on two essential elements of his claims: (1) consumer confusion and (2) harm. To avoid summary judgment, Plaintiff creates distractions in his opposition. First, he attempts to shift the evidentiary burden to Defendants, but this has no merit under the law. Second, he attempts to create disputes of fact relating to facts and issues in the case, but, as these do not address the two central elements above, this also cannot save his claims. Plaintiff must offer evidence on each element to survive summary judgment. He has not done that.

Plaintiff previously defeated a motion to dismiss and certified a class by relying on what he might be able to prove. But the time for hypotheticals has passed and Plaintiff must now identify admissible *extrinsic* evidence of consumer confusion and offer evidence of classwide harm that ties to that confusion. Plaintiff offered *no evidence* on either point. As to consumer confusion, Plaintiff can only point to: (1) a third-party "pay for play" certification that Defendants never used; and (2) internal Mondelēz documents about that certification. This is not evidence of what a reasonable consumer believes. Plaintiff's evidence of purported harm is similarly beside the point, as he relies on a conjoint study that does not support his theory that consumers paid more for Wheat Thins because they did not know they contained cornstarch.

Plaintiff hired three experts in this case, but none of those experts conducted a consumer survey regarding whether a reasonable consumer would be misled by the challenged labeling on Wheat Thins packaging. Those experts also did not assess whether there is any price premium associated with the challenged representation ("100% Whole Grain") as compared to unquestionably accurate representations about whole grain in Wheat Thins, such as "100% Whole Grain Wheat" or "Made With Whole Grain." Discovery has closed and Plaintiff has no evidence to prove consumer confusion and no evidence to prove harm.

Accordingly, summary judgment should be granted in favor of Defendants on all of

Plaintiff's claims.

## ARGUMENT

### I. Plaintiff Bears The Burden To Establish Actual Consumer Confusion.

Plaintiff does not contest that he failed to produce consumer survey evidence or expert evidence that a reasonable consumer would be misled by the challenged representation. *See* Motion at 13–15. *See* Opp. at 14 ("A Genuine Issue of Fact of Deception Exists *without Consumer Survey or Expert Evidence*") (emphasis added). Nor does Plaintiff dispute that his own anecdotal testimony that he was misled cannot create an issue of material fact; in fact, Plaintiff does not rely on his testimony at all. *See generally* Opp.

Plaintiff instead contends that extrinsic evidence of consumer confusion is not required to meet his burden at summary judgment. *Id.* at 3 n.1, 14–15. This is not the law in this Circuit. *See Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2016 WL 4502528, at *4 (N.D. Cal. Aug. 29, 2016), *aff'd*, 708 F. App'x 333 (9th Cir. 2017) ("[I]ndividual testimony is insufficient to establish that a reasonable consumer is likely to be misled, as required under the reasonable consumer test."); *Bush v. Rust-Oleum Corp.*, No. 20-CV-03268-LB, 2024 WL 308263, at *2 (N.D. Cal. Jan. 26, 2024), *appeal denied,* No. 24-913, 2024 WL 1328234 (9th Cir. Mar. 26, 2024) ("[T]o survive summary judgment," a plaintiff must offer "extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers"); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025–26 (9th Cir. 2008) (holding that "'a few isolated examples' of actual deception are insufficient" to meet plaintiff's burden on summary judgment); *Krause-Pettai v. Unilever United States, Inc.*, 696 F. Supp. 3d 916, 928 (S.D. Cal. 2023) (granting summary judgment against plaintiffs who relied "on their own anecdotal accounts of deception" against defendants' "countervailing evidence that undercuts their theory of deception").

In an effort to avoid his evidentiary burden, Plaintiff miscasts Defendants' bases for summary judgment. Contrary to Plaintiff's argument, Defendants do not contend that no reasonable consumer could be misled by the challenged representation, or that the representation

is literally true, "as a matter of law." Opp. at 1, 3. That is because the law does not require Defendants to prove either of these points, as a defendant does "not need to prove that its statements are true" to succeed on summary judgment; it is enough to show that Plaintiff failed to offer evidence "that the challenged statements tend to mislead consumers." *Victor*, 2016 WL 4502528, at *3–4, *aff'd*, 708 F. App'x 333. While it is true that Defendants offered evidence demonstrating that the challenged representation is true and accurate, this only serves to highlight the lack of evidence that Plaintiff himself presents. *Id*. at *3 (if the challenged "statements are true, it is not likely that they would deceive a reasonable consumer").

Plaintiff also relies on inapposite cases to argue that he has a lesser evidentiary burden, but these cases cut against his argument and do not fit the facts here. For example, Plaintiff relies on *Mullins v. Premiere Nutrition Corp.*, 178 F. Supp. 3d 867, 891 (N.D. Cal. 2016), which specifically noted that "an isolated anecdotal incident is likely insufficient to show that the reasonable consumer" was deceived. *Id.* (*citing Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008)). Unlike Plaintiff here, the plaintiff in *Mullins* introduced market research surveys to support the allegation that the dietary supplement's advertisements regarding joint health misled consumers into purchasing it—including that the "vast majority of consumers purchased [the at-issue product] because they suffered arthritis and joint pain and stiffness." *Id*. By contrast, the only consumer surveys introduced regarding confusion are Defendants' own, which demonstrate that the challenged "100% Whole Grain" representation has no meaningful effect on consumer purchasing decisions when compared to indisputably accurate representations such as "100% whole grain wheat" and "whole grain." Motion at 24.

Plaintiff also relies on *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2017), Opp. at 14, but *Hadley* was decided at class certification, not summary judgment, and the plaintiff did not yet have the burden to offer evidence of actual consumer confusion. Plaintiff's reliance on *Chaplin v. Walmart, Inc.*, No. 3:23-cv-00878-WHO, 2023 WL 4843956 (N.D. Cal. May 25, 2023), is equally unavailing. That case did not involve evidence at all, as it was an opinion on a motion to dismiss.

Plaintiff's remaining authorities are readily distinguishable, because they involved defendant *admissions* and *undisputed evidence* that the challenged representation was false—which is the opposite of the evidence on this motion. For example, in *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079 (S.D. Cal. 2021), the plaintiff purchased breadcrumbs with a front label that read "0g Trans Fat Per Serving" and a back label listing "Trans Fat 0g." The court found that deception was self-evident because of the defendant's "admission that the breadcrumbs contained some trans fat." *Id.* at 1088. Other courts have categorized *Hawkins* as showing that plaintiffs may bear a lighter extrinsic evidentiary burden when challenging "patently false marketing." *See Krause-Pettai.*, 696 F. Supp. 3d at 928. Here, however, Defendants put forth evidence that the challenged "100% Whole Grain" claim is truthful, including citation to government agency criteria that does not consider cornstarch to be a grain ingredient. *See* Section II.A *infra.* A representation cannot be *patently* false if it is consistent with governmental guidance. Thus, even if *Hawkins* stands for the proposition that a lower evidentiary standard may exist as an exception, the exception does not apply here.

Similarly, Plaintiff's reliance on *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006) (Opp. at 14) and *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957 (N.D. Cal. 2008), is misplaced. In *Colgan*, the plaintiff challenged the defendant's representation that its products were "Made in U.S.A." 135 Cal. App. 4th at 672. There, it was "*undisputed* that [] components" underwent manufacturing processes outside the United States," and the defendant "presented *no evidence suggesting a lack of deception*." *Id.* at 681-82 (emphasis added). In *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957 (N.D. Cal. 2008), it was *undisputed* that the defendant's chips were not software compatible with those of Silicon Image, even though the defendant marketed them as "'compatible' and 'drop-in replaceable' with Silicon Image chips." *Id.* at 969. By contrast, no such undisputed facts exist here, and Defendants provided evidence that the challenged representation is true. *See* Section II.A infra; *see also* Motion at 18–21.

Plaintiff fails to identify any authority demonstrating that he is excused from coming

forward with extrinsic evidence of consumer confusion. This is grounds for summary judgment in favor of Defendants.

**II. Plaintiff Failed To Carry His Burden To Offer Evidence Of Consumer Confusion.**

The voluminous record in this case contains no evidence that a consumer other than Plaintiff either: (1) read the label in the manner in which Plaintiff does; (2) was confused into believing that all grains contained in the product are whole; or (3) would not have purchased the product for the exact same price if he had known that the product contained cornstarch. While Plaintiff attempts to cobble together snippets of third-party and internal Mondelēz documents to create a contrived narrative of deception, these documents do not address whether a reasonable consumer would likely be misled by the challenged labeling.

First, Plaintiff points to evidence that he claims creates a factual dispute regarding whether cornstarch is a refined grain. *See* Opp. Exs. 3, 10–14, 21. But resolving whether cornstarch is a refined grain is distinct from the question Plaintiff bears the burden to establish here: whether a reasonable consumer would be misled by the challenged representation. While Defendants offered evidence that cornstarch is <u>not</u> a refined grain (making the challenged representation true), the Court need not decide this to grant summary judgment based on Plaintiff's lack of evidence of consumer confusion. Defendants' evidence challenges whether Plaintiff's interpretation is correct, which then requires, as discussed *supra*, plaintiff to come forth with actual evidence of consumer confusion.

Second, Plaintiff points to evidence showing there is a dispute of fact regarding whether the product packaging refers to "100% whole grain" or "100% whole grain wheat." *See* Opp. Exs. 1–9, 19; *see also* ECF 110, Plaintiff's Request for Judicial Notice ("P's RJN") Exs. A–B. At most, this "dispute" proves that there is nothing "patently false" about Defendants' statement. Importantly, other than Plaintiff's own testimony, Plaintiff has not identified any evidence that a consumer actually found anything confusing (let alone false) about this statement.

Third, Plaintiff relies upon the views of a non-party, the Whole Grains Council, and on unfinalized, draft FDA guidance to suggest consumer confusion. *See* Opp. Exs. 15–22; P's RJN

Exs. C–E. Because this evidence says nothing about what consumers thought, it is insufficient as a matter of law to create triable issue on consumer confusion. Mot. at 16–18.

Once the distractions are removed, Plaintiff identifies only two instances in the record that mention consumers *at all* in the context of the challenged labeling. *See* Opp. Exs. 16–17. But neither document demonstrates that consumers were misled, and regardless, such limited anecdotal evidence is insufficient as a matter of law. *See Krause-Pettai*, 696 F. Supp. 3d at 928 ("[A]s many as seven 'Plaintiffs' deposition testimonies' have failed to meet [the summary judgment standard], when unaccompanied by other pertinent evidence of deception.").

**A. Evidence Regarding The Nature of Cornstarch Is Not Evidence Of Consumer Confusion.**

A substantial portion of Plaintiff's opposition focuses on record evidence that supposedly creates a triable issue as to whether cornstarch is a refined grain. Opp. at 6–10, 13, 18–20; *see* Opp. Exs. 3, 10–14, 21. None of these exhibits save Plaintiff from summary judgment because they do not demonstrate that reasonable consumers would be misled by the challenged labeling.

As an initial matter, Defendants' evidence offered in support of its Motion demonstrates that cornstarch is not a grain ingredient *at all* (and thus is not a refined grain). *See* Mot. at 6–7 (cornstarch is not a grain ingredient, according to United States Department of Agriculture ("USDA") and California Department of Social Services ("CDSS") criteria and the testimony of Mondelēz regulatory employees).[1] While this evidence demonstrates that the challenged

[1] Plaintiff baldly asserts that the USDA and CDSS's requirements for determining if a food is whole grain-rich are "irrelevant" to the issue of whether cornstarch is a refined grain. Opp. at 3. Plaintiff misses the point. Plaintiff does not dispute that USDA and CDSS's criteria for examining grain-rich foods require examination of all the whole-grain and non-whole grain ingredients in a product, including "refined" grains like enriched wheat flour. These governmental agencies provide that cornstarch is a "grain derivative" that may be "disregarded" in assessing grains altogether. *See* Mot. at 6–7. Plaintiff also does not dispute that USDA states that a product containing "whole grain wheat flour" and "cornstarch" has only one grain ingredient: whole grain wheat flour. *See id*. That is because government agencies with authority to regulate food products do not consider cornstarch to be a grain at all. Notably, Plaintiff did not oppose Defendants' request for judicial notice of these materials pursuant to Federal Rule of Evidence 201. ECF 106.

representation is true, the Court does not need to decide that issue in evaluating whether Plaintiff met his burden on the issue of consumer confusion, as Plaintiff's own brief recognizes that these are two distinct inquiries. *See* Opp. at 22 ("A statement may be deceptive and actionable under the UCL, FAL, and CLRA even though it is truthful") (quoting *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011)).

Moreover, Plaintiff repeatedly mischaracterizes the record in an attempt to create a factual issue. For example, Plaintiff relies upon an email from Mondelēz employee Judy Farber, summarizing "general guidance given by the WGS Council" to obtain its stamp of approval, including that "[c]ornstarch would be consider[ed] a refined grain." Opp. Ex. 13. Plaintiff claims that this is an admission by Defendants that cornstarch is a refined grain. *Id.* This is false; this email contains a summary of the Whole Grains Council's position on cornstarch, not an "admission" from Defendants. More importantly, the email says nothing about consumers or whether a reasonable consumer would be misled by the challenged representation.

Plaintiff similarly mischaracterizes Defendants' employee testimony and discovery responses as "admissions" that cornstarch is a refined grain. Opp. at 13; *see, e.g.*, Opp. Ex. 3 at 82:19–23 (Tiso agreeing that cornstarch is not a whole grain, without agreeing that cornstarch is a refined grain or even a grain at all); Opp. Ex. 12, Def.'s RFA Resp Nos. 1–2 (Defendants admitting that cornstarch is not a whole grain, without any statement regarding whether cornstarch is a refined grain). Again, none of this evidence reflects consumer confusion.

The *only* evidence Plaintiff identifies that actually supports his contention that cornstarch is a refined grain is the requirements of the Whole Grains Council to obtain its 100% Whole Grain stamp. While this evidence may create an issue of fact as to whether Defendants' representations would have met the Whole Grains Council's requirements for its stamp (which was never used), it does not demonstrate what consumers believe or whether a reasonable consumer would be misled by the challenged representation. *See* Section II.C *infra*.

**B. The Parties' Interpretation Of The "100% Whole Grain Wheat Thins" Labeling Is Not Evidence Of Consumer Confusion.**

Plaintiff similarly relies on various sources, including the dictionary definition of "100%," the Wheat Thins packaging itself, and deposition testimony of Defendants' employees to contest Mondelēz's internal interpretation of the challenged "100% Whole Grain Wheat Thins" representation. Opp. at 2, 20–22; Opp. Exs. 1–9, 19; ECF 110, P's RJN Exs. A, B.

Again, Defendants' evidence demonstrates that internally, Mondelēz employees interpreted the challenged representation to mean that 100% of the wheat in Wheat Thins is whole grain. *See* Motion at 20–21. But, like Defendants' evidence regarding cornstarch, the parties' disagreement on this issue does not preclude summary judgment because how the *parties* interpret the challenged labeling is not evidence of what a *reasonable consumer* believes. For example, Plaintiff relies upon excerpts from the deposition of Mondelēz employee Danielle Brown to demonstrate a "link" between "100% Whole Grain" and "Wheat Thins," which he contends constitutes evidence of consumer confusion. Opp. at 13. But the cited testimony says nothing about the issue of consumer confusion:

> Q Okay. Do you see on the front of the where it says "100 Percent Whole Grain"? Do you where it says that?
> A Yes.
> Q And right below that it says "Wheat Thins"?
> A Yes.
> Q And so the "100 Percent Whole Grains" directly above the word "Wheat Thins," or "Wheat Thins," correct?
> A Yes.
> Q Is that an example of whole grain being locked up with Wheat Thins?
> A Yes.

Opp. Ex. 2 at 91:13–25 (cited at Opp. at 13).

Ultimately, while Plaintiff may interpret the challenged representation differently from Defendants, Plaintiff did not adduce evidence that "a significant portion of the general consuming public or of targeted consumers" would be misled. *Robie v. Trader Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *4 (N.D. Cal. June 14, 2021) (citations omitted). Accordingly, the evidence showing the parties' conflicting interpretations of the challenged

representation does not create a triable issue of material fact on the issue of consumer confusion. *See* Opp. Exs. 1–9, 19; ECF 110, P's RJN Exs. A, B.

**C. The Whole Grains Council's Requirements To Obtain Its 100% Whole Grain Stamp And Eighteen-Year-Old Draft FDA Guidance Are Not Evidence Of Consumer Confusion.**

The Whole Grains Council's requirements to obtain its "100% Whole Grain" stamp and 2006 FDA *draft* guidance regarding the meaning of the term "100% Whole Grain" are similarly irrelevant to the issue of consumer confusion. Mot. at 16–17. Plaintiff's opposition does not establish that either source creates a triable issue of material fact.

First, as Defendants explained, the Whole Grains Council's requirements to obtain its "100% Whole Grain" stamp are irrelevant because the views of third-party organizations do not show what reasonable consumers believe. *See* Motion at 17–18; *see also Delman v. J. Crew Grp., Inc.*, No. CV 16-9219-MWF (ASX), 2017 WL 3048657, at *7 (C.D. Cal. May 15, 2017) ("The question is not what meaning a neutral third-party might give to the [challenged representation] standing on its own. The question is how a reasonable consumer would interpret the [challenged representation] in the context of the specific commercial interaction that Plaintiff has challenged."); *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083, 1097 (N.D. Cal. 2023) (rejecting as implausible the plaintiff's argument that "a reasonable consumer would interpret [the challenged representation] to refer to the minimum standards . . . set by certain third-party certification groups").

Plaintiff argues that these cases do not apply because Defendants' records somehow admit consumer confusion. Opp. at 17–18 (citing Opp. Exs. 16 and 17). However, as discussed in Section II.D *infra*, neither of these exhibits demonstrate consumer confusion. Moreover, Plaintiff does not identify *any* authority supporting the specious argument that the views of a third-party pay-to-play organization constitute evidence of what a reasonable consumer believes. And Plaintiff offers no evidence that the Whole Grains Council's requirements for its "100% Whole Grain" stamp are informed by consumer research or surveys, or that consumers (other than the one referenced in Exhibit 17) generally are aware of the Whole Grains Council stamp or

what it means.

Plaintiff's reliance on the 2006 FDA draft guidance regarding whole grain label statements fares no better. As Defendants explained in their Motion, this guidance does not mention cornstarch at all, is not binding authority for consumer claims, and is only draft guidance that was never finalized. *See* Mot. at 17. Plaintiff disputes none of these points. Instead, Plaintiff relies on inapposite authorities to argue that this draft guidance can create a triable issue of fact. Plaintiff is wrong. For example, Plaintiff claims that *Morales v. Kraft Foods Grp., Inc*. holds that draft FDA guidance is "some evidence" of consumer deception. Opp. at 16. But *Morales* does not support Plaintiffs' claims for least three reasons: (1) the FDA evidence the court considered sufficient in *Morales* was a proposed FDA rule that would have the force of law, not draft FDA guidance, which has no legal effect;[2] (2) FDA finalized the rule in *Morales* and adopted the policies set forth in the proposed rule, while the FDA guidance here was never finalized; and (3) the FDA rule in *Morales* directly addressed the issue at the heart of the case (i.e., whether the presence of artificial colors is allowed for products labeled as "natural"), while the guidance here does not even mention cornstarch, let alone whether its presence renders a product less than 100% whole grain. *Morales v. Kraft Foods Grp., Inc.*, No. LA CV14-04387 JAK (PJWx), 2016 WL 11743532, at *10–12 (C.D. Cal. Dec. 2, 2016).

Plaintiff's citation to *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *12 (N.D. Cal. Feb. 25, 2013)), is even further afield because it misconstrues

[2] The FDA's rules and regulations have legal effect. FDA, *FDA Laws, Regulations, and Guidance Documents,* at 11, https://www.fda.gov/media/133830/download (last visited Jan. 6, 2025) ("Like other regulatory agencies, FDA issues regulations under its statutory authorities. Sometimes you will hear people use the word 'rule' instead; the terms mean the same thing. A regulation has the effect of law, and is binding on industry and on the Agency."). However, FDA's "guidances are not regulations or laws, they are not enforceable, either through administrative actions or through the courts[.]" FDA, *FDA Related Laws, Regulations, and Guidances*, https://www.fda.gov/drugs/cder-small-business-industry-assistance-sbia/fda-related-laws-regulations-and-guidances#:~:text=Section%2021%20of%20the%20CFR,thinking%20on%20a%20particular%20subject. (last visited Jan. 6, 2025).

Plaintiff's burden on this Motion. In *Ivie*, the court considered allegations regarding FDA draft guidance in ruling that the plaintiff satisfied pleading requirements to defeat a *motion to dismiss*. By contrast, this is summary judgment. Plaintiff must offer evidence of actual consumer confusion. Draft FDA guidance, particularly guidance that was never incorporated into law, is not relevant to consumer confusion. Tellingly, Plaintiff does not identify a single case in which FDA draft guidance was deemed to be evidence of consumer confusion on the merits.

The Whole Grain Council's views and 2006 draft FDA Guidance do not constitute relevant evidence of what a reasonable consumer believes as a matter of law. Accordingly, this evidence does not create a triable issue of material fact on the issue of consumer confusion. *See* Opp. Exs. 15–16, 20, 22; P's RJN Exs. C–E.

**D. Plaintiff Relies On Only Two Documents Relating To Consumers, But Neither Evidences Confusion About the Challenged Representation On Wheat Thins Packaging.**

Plaintiff identifies only two pieces of evidence that even mention consumers in relation to the Wheat Thins packaging. *See* Opp. Exs. 16–17. Neither creates a triable issue of fact regarding consumer confusion because neither evidences consumer confusion at all.

First, Plaintiff relies upon an email from Mondelēz employee Caryn Andreasen to Whole Grains Council employee Caroline Sluyter, which actually reflects an effort to *avoid* consumer confusion. The relevant email is reproduced below:

**From:** Andreasen, Caryn M <caryn.andreasen@mdlz.com>
**Date:** Tuesday, January 23, 2024 at 1:19 PM
**To:** Caroline Sluyter <caroline@oldwayspt.org>
**Subject:** Whole Grain Council Qualification - Wheat Thins

**Hi,**I'm in the process of kicking off a graphics redesign for Wheat Thins, and one item we'd like to update on pack is adding the Whole Grain Council logo.

Given the fact that Wheat Thins has its "100% whole grain wheat" claim on pack but cannot use the 100% whole grain stamp (due to other line items in the ingredient list), we'd like to apply for the "basic" stamp to avoid any consumer confusion of having both the 50% stamp and 100% whole grain wheat claim on pack.

Opp. Ex. 16 at 2.[3] Plaintiff contends that this email is an *admission* of consumer confusion. Opp.

[3] Defendants object to Ex. 16. The document is inadmissible for the truth of the matter asserted because it contains hearsay from a non-party declarant from the Whole Grains Council. Defendants also object to the Declaration of Caroline Sluyter (ECF 108-23) as inadmissible hearsay. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). Plaintiff also did not disclose

at 17. To the contrary. As discussed *supra*, the grain ingredients in Wheat Thins are "100% Whole Grain" pursuant to USDA's and CDSS's criteria, which differ from the requirements set by the Whole Grains Council for obtaining one of its stamps. *See* Motion, §§ C & I.B.1. This email simply reflects Ms. Andreasen's concern that consumers may be confused if two seemingly conflicting label representations were included on the Wheat Thins packaging – a scenario that never came to pass as Wheat Thins never used the Whole Grain Council stamp.

Second, Plaintiff relies upon a single consumer inquiry summarized in an internal Mondelēz email, which does not reflect confusion regarding the whole grain content of Wheat Thins:

**From:** Amitrano, Tara M <Tara.Amitrano@mdlz.com>
**Sent:** Tuesday, February 16, 2021 3:28 PM
**To:** Altschul, Eric <Eric.Altschul@mdlz.com>
**Subject:** Consumer Inquiry regarding WHEAT THINS REDUCED FAT

Hi Eric,

I am hoping you can assist me with this consumer inquiry or point me in the right direction. The consumer reached out to the call center about WHEAT THINS REDUCED FAT, currently UPC # 044000030391 but next month moving to 044000069254 because of the downsizing project, and asked:

*"The box is marked 100% Whole Grain. Why does the box not carry the "100% Whole Grain" stamp certification authorized by the WholeGrainCouncil.org?*

Please advise how you would like me to respond to this consumer?

Opp. Ex. 17 at 2.[4] This correspondence does not create an issue of fact because it does not address the confusion Plaintiff alleges—that consumers believe that "all of the grain ingredients in Wheat Thins are whole grain when they are not." Opp. at 1. Moreover, even if this email did address that confusion (and it does not), it would still be insufficient, as a matter of law, to create an issue of material fact. *Clemens.*, 534 F.3d at 1025–26 ("'[A] few isolated examples' of actual deception are insufficient" to meet plaintiff's burden on summary judgment.).

In sum, Plaintiff offered just two documents into evidence that have anything to do with consumers. Neither creates a triable issue of fact because neither demonstrates that consumers

---

Ms. Sluyter under Rule 26 prior to the close of discovery, and is therefore precluded from using her testimony on this motion and at trial. *See Benjamin v. B & H Educ.*, Inc., 877 F.3d 1139, 1150–51 (9th Cir. 2017) (affirming order striking declarations from undisclosed witnesses).

[4] Defendants similarly object to Ex. 17 because the document contains inadmissible hearsay. The consumer inquiry in the document was made by an unidentified (and thus unavailable) declarant.

were duped into buying Wheat Thins because they thought they contained no cornstarch.

## III. Plaintiff's Conjoint Study Does Not Evidence That Either Plaintiff Or Any Class Members Paid More For Wheat Thins Because They Thought It Contained No Cornstarch.

Wholly independent of Plaintiff's lack of evidence of consumer confusion, the Court should also enter summary judgment because Plaintiff introduced no evidence of harm. *See* Motion at 21–25. Plaintiff's damages expert did not examine the issue presented in this lawsuit. No one disputes that Wheat Thins contains whole grain wheat and that Defendants' packaging could have also accurately stated "100% Whole Grain Wheat" or "Made With Whole Grain." Plaintiff instead contends that Defendants were wrong to include the language "100% Whole Grain." But Plaintiff did not disclose an expert to assess whether there was any price premium for the "100% Whole Grain" representation compared to a "Whole Grain Wheat" representation. Plaintiff therefore lacks evidence that anyone was harmed, an essential element of his claim.

In his opposition, Plaintiff makes the same mistake he makes regarding consumer confusion: he loses track of who carries the burden to produce evidence. Plaintiff spends half of his argument attacking Defendants' damages expert and internal consumer surveys. *See* Opp. at 24–25. But Defendants have no obligation to prove a lack of harm. Instead, Plaintiff has the burden of proving harm, and his failure to introduce relevant evidence warrants summary judgment. *Cf. Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 950 (S.D. Cal. 2019) (finding "an absence of evidence to support Plaintiff's claim for actual damages under the CLRA and therefore GRANTS Defendants' motion for summary judgment as to actual damages.").

The only affirmative evidence Plaintiff cites regarding potential damage is Mr. Gaskin's conjoint survey. *See* Opp. at 23. To be clear, Defendants agree that a conjoint study *can* suffice for a class-wide damages model. The problem here is that Plaintiff's conjoint survey answered the wrong questions and therefore does not create a dispute of material fact. Plaintiff correctly argues that a "damages analysis must . . . measure[] economic loss by comparing the plaintiff's present position to his position in the 'but-for world' . . . [where] the 'harmful event' did not occur." Opp. at 23. Yet Gaskin's report does not do that.

Plaintiff's present position is purchasing Wheat Thins with packaging stating "100% Whole Grain." The alleged "harmful event" was the representation that the crackers were *100%* whole grain. In Plaintiff's own words, he contends that the representation is false and misleading because the "grain ingredients in [Mondelēz's] products are <u>not</u> *all* (or 100%) whole grains." ECF 1, at ¶ 9 (emphasis Plaintiff's); *see also id.* ¶ 16 (emphasizing that the phrase "'100% WHOLE GRAIN'" can only be reasonably interpreted to refer to 100% (all of) the grain ingredients in the product"). The "but-for world" (*i.e.,* packaging without the "harmful event") would have been packaging that said "100% Whole Grain Wheat" or "Made With Whole Grain" or some other indisputably accurate statement about whole grain in Wheat Thins. Mr. Gaskin did not compare the price of Wheat Thins under the "present condition" to the price in the "but-for" world. His report offers no evidence that Plaintiff or class members suffered any harm at all.

Plaintiff claims that he had no obligation to compare the challenged packaging to packaging with undisputably truthful representations regarding whole grain ingredients. Opp. at 23. But Plaintiff's cases do not excuse him from this fundamental evidentiary showing. Plaintiff relies most heavily on *Krommenhock*, in which the plaintiff challenged 45 "health and wellness claims" on cereals that contained a "high level of added sugar." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567 (N.D. Cal. 2020). While *Krommenhock* involved the same Plaintiff's expert, Mr. Gaskin, the similarities end there. The portion of *Krommenhock* on which Plaintiff relies addressed a motion to exclude Mr. Gaskin and said nothing about the evidentiary showing on summary judgment. *Id.* at 573–76. Further, the *Krommenhock* defendant did not argue that Mr. Gaskin used the wrong "but-for" world but instead that the survey failed to include context that would have mitigated the challenged representations. *Id*. at 576 (defendant arguing that a reasonable consumer would not have been misled by "Challenged Statement X" because they "would have relied on Unchallenged Statement Y instead"). Finally, the plaintiff in *Krommenhock* contended that the sugar content of the cereal was incompatible with *any* health claim, unlike here, where Plaintiff concedes that Wheat Thins contain "100% Whole Grain Wheat." *See id*. On the facts here, Mr. Gaskin's damages model does not assess Plaintiff's

alleged harm. *See Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631-JST, 2024 WL 4565340, *9-10 (N.D. Cal. Oct. 23, 2024) (rejecting Mr. Gaskin's conjoint survey because it did not assess whether consumers would pay a price premium for the presence of any avocado versus the presence of avocado "in a particular amount.").

Plaintiff's reliance on this Court's class certification order fares no better. In that Order, the Court evaluated the conjoint survey to assess whether Plaintiff could adduce classwide evidence, but the Court made no conclusion that Plaintiff proved the elements of his claims. *See* ECF 85, at 2. The Court emphasized that the conjoint survey "is sufficient at the class certification stage." *Id.* (citing *Lytle v. Nutramax Labs., Inc.*, No. 22-55744, 2024 WL 3915361, at *14 (9th Cir. Aug. 23, 2024). In *Lytle*, the Ninth Circuit also evaluated a damages model for common issues, holding that it sufficed at class certification but leaving open challenges at a later stage. *See Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1033 (9th Cir. 2024)[5] ("The speculative possibility that Dr. Dubé might slip up in executing his model, standing alone, is insufficient to defeat class certification."). *Lytle* quoted another Ninth Circuit case emphasizing that the class certification standard does not assess whether the plaintiff proved the elements of his claims. *See Sali v. Corona Regional Med. Ctr.*, 909 F.3d 996, 1004–05 (9th Cir. 2018) ("Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23.").

This case is no longer at class certification. Plaintiff's expert erred in executing his model—he asked and answered the wrong question. This leaves Plaintiff with no individual or common evidence of harm, which is an essential element of his claim.

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment on all claims.

---

[5] This citation refers to the same page this Court cited in its class certification order, updated to the published version in the Federal Reporter.

Dated: January 9, 2025

Respectfully submitted,

CROWELL & MORING LLP

By: */s/ Jason Stiehl*
Jennifer Salzman Romano
Jason Stiehl (admitted *pro hac vice*)
Rebecca M. Suarez
Attorneys for Defendants MONDELĒZ INTERNATIONAL, INC., MONDELĒZ GLOBAL, LLC and NABISCO, INC.