DAVE FOX (Bar No. 254651)
Dave@FoxLawAPC.com
JOANNA FOX (Bar No. 272593)
Joanna@FoxLawAPC.com
COURTNEY VASQUEZ (Bar No. 267081)
Courtney@FoxLawAPC.com
**FOX LAW, APC**
201 Lomas Santa Fe Drive, Suite 420
Solana Beach, CA 92075
Tel: 858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs, the California Class,*
*and the Proposed Nationwide Settlement*
*Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALLENSTEIN, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> MONDELĒZ INTERNATIONAL, INC., a Virginia corporation, MONDELĒZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation, <br><br> Defendants. | Case No. 3:22-cv-06033-VC <br><br> **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** <br><br> Date: April 3, 2025 <br> Time: 10:00 a.m. (in person) <br> Judge: The Hon. Vince Chhabria <br> Ctrm: 4, 17th Floor |

## TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION……………………………………………….……………1

I. INTRODUCTION………………………………………………………….....2

II. PROCEDURAL HISTORY & SETTLEMENT NEGOTIATIONS…………….…2

III. THE SETTLEMENT……………………………………………………….....5

    A. The Settlement Class……………………………………………………5

    B. Benefits for the Settlement Class………………………………………6

        1. $10 Million All-Cash, Non-Reversionary Settlement Fund…………………6

        2. Changes to Wheat Thins Labeling……………………………………6

    C. Proposed Class Notice Plan……………………………………………7

    D. Release of Defendants…………………………………………………8

    E. Opting-Out………………………………………………………………8

    F. Objecting…………………………………………………………………9

    G. Attorneys' Fees, Costs, and Service Awards…………………………………9

    H. Schedule…………………………………………………………………11

IV. LEGAL STANDARD……………………………………………………………13

V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
SETTLEMENT……………………………………………………………………14

    A. The Court Should Certify the Nationwide Settlement Class……………………14

    B. The Court Should Approve the Proposed Settlement……………………………15

        1. The Settlement is the Result of Serious, Informed, Non-Collusive
Negotiations……………………………………………………………16

        2. The Settlement Does Not Grant Preferential Treatment……………………17

        3. The Settlement is Within the Range of Possible Approval…………………18

            a. The *Churchill Village* Factors Favor Preliminary Approval……………18

            b. The Monetary Relief is Fair in Relation to Potential Damages…………21

            c. The Label Change is Appropriate and Meaningful…………………………21

       4.   The Court Should Approve the Class Notice and Notice Plan………………22

VI.     CONCLUSION……………………………………………………………………24

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Allen v. Similasan Corp.*, 2017 WL 1346404 (S.D. Cal. Apr. 12, 2017)…………………..*passim*

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)……………………………………..21

*Bruno v. Quten Research Inst., LLC*, 2013 WL 990495 (C.D. Cal. Mar. 13, 2013)……………22

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020)……………………………………16

*Chevron Envt'l. Mgmt. Co. v. BKK Corp.*,

      2013 WL 5587363 (E.D. Cal. Oct. 10, 2013)……………………………………………20

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)……………………………*passim*

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)…………………………....13, 15

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016)…………………………………..13

 *Edwards v. Nat'l Milk Producers Fed'n*,

      2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017)……………………………………23

*Galeener v. Source Refrigeration & HVAC, Inc.*,

      2015 WL 12976106, (N.D. Cal Aug. 20, 2015)………………………………………10

*Hale v. Manna Pro Prod., LLC*, 2020 WL 3642490 (E.D. Cal. July 6, 2020)…………………16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998)……………………………………13, 15

*Harris v. Vector Mktg. Corp.*, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)…………..11, 17, 18

*Heim v. Heim*, 2014 WL 1340063 (N.D. Cal. Apr. 2, 2014)……………………………..19, 20

*Howell v. Advantage RN, LLC,* 2020 WL 5847565, (S.D. Cal. Oct. 1, 2020)…………………..10

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)………………………14, 15

*In re Lumber Liquidators Chinese-Manufactured Flooring*

      *Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020)……….11

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)………………………20, 22

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)………………………23

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir.1995)……………………………………20

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)…………………..13, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,

     2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011)……………………………………11

*In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)……………………16

*Jamil v. Workforce Res.*, 2020 WL 6544660 (S.D. Cal. Nov. 5, 2020)…………………………10

*Linner v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)………………………………20

*Manner v. Gucci Am., Inc.*, 2016 WL 1045961 (S.D. Cal. Mar. 16, 2016)…………………16, 21

*Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581 (9th Cir. 2012)…………………………...20

*McCabe v. Six Continents Hotels, Inc.*, 2015 WL 3990915 (N.D. Cal. June 30, 2015)…………19

*Mondelez v. McMorrow*, 3:17-cv-02327-BAS-JLB, ECF No. 212 (S.D. Cal., Apr. 8, 2022)…..10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)………………………..13

*Pelzer v. Vassalle*, 655 Fed. App'x 352 (6th Cir. 2016)…………………………………………11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006)………………………15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)……………………………11, 17, 19

*Ruiz v. XPO Last Mile, Inc.*, 2017 WL 6513962, (S.D. Cal. Dec. 20, 2017)……………………10

*Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932 (S.D. Cal. May 12, 2020)…………….9, 11

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)……………………………………………11

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir.1993)…………………………………13

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009)………………..18

*Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913 (C.D. Cal. Dec. 2, 2016)…….20

*Watkins v. Hireright, Inc.,* 2016 WL 1732652 (S.D. Cal. May 2, 2016)………………………..19

*Winters I*, 2020 WL 5642754 (S.D. Cal. Sept. 22, 2020)………………………………………22

*Zamora v. Lyft, Inc.*, 2018 WL 4657308, (N.D. Cal. Sept. 26, 2018)…………………………...10

**STATUTES**

Cal. Com. Code § 2313……………………………………………………………………………..2

California's Consumers Legal Remedies Act, Civil Code §§ 1750, et seq………………………2

Fed. R. Civ. P. 23 …………………………………………………………………………..*passim*

## **TREATISES**

2 William B. Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2018)……………………14

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e), the Court's Civil Standing Order, and the Northern District's Procedural Guidance for Class Action Settlements, Plaintiff David Wallenstein, individually and on behalf of the California class, hereby moves the Court, the Honorable Vince Chhabria presiding, for an Order preliminarily approving a proposed settlement on behalf of a nationwide settlement class (the "Settlement"), certifying the Settlement Class, appointing Fox Law, APC as Class Counsel and Plaintiffs David Wallenstein, Matthew Werner, Ivan Blanco and Kathryn Swiggum as Class Representatives, respectively, for the Nationwide Settlement Class, and approving the proposed Notice Plan, including schedules for notice, claims, opting out, objecting, and the date for the Court to conduct a Final Approval hearing.  The Court should grant the motion and preliminarily approve the Settlement because the proposed Settlement is fair, reasonable, and adequate.  Defendants Mondelez International, Inc., Mondelez Global, LLC, and Nabisco, Inc. (collectively, "MDLZ" or "Defendants") have indicated that they do not oppose this Motion.

This Motion is based upon this Notice of Motion, the below Memorandum, the concurrently-filed Declarations of Courtney Vasquez ("Vasquez Decl.) and Cecily G. Uhlfelder of Kroll Administration LLC ("Uhlfelder Decl."), and all exhibits thereto, including the Class Action Settlement Agreement attached to the Vasquez Declaration as Exhibit 1 ("Settlement Agreement" or "SA"), all prior pleadings and proceedings in this action, and any additional evidence and argument submitted in support of the Motion.

Dated:  February 18, 2025

                                        **FOX LAW, APC**

                                        *Courtney Vasquez*

                                        COURTNEY VASQUEZ
                                        courtney@foxlawapc.com
                                        *Attorneys for Plaintiff, the*
                                        *California Class, and the*
                                        *Proposed Settlement Class*

1

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

This action commenced three (3) years ago when Plaintiff David Wallenstein ("Plaintiff") served Defendants with his Notice of Violation of The Consumer Legal Remedies Act and Breach of Warranty alleging that Defendants' labeling of Wheat Thins as "100% WHOLE GRAIN" was false and misleading because the cracker contains cornstarch, which Plaintiff alleged was a refined (not whole) grain ingredient.  Plaintiff filed the action on October 13, 2022, and has since litigated the case through discovery, class certification, opposed summary judgment, and engaged in three (3) settlement conferences.  On the brink of summary judgment being heard and with trial just two months away, Plaintiff was able to obtain the sizable relief embodied in the present settlement: a ten million ($10,000,000) all-cash, non-reversionary common fund for a nationwide settlement class, and an agreement by Defendants not to use the representation "100% WHOLE GRAIN" either by itself or before the brand name "Wheat Thins" without other qualifiers.

Given this relief, and in light of the risks the California Class faced at the imminent trial, the Court should find that the proposed Settlement is fair, reasonable, and adequate, grant preliminary approval and conditionally certify the Nationwide Settlement Class.

### II.    PROCEDURAL HISTORY & SETTLEMENT NEGOTIATIONS

Plaintiff filed this action on October 13, 2022.  (ECF No. 1.)  Plaintiff asserted two counts for (i) violation of California's Consumers Legal Remedies Act, Civil Code §§ 1750, et seq. ("CLRA") and (ii) breach of express warranty (Cal. Com. Code § 2313)[1].  (*See id.*)  The Complaint sought relief for purchasers of Wheat Thins crackers based on Defendants' misrepresentation that Wheat Thins are "100% WHOLE GRAIN" when in fact an ingredient in Wheat Thins is cornstarch, which Plaintiff alleged is a refined grain.  (*See id.* ¶¶ 1-2.)

---

[1] The Complaint also included claims brought by New York resident, Montgomery Summa, for violation of New York consumer protection laws and breach of express warranty.  The Court found that it lacked personal jurisdiction over the Defendant as to these claims and granted Defendants' Motion to Dismiss in part on this basis.  (ECF No. 40.)  As a result, only the California claims of Plaintiff Wallenstein remained in this action.

On December 12, 2022, Defendants sought to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6).  (ECF No. 21.)  Defendants argued that the phrase "100% WHOLE GRAIN" is not misleading because it is only ever used immediately before the word "wheat" as used in the product name "Wheat Thins," such that only the wheat ingredient is whole grain, and thus the representation "100% WHOLE GRAIN" is not false or misleading.  (ECF No. 21, at 7-9.)  The Court denied Defendants' Motion to Dismiss as to Mr. Wallenstein's claims under California law.  (ECF No. 40.)

After the ruling on the Motion to Dismiss, the Parties scheduled a full-day mediation before the Hon. Philip M. Pro (Ret.) that was held on August 30, 2023.  (Vasquez Decl., ¶ 3.)  The case did not settle, and the Parties proceeded through discovery.  (*Id.*)

Fact discovery in this case was extensive.  (Vasquez Decl., ¶¶ 4-9.)  The Parties exchanged written discovery that included Plaintiff propounding 58 document requests that resulted in over 102,000 pages of documents produced by Defendants.  (*Id.* ¶¶ 4-5.)  Plaintiff also conducted third-party discovery that sought documents from the Whole Grains Council and retail sales data from Circana[2] and various retailers including Amazon.com, Costco, Grocery Outlet, 99 Cent Stores, and Dollar Tree Stores.  (*Id.* ¶ 6.)

Over a dozen fact and expert witness depositions were taken in this case.  (*Id.* ¶ 7.)  Plaintiff took the depositions of Defendants' 30(b)(6) designees and four other corporate percipient witnesses, one of whom was a former employee.  (*Id.* ¶ 7.)  Defendants took the deposition of Plaintiff Wallenstein, who traveled to San Francisco and sat through a full-day, in-person deposition.  (*Id.* ¶ 8.)

On May 24, 2024, Plaintiffs moved for class certification.  (ECF No. 57.)  Defendants opposed the motion and also filed an affirmative motion to deny class certification.  (ECF Nos. 56, 67.)  Defendants designated two experts on materiality and damages in their effort to oppose class certification.  (Vasquez Decl. ¶ 9.)  Plaintiff designated two damages experts to support his

---

[2] Circana compiles comprehensive through-the-register, point-of-sale retail sales data for food products, including Wheat Thins.  (Vasquez Decl. ¶ 23.)

classwide damages model and a rebuttal expert on materiality.  (*Id.*)  The Parties prepared and submitted rebuttal reports of their experts and all experts were deposed in the case.[3]  (*Id.* ¶¶ 7, 9.)

On September 9, 2024, the Court granted Plaintiff's motion to strike Defendants' Motion to Deny Class Certification.  (ECF No. 78.)  The Court held a hearing on Plaintiff's class certification motion on September 12, 2024, and took the matter under submission.  (ECF No. 80.)  The Court issued a written ruling on September 25, 2024, granting Plaintiff's Motion for Class Certification and certifying a class of all California purchasers of Wheat Thins from October 13, 2018, to present.  (ECF No. 85.)

On October 10, 2024, Defendants filed a Rule 23(f) Petition for Permission to Appeal the Court's class certification ruling (ECF No. 93), which Plaintiff answered (USCA Case Number 24-6192, Dkt. # 7).

On October 18, 2024, Plaintiff filed a proposed Notice Plan giving notice to the California Class of the pendency of the class action, which the Court approved.  (ECF Nos. 99-100.)  Internet and print notice commenced on December 20, 2024, and ran through January 30, 2025.  (*See* ECF No. 99-2.)

Meanwhile, on September 16, 2024, Plaintiff Matthew Werner filed an action in the Southern District of New York against Defendants that alleged similar claims as Plaintiff Wallenstein under New York consumers protection statutes N.Y. Gen. Bus. Law §§ 349, 350. (*See Werner v. Mondelez, Int'l, Inc. et al.*, No. 1:24-cv-06957.)  The same counsel in this action is representing the Parties in the *Werner* action.  (Vasquez Decl., ¶ 10.)

Following the Court's class certification ruling, the Parties agreed to revisit mediation, which they scheduled for December 6, 2024, before the Hon. Jay Gandhi (Ret.) for a full day session.  (Vasquez Decl., ¶ 22.)  The case did not settle.  (*Id.*)

On December 19, 2024, Defendants filed a motion for summary judgment.  (ECF No. 105).  The next day, the Ninth Circuit denied Defendants permission to appeal.  (ECF No. 107.)

---

[3] Defense expert Bruce Blacker was deposed twice given the procedural effects of Defendants' Motion to Deny Class Certification.  (Vasquez Decl. ¶ 7.)

On December 23, 2024, Plaintiffs Ivan Blanco and Kathryn Swiggum filed an action in the Northern District of Illinois, Eastern Division against Defendants that alleged similar claims as Plaintiffs Wallenstein and Werner under Illinois and Florida law, respectively.  (*Blanco, et al. v. Mondelez, Int'l, Inc., et al.*, No. 1:24-cv-13193.)  The same counsel in this action is representing the Parties in the *Blanco* action.  (Vasquez Decl., ¶ 10.)[4]

On January 2, 2025, Plaintiff filed his opposition to Defendants' motion for summary judgment.  (ECF No. 108.)  While Defendants' summary judgment motion was pending, trial mere months away, and the new actions pending in other federal district courts, the Parties attempted another mediation before Judge Gandhi on January 16, 2025.  (*Id.* ¶ 11.)  During this mediation, the Parties reached and agreed to the material terms of the Settlement.  (*Id.*)  The Parties stipulated to stay the *Werner* and *Blanco* actions pending approval of the Parties' classwide Settlement by this Court.  (*Id.* ¶ 12.)  Plaintiff now asks this Court to preliminarily approve the Settlement and certify a conditional Nationwide Settlement Class because the proposed Settlement is fair, reasonable, and adequate.  Defendants have indicated that they do not oppose this Motion.  (Vasquez Decl., ¶ 1.)

## III.    THE SETTLEMENT

### A.  The Settlement Class

Plaintiff seeks to certify a conditional nationwide class for settlement purposes comprised of all persons in the United States, including U.S. territories, who between October 13, 2018 and the date the Court grants preliminary approval (the "Class Period") purchased one or more of the Class Products in the United States for personal use, and not for resale or distribution.  (SA ¶ 1.6.)  The Class Products are Original Wheat Thins, Reduced Fat Wheat Thins, Sundried Tomato & Basil Wheat Thins, Big Wheat Thins, Ranch Wheat Thins, Hint of Salt Wheat Thins, Cracked Pepper & Olive Oil Wheat Thins, and Spicy Sweet Chili Wheat Thins, which all bear the "100% WHOLE GRAIN" on the label throughout the Class Period.  (*Id.* ¶ 1.12.)

---

[4] The Parties are unaware of any other related cases besides the *Wallenstein, Werner* and *Blanco* Actions.  (*Id.* ¶ 10.)

### B. Benefits for the Settlement Class

#### 1. $10 Million All-Cash, Non-Reversionary Settlement Fund

As consideration for Class Members' Release, MDLZ will establish a $10,000,000 all cash, non-reversionary common fund (the "Settlement Fund") to pay Class Notice and Claims Administration; Court-approved attorneys' fees, expenses, and service awards; and Class Member claims. (*See* SA ¶ 2.1.)

To obtain monetary relief, a Class Member must submit an online or hard copy Claim Form. (*Id.* at ¶ 4.1.) After providing customary identifying information, the Claimant will be asked to identify which of the Class Products he or she purchased during the Class Period and the year he or she began purchasing it. (*Id.* at ¶ 4.1(a)-(b).) Class Members that submit a valid Claim without proof of purchase will be entitled to four dollars and fifty cents ($4.50) per Household, which is based on information produced during discovery that the average consumer purchases one box every two months at an average price of $4.65/box, extrapolated over a five-year period of time, assuming a refund of $0.15 per unit purchased, which is based on the 3.24% premium determined by the damages model submitted in the California Action. (*Id.* at ¶ 4.1(c); Vasquez Decl. ¶ 14.) Class Members that submit a valid Claim with more than one proof of purchase will be entitled to a minimum of $8.00, or $0.15 per unit purchased shown in the proof up to a maximum of $20.00. (SA ¶ 4.1(c).) Cash Awards will be subject to pro rata reduction if all claims exceed the money remaining in the Settlement Fund after all other approved expenses. (*Id.* at ¶¶ 4.2, 4.5.) Any remaining balance will be donated *cy pres* in equal shares to the Resnick Center for Food Law and Policy at the University of California, Los Angeles, School of Law and Feeding America ("Cy Pres Recipients"). (*Id.* at ¶¶ 1.16; Vasquez Decl., ¶ 15.) Any amounts remaining uncleared after 180 days will be provided to Claimants in a supplemental distribution, or donated *cy pres* in equal shares. (*Id.* at ¶ 4.7.)

#### 2. Changes to Wheat Thins Labeling

As further consideration for the Class Member's Release, MDLZ has agreed not to use the representation "100% WHOLE GRAIN" either by itself or before the brand name "Wheat Thins"

without other qualifiers on the package of the Class Products ("Label Change").  (SA ¶ 2.2.) MDLZ will be granted a reasonable "sell through period" of 18 months after the final date to make the Label Change is established to permit MDLZ to sell through all existing product and packaging inventory produced before the date of the Label Change, *i.e.* MDLZ need not recall or destroy packaging already in the marketplace, in its stock or consumer's stock, or printed.  (*Id.*)

### C.  Proposed Class Notice Plan

The Settlement provides that Class Notice will be effectuated through a Class Notice Plan designed by the Class Administrator to comply with the requirements of Rule 23 and approved by the Parties and Court.  (SA ¶ 5.)  The Parties obtained competing bids for a class administrator and agreed to retain Kroll Settlement Administration LLC ("Kroll") to effect Class Notice and Claims Administration, subject to the Court's approval.  (Vasquez Decl. ¶ 13.)  Kroll estimated Notice and Claim Administration Expenses will be $325,000 - $400,000 based on 100,000 and 250,000 anticipated valid claims, respectively.  (Uhlfelder Decl., ¶ 35.)

Kroll has extensive experience providing class action administration services in over 3,000 settlements varying in size and complexity over the past 50 years.  (Uhlfelder Decl., ¶ 4.)  Kroll has offered a Notice Plan that meets the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and the Federal Judicial Center guidelines for best practicable due process notice. (*See* Uhlfelder Decl.)  Specifically, the proposed Notice Plan includes an appropriate mix of online display advertising and social media advertising through Google keyword search advertising, online display banner advertising, and social media advertising through Facebook, Instagram, and YouTube.  (*Id.* at ¶¶ 10, 20-30.)  Online notice is particularly appropriate in this case as syndicated media research data establishes that 98% of Wheat Thins purchasers have been online in the last 30 days, and over 87% use social media, with 65% reporting that they have visited Facebook and 37% have visited Instagram in the last 30 days.  (*Id.* at ¶ 19.)  Further, 53% have spent time on YouTube.  (*Id.*)  The Class Notice Plan is designed to reach an estimated 80.6% of the target audience on average of 2.5 times, which exceeds the required 70% reach established by the Federal Judicial Center.  (*Id.* ¶¶ 7-10.)  The Notice Plan will also include a print

publication, informational Settlement website, and a toll-free telephone information line. (*Id.* ¶¶ 10, 31-33.) Lastly, on behalf of Defendants, Kroll will also serve CAFA notice upon the appropriate officials within 10 calendar days after the filing of this motion, as required by 28 U.S.C. § 1715(b). (*Id.* ¶ 11; SA ¶ 5.5.)

### D. Release of Defendants

Upon the Effective Date, each Class Member who has not opted out will be deemed to have released MDLZ and related entities from past, present, and future claims the Class Member has or may have against MDLZ that arise out of or relate to the facts alleged or the claims asserted in the Actions. (SA ¶ 7.1.) The Release is narrowly tailored such that class members are releasing claims based only on the identical factual predicate alleged in this case, specifically claims arising out of or related to (1) representing Wheat Thins as "100% Whole Grain"; and (2) the presence and amount of alleged grain products other than whole wheat in Wheat Thins when represented as "100% Whole Grain" ("Released Claims"). (*Id.*) The proposed notice makes this clear to Class Members as well. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

Within five (5) business days of the Effective Date[5], Plaintiffs Matthew Werner, Ivan Blanco and Kathryn Swiggum, will dismiss their individual actions with prejudice.

### E. Opting-Out

Class Members who wish to be excluded must submit a Request for Exclusion (or "Opt-Out Form") to the Class Administrator, postmarked no later than the Opt-Out Deadline. (SA ¶ 5.7.) "Mass" or "class" opt-outs will not be permitted. (*Id.*) All Class Members who submit a timely, valid Request for Exclusion will not be bound by the terms of the Agreement, whereas all

---

[5] The "Effective Date" means the first date after which all of the following events have been met or occurred: (a) The Court preliminarily approved the Agreement and the method for providing notice to the Class; (b) the Court has entered a Final Settlement Approval Order in the California Action; and (c) one of the following have occurred: (1) if no appeal has been taken from the Final Settlement Approval Order on the date of expiration of the time for filing or noticing any appeal; or (2) if an appeal from the Final Settlement Approval Order is filed, and is affirmed or the appeal dismissed, the date of such affirmance or dismissal; or (3) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (4) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari. (SA ¶ 1.18.)

Class Members who do not submit a timely, valid Request for Exclusion will be bound by the Agreement. (*Id.*)

### F. Objecting

Class Members can make an objection by filing their written objection to the Court by the Objection Deadline. (SA ¶ 5.8.1.) An objection must contain (i) a caption or title that clearly identifies this action, and that the document is an objection; (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, if represented; (iii) information sufficient to establish the person's standing as a Settlement Class Member; (iv) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection; (v) the objector's signature; and (vi) the signature of the objector's counsel, if any. (*Id.* ¶ 5.8.2.) The Notice makes clear that only substantial compliance with these requirements is necessary to submit a valid objection. (Vasquez Decl., Ex. 2, Long Form Notice.)

Class Members who object through an attorney must sign either the Objection themselves or execute a separate declaration authorizing the Objection. (*Id.* ¶ 5.8.3.) Class Members who both object and opt out will be deemed to have opted out, and thus be ineligible to object. (*Id.* ¶ 5.8.4.) Objectors are permitted to appear at the final approval hearing and are requested, but not required, in advance of the Final Approval Hearing, to file with the Court a Notice of Intent to Appear. (*Id.* ¶ 5.8.5.) The Parties have the right, but not the obligation to respond to any objections. (*Id.* ¶ 5.8.7.)

### G. Attorneys' Fees, Costs, and Service Awards

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (quoting Fed. R. Civ. P. 23(h)). The Settlement Agreement provides that Plaintiffs and their counsel will seek Court approval for service awards and attorneys' fees and costs, to be paid from the Settlement Fund. (SA ¶ 3.1.)

Here, Plaintiffs' counsel will request fees of no more than one-third (33.33%) of the Settlement Fund, or up to $3.33 million. Based on a preliminary tally of counsel's raw billing

records, Class Counsel presently has over 4,000 hours of attorney and paralegal time into the case. (Vasquez Decl. ¶ 19.) Such an award would be consistent with a reasonable lodestar and accounts for the risk Class Counsel assumed by fronting costs exceeding $543,177 to fund the litigation. (*Id.* ¶ 19.)

Awarding a 33.33% attorney fee is consistent with the Ninth Circuit authority and the practice in this District. "The Ninth Circuit benchmark for megafund class action settlements of $50-200 million of 25% is to be adjusted upward or downward based on the size of the fund made available and in light of the lodestar cross-check." *Zamora v. Lyft, Inc.*, No. 3:16-CV-02558-VC, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) (J. Chhabria). A $3.33 million settlement fund that will be requested here is well below the megafund range. "In this District, fee awards of approximately 33 1/3% are typical for settlements up to $10 million." *Id.* (citing *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 04960, 2015 WL 12976106, at *4 (N.D. Cal Aug. 20, 2015) (Chhabria, J.) (33 1/3% fee; $10 million fund); *see also Mondelez v. McMorrow*, 3:17-cv-02327-BAS-JLB, ECF No. 212 (S.D. Cal., Apr. 8, 2022) (Judge Bashant approving attorneys' fee award of 33.33%); *see also Jamil v. Workforce Res.*, No.: 18-CV-27 JLS (NLS), 2020 WL 6544660, at *4 (S.D. Cal. Nov. 5, 2020) (approving an attorneys' fees award of 33.33% of the common fund); *Howell v. Advantage RN, LLC*, No.: 17-CV-883 JLS (BLM), 2020 WL 5847565, at *5 (S.D. Cal. Oct. 1, 2020) (approving an attorneys' fees award of 33.33% of the common fund); *Ruiz v. XPO Last Mile, Inc.*, No.: 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *8 (S.D. Cal. Dec. 20, 2017) (approving an attorneys' fees award of 35% of the common fund).

The Settlement Agreement includes a provision regarding attorneys' fees whereby the Class Administrator pays Class Counsel the amount of attorneys' fees and costs awarded by the Court within twenty-one (21) calendar days from the entry of the Final Settlement Approval Order, without regard to the filing of any appeals, or any other proceedings which may delay the Effective Date. (SA ¶ 3.2.) However, in the event that Settlement does not become final or is ultimately overturned on appeal, Class Counsel shall immediately return in full the amount of attorneys' fees and expenses paid to them. (*Id.*) These provisions are often referred to as "quick-

pay" provisions and are designed to deter meritless objections and are routinely approved by federal district courts in the Ninth and other Circuits. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) (collecting cases); *Pelzer v. Vassalle*, 655 Fed. App'x 352, 365 (6th Cir. 2016) ("over one-third of federal class action settlement agreements in 2006 included quick-pay provisions" and they do "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid."); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) ("we observe that quick-pay provisions have generally been approved by other federal courts.").

Plaintiffs will also request service awards to compensate each of them for their proportionate time, effort and benefit each Plaintiff dedicated to and achieved in this case, which is anticipated to be as follows: (1) David Wallenstein - $17,500; (2) Matthew Werner - $5,000; (3) Ivan Blanco - $3,500; (4) Kathryn Swiggum - $3,500. (Vasquez Decl. ¶ 20.) "[T]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009)).

Importantly, however, the Settlement "is not dependent or conditioned upon the Court's approving Class Counsel's and Class Representatives' requests . . . or awarding the particular amounts sought," and if the "Court declines Class Counsel's or Class Representatives' requests or awards less than the amounts sought, this Settlement will continue to be effective and enforceable." (SA ¶ 3.4.) Furthermore, courts often hold that they can "further scrutinize the reasonableness of the fee award at the final approval stage." *See, e.g., Shannon*, 2020 WL 2394932, at *11.

### H. Schedule

Plaintiff proposes the below schedule to give Class Members sufficient time to receive Notice, make a claim, opt out, or object after reviewing Plaintiffs' Motion for Attorneys' Fees,

Costs, and Service Awards:

| Event | Day | Term | Deadline Assuming Motion Granted April 4, 2025 |
|-------|-----|------|-----------------------------------------------|
| Court grants preliminary approval | 0 | -- | April 4, 2025 |
| Deadline to commence Notice | 30 | Class Settlement Notice must commence within thirty (30) days after the Preliminary Approval Order | May 5, 2025 |
| Deadline for Plaintiffs to file Motion for Attorneys' Fees, Costs, and Service Awards | 60 | At least 30 days before the Objection Deadline, Class Counsel and Class Representatives shall file a motion for fees and service awards | June 3, 2025 |
| Deadline for MDLZ to Deposit into Settlement Fund | 60 | Within 60 days after Class Settlement Notice | June 3, 2025 |
| Notice Completion Date | 75 | Notice will run for 45 days | June 18, 2025 |
| Deadline to make a claim, opt out, and object | 90 | 14 calendar days after the end of the Settlement Notice Period | July 3, 2025 |
| Claims Review Period commences | 100 | No later than 10 days after the Objection Deadline and Opt-Out Deadline, the Claims Review Period must commence. | July 14, 2025 |
| Claims Review Period ends | 190 | 3-month Claims Review Period | October 13, 2025 |
| Distribution Plan Due | 205 | Within 15 days after conclusion of the Claims Review Period, the Claim Administrator shall provide to MDLZ and Class Counsel the Distribution Plan | October 28, 2025 |
| Deadline for Plaintiffs to file Motion for Final Approval | 214 | Motion for Final Approval due no later than fourteen (14) calendar days before the Final Approval Hearing | November 6, 2025 |
| Final Approval Hearing | 228 | | November 20, 2025 |

### IV.    LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, a class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).

Rule 23(e)(2) of the Federal Rules of Civil Procedure states that the district court may only approve the settlement if "it is fair, reasonable, and adequate."  *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* The district court must balance "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993)). Additionally, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness."  *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016).  Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  *Class Plaintiffs*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).  District courts should review class action settlements just as carefully at the initial stage as they do at the final stage.  *Cotter*, 193 F. Supp. 3d at 1037.  At the initial stage, the inquiry should be whether the settlement is "fair, reasonable, and adequate, based on any information the district court receives from the parties or can obtain through its own research."  *Id.* (internal quotation omitted).

## V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

### A.  The Court Should Certify the Nationwide Settlement Class

The Court should certify the conditional Nationwide Settlement Class.  The Court has already found the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy and the Rule 23(b)(3) predominance and superiority requirements are satisfied as to California Class.  (ECF No. 85 (order granting class certification of a class of all California purchasers of Wheat Thins from October 13, 2018, to present).)  The Settlement Class differs from the certified California Class only in that it is a single nationwide class and includes an additional Class Product, Spicy Sweet Chili Wheat Thins, that only recently began selling in the market within the last year.  (Vasquez Decl. ¶ 21; *see also* SA ¶ 7.1 (defining claims relating to (1) representing Wheat Thins as "100% Whole Grain"; and (2) the presence and amount of alleged grain products other than whole wheat in Wheat Thins when represented as "100% Whole Grain").)

In instances such as this, courts find that "[e]xpansion of the class to include all purchasers nationwide as well as purchasers of additional products does not change th[e] [certification] analysis." *Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLB, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017).  Indeed, the Ninth Circuit has made clear that in the settlement context, predominance is satisfied because California law may be applied to a nationwide settlement class. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561-66 (9th Cir. 2019) (concluding that variations in state law did not defeat predominance and holding that, subject to constitutional and forum state choice-of-law limitations, "a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class"); *see also id.* at 568 (citing 2 William B. Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2018) ("[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable.").

14

In addition, this Court may approve the Settlement's release of claims by Class Members, even if the Court would not independently have jurisdiction over those released claims. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (quoting *Class Plaintiffs*, 955 F.2d at 1287-88 ("[A] federal court may release not only claims alleged in the complaint, but also state claims arising from the same nucleus of operative facts over which the court would not have jurisdictional competence.")).

Where, as here, the challenged conduct is uniform across all Class Products sold throughout the United States, the proposed nationwide class "[s]till presents common questions of fact and law, the claims and defenses of the representative parties are equally typical and the common questions of law or fact predominate." *Allen*, 2017 WL 1346404, at *3; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561-66. Further, "[g]iven the small cost of each product and the large number of purchasers, a class action is superior to other available methods of adjudication," and the Court should find that certification of the proposed nationwide Settlement Class is appropriate. *Allen*, 2017 WL 1346404, at *3.

### B.  The Court Should Approve the Proposed Settlement

When faced with a class settlement that will bind absent class members, the Court may approve the settlement only after a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Class Plaintiffs*, 955 F.2d 1276. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. Factors relevant to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"Preliminary approval of a settlement and notice to the proposed class is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive

negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *6 (S.D. Cal. Mar. 16, 2016) ["*Gucci*"] (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted)).

### 1. The Settlement is the Result of Serious, Informed, Non-Collusive Negotiations

This Settlement was reached only after significant discovery and class certification, on the eve of summary judgment, and with trial scheduled to begin only months away.  (Vasquez Decl. ¶¶ 4-9.)  This evidences that the Settlement was the result of well-informed, arms'-length negotiations.  *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122, 1127 (9th Cir. 2020) (case being "nearly [at] the close of discovery" indicated "the settlement's substantive fairness").

In addition, the Settlement was negotiated only after three mediation sessions before two different, experienced retired federal judges.  (Vasquez Decl. ¶ 22.)  *See Gucci* 2016 WL 1045961, at *7 (finding "proposed Settlement was the result of 'serious, informed, and non-collusive arm's-length negotiations'" where the parties engaged in "mediation efforts overseen by retired United States Magistrate Judge Edward Infante, who conducted a full-day mediation session"); *Hale v. Manna Pro Prod., LLC*, 2020 WL 3642490, at *11 (E.D. Cal. July 6, 2020) ("extensive discovery and arms-length, mediator-guided negotiations all suggest the settlement agreement is not the product of collusion"); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (The "use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" (citation omitted)).

Furthermore, nothing in the Settlement suggests any collusion between the Parties.  Class members will get a cash payout and the Settlement Agreement expressly prohibits unawarded funds going back to MDLZ.  (SA ¶ 2.1 (specifying non-reversionary Settlement Fund).)  Nothing in the Settlement Agreement gives Class Counsel a disproportionate distribution of the Settlement, nor is there any "clear sailing" agreement, instead providing only that Class Counsel

and the Class Representatives will apply to the Court for fees and service award, imposing no conditions on MDLZ's response to such a request. (*Id.* ¶ 3.1.) Moreover, any fee determination is independent of the Settlement's other provisions. (*Id.* ¶ 3.4.) Courts routinely find that "[t]he prospect of fraud or collusion is substantially lessened where, as here, the settlement agreement leaves the determination and allocation of attorney fees to the sole discretion of the trial court." *Chinese Drywall*, 424 F. Supp. 3d at 486. In this case, "[b]ecause the parties have not agreed to an amount of attorney fees and instead [will] merely petition[] the Court for an award they believe is appropriate, there is no threat of the issue tainting the fairness of the settlement negotiations." *Id.* Similarly, the Parties made no other agreements in connection with the Settlement, so there is no possibility such an agreement "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment); *see* SA ¶ 8.3 ("This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement."); *see also* Vasquez Decl. ¶ 2.

### 2.  The Settlement Does <u>Not</u> Grant Preferential Treatment

The Settlement does not treat the Class Representatives or any Class Members preferentially, since every Class Member who makes a claim, including the Class Representatives, will be subject to the same claims process that provides the same remedy based on the Claimant's purchase history and proof thereof. Any request by the Class Representatives for Service Awards does not alter this conclusion. Service awards are routinely granted, recognizing the importance of compensating the class representatives for work done on behalf of the class and to make up for financial or reputational risk undertaken in bringing the action. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *see also Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (no preferential treatment where settlement "provides equal relief to all class members" and "distributions to each class member—including Plaintiff—are calculated in the same way.") The Service Awards requested will be directly tied to the amount of time, effort, risk and expense each representative devoted to the case. (Vasquez Decl. ¶ 20.)

### 3.   The Settlement is Within the Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation omitted)). Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors – coined as the *Churchill factors* – that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Id.* (citing *Churchill Village*, 361 F.3d at 575 (citation omitted)).

### a.   The *Churchill Village* Factors Favor Preliminary Approval

The Churchill Village factors favor preliminary approval:

- **The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Duration of Further Litigation.**  Plaintiffs and their counsel believe the theory underlying liability in this case was and is strong on the merits and believe that this Court was inclined to agree.  (*See, e.g.,* ECF No. 40, at 4 (referring to Defendants' arguments against liability as "borderline silly").)  Nevertheless, the case was not without its risks.

This case was on the footsteps of trial just mere months away.  Plaintiff Wallenstein faced the risk the Class could lose at trial and recover nothing—as has happened in seemingly meritorious consumer fraud class actions that have gone to trial in California with judgments returned for defendants.  *See Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *cf. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class).  Such a result would have seriously impacted the likelihood of success of the other pending actions in other states.

- **The Risk of Maintaining Class Action Status Through Trial.** "[C]ontinued litigation of this matter would include trial and appeal" and "further litigation would have significantly delayed any relief to Class Members." *Watkins*, 2016 WL 1732652, at *7 ("The Court agrees with the parties that the proposed Settlement eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed Settlement."). In addition, Plaintiff faced the reality that a "district court may decertify a class at any time." *Rodriguez*, 563 F.3d at 966. Thus, the fact that the Court had certified the California Class was not necessarily the end of the line and Plaintiffs risked facts and evidence that could have been revealed to decertify the class.

- **The Settlement Amount.** Plaintiffs and Class Counsel secured for the Settlement Class direct monetary benefits of $10 million, which is reasonable in relation to the risk and potential trial damages for the certified California Class and MDLZ's total potential liability nationwide. Plaintiff's damages model produced a premium of just $0.15/box that consumers paid for the cracker. (Vasquez Decl. ¶¶ 14, 23.) Even if the jury were to accept Plaintiff's damages model in full, the price premium damages to the California Class would have produced damages of approximately $7,626,546, which is significantly *less* than the $10 million fund achieved by the Settlement. (*Id.* ¶ 23.) Thus, the $10 million Settlement Fund here represents about 131% of the approximately $7.6 million Plaintiffs could have recovered at trial for the California Class. (*Id.*)

Extrapolating Plaintiff's damages in the California action to the nationwide Settlement Class (using California's 12% population), hypothetical price premium damages on behalf of a nationwide class here are approximately $63 million, such that the $10 million common fund represents a recovery of about 16%. (*Id.* ¶ 24.) District courts have approved settlements as being in good faith for payment of much lower percentage of a defendants' potential liability. *McCabe v. Six Continents Hotels, Inc.*, 2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) (approving class settlement representing between 0.3% and 2% of potential recovery); *see also Heim v. Heim*,

19

2014 WL 1340063, at *5, *6 (N.D. Cal. Apr. 2, 2014) (citing *Chevron Envt'l. Mgmt. Co. v. BKK Corp.*, 2013 WL 5587363, at *3 n.2 (E.D. Cal. Oct. 10, 2013) (recognizing settlement representing less than 3% of total clean-up costs was a good faith settlement)); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) ("'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" (quotation omitted)).

Furthermore, there is likely no single forum in which this case could be brought to trial on a nationwide basis. *See, e.g.*, *Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-94 (9th Cir. 2012) ("Nationwide class certification under the laws of multiple states can be very difficult for plaintiffs' counsel."). Instead, Class Counsel (or other attorneys) would have to file and prosecute actions in all other states which would cost the other state classes millions of dollars to prosecute, be inherently risky, and continue for years. (Vasquez Decl., ¶ 25.) Even then it might be impossible to get relief for consumers in some states, for example where class actions are not permitted, or individual showings of reliance are required. As discussed further below, the amount is also reasonable in relation to the each Class member's potential recovery. *See infra*.

- **The Extent of Discovery Completed and Procedural Posture.** Because fact and expert discovery were completed and only summary judgment and trial remained, "the parties ha[d] sufficient information to make an informed decision about settlement." *Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted). This factor favors preliminary approval. *See Allen*, 2017 WL 1346404 at *4 (factor favored approval where "Plaintiffs engaged in substantial discovery and negotiations" and "briefed, and the Court has ruled on, [] motions to dismiss . . . [and] a motion for class certification").

- **The Experience and Views of Counsel.** The Ninth Circuit has "held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)). "Generally, '[t]he

recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Allen*, 2017 WL 1346404 at \*5 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *accord Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience).

Here, Class Counsel has considerable experience in mass torts and consumer class actions, including those involving false and misleading food labels. (Vasquez Decl. ¶ 26.)  Through this experience, Class Counsel has been exposed to a wide variety of information about these types of claims and defenses, and ultimately the potential upside and risks attendant to this case, to endorse the Settlement. (*Id.*)  Accordingly, this factor favors preliminary approval.  *See Gucci*, 2016 WL 1045961, at \*7 ("[G]iving the appropriate weight to class counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.").

- **Governmental Participation.** "There is no governmental participant in this case, so this factor is neutral." *Allen*, 2017 WL 1346404, at \*5.

- **Class Member Reaction.** Because "Class Members will have an opportunity to object or opt out of the Settlement [,] at this time, this factor weighs in favor of approving the Settlement." *Gucci*, 2016 WL 1045961, at \*7.  Nevertheless, Plaintiffs do not anticipate any large number of Opt-Outs or Objections.  Class Counsel was recently informed that, at least at this juncture, the current Administrator for class certification notice indicated that there have been no Requests for Exclusion from the California Class to date.  (Vasquez Decl. ¶ 27.)  The last day to Opt Out of the California Class is March 6, 2025.  (*Id.*)

### b.  The Monetary Relief is Fair in Relation to Potential Damages

Here, Plaintiffs and Class Counsel secured for the Settlement Class direct monetary benefits of $10 million, which is reasonable in relation to the Settlement Class's potential damages.  Plaintiffs' damages models suggested actual damages of no more than about $0.15 per unit based on the price premium found applied to Class Products' average price.

Without proof, Class Members will be entitled to recover $4.50, which assumes 30 boxes

purchased over a five-year period at the average rate of 6 boxes per year the average consumer purchases. (Vasquez Decl. ¶ 28.) This likely exceeds many Class Members' actual damages, since many may not have purchased with that frequency for the entire length of time. Moreover, with an average price of about $4.65 per unit, the $4.50 average recovery without proof of purchase represents a near full refund for a box of Wheat Thins, which is significant when the evidence shows that consumers only paid $0.15/box more for Wheat Thins because of the challenged representation. Thus, the monetary relief is fair in relation to each consumer's potential damages. *See Winters I*, 2020 WL 5642754, at *4 (Where "Class Members who file for monetary relief are likely on average to receive approximately $17.70, which represents a 31% refund on the purchase price of the product," concluding that "monetary compensation and the stipulated injunctive relief offered in the Settlement Agreement is sufficient for approval."); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (citation omitted)).

### c.   The Label Change is Appropriate and Meaningful

In addition to the monetary relief achieved, the Settlement corrects the alleged mislabeling of Wheat Thins. Courts recognize that "[t]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes because it benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). The label change obtained here is especially noteworthy because Plaintiffs have obtained through litigation MDLZ's agreement to modify its business practices they had implemented for decades in accordance with Plaintiffs' allegations that labeling "100% WHOLE GRAIN" was false and misleading.

### 4.   The Court Should Approve the Class Notice and Notice Plan

"Under Rule 23(c)(2)(B), 'the court must direct to class members the best notice that is practicable under the circumstances." *Allen*, 2017 WL 1346404, at *5. "[T]he mechanics of the

notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Id.* (quotation and citation omitted).

Individual notice to all members is not possible if they cannot be identified through "reasonable effort." *Allen*, 2017 WL 1346404, at *5. In this case, individual class notice is not possible because the far majority of Wheat Thins are sold through a web of third-party retailers and distributors who sell the products on store shelves and the Parties do not have presently have contact information for individual Class members. (Vasquez Decl. ¶ 29.) In addition, millions of Wheat Thins products were sold throughout the United States during the Class Period, making direct notice infeasible and digital and print publication reasonable under the circumstances. In circumstances such as this, notice by publication is the best possible notice under the circumstances. *See, e.g., Allen*, 2017 WL 1346404, at *5; Uhlfelder Decl. ¶¶ 12-19.

The proposed Notice Plan is reasonable under the circumstances. It includes targeted print and online ads that will reach an estimated 80.6% of Class Members, and 2.5$x$ each. (Uhlfelder Decl. ¶ 10.) "[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrew*s, 846 Fed. App'x 538 (9th Cir. 2021).

The proposed Long-Form Notice itself is also appropriate, since it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). The Notice sufficiently informs Class Members of (1) the nature of the litigation, the Settlement Class, and the identity of Class Counsel, (2) the essential terms of the Settlement, including the gross settlement award and net settlement payments class members can expect to receive, (3) how notice and administration costs, court-approved attorneys' fees, costs, and service awards will be paid from the Settlement Fund, (4) how to make a claim, opt out, or object to the Settlement, (5) procedures and schedules relating to final approval, and (6) how to obtain further information. (*See* Vasquez Decl., Ex. 2, Long Form Notice.)

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant preliminary approval of the Settlement, authorize Class Notice as proposed herein, appoint Plaintiffs as Class Representatives of the nationwide Settlement Class, appoint Fox Law, APC as Class Counsel for the Settlement Class, set deadlines for making claims, opting out, and objecting, and schedule a Final Approval Hearing and related deadlines.

Dated:  February 18, 2025

**FOX LAW, APC**

*Courtney Vasquez*
_____
COURTNEY VASQUEZ
courtney@foxlawapc.com
*Attorneys for Plaintiff, the
California Class, and the
Proposed Settlement Class*

24