DAVE FOX (Bar No. 254651)
Dave@FoxLawAPC.com
JOANNA FOX (Bar No. 272593)
Joanna@FoxLawAPC.com
COURTNEY VASQUEZ (Bar No. 267081)
Courtney@FoxLawAPC.com
**FOX LAW, APC**
201 Lomas Santa Fe Drive, Suite 420
Solana Beach, CA 92075
Tel:  858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs, the California Class,*
*and the Nationwide Settlement Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALLENSTEIN, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br>  v.<br><br>MONDELĒZ INTERNATIONAL, INC., a Virginia corporation, MONDELĒZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation,<br><br>    Defendants. | Case No. 3:22-cv-06033-VC<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date: December 11, 2025<br>Time: 2:00 p.m. (videoconference only)<br>Judge: The Hon. Vince Chhabria<br>Ctrm: 4, 17th Floor |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 6

II.   FACTUAL AND PROCEDURAL HISTORY ...................................................... 7

  A.   The California Action ................................................................................... 7

III.  LEGAL STANDARD.................................................................................... 10

IV.   THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES.............. 11

    A.   Counsel's Fee Request is Reasonable Under the Percent-of-Recovery Method .......... 12

    B.   The Vizcaino Factors Support the Request for 33 1/3% of the Class Fund ................. 12

      1.   The Results Achieved for the Class ......................................................... 12

      2.   The Complexity of the Case, Risk and Expense to Counsel, and Contingency Nature of the Fee................................................................................................ 15

      3.   The Skill, Experience, and Performance of Counsel on Both Sides......................... 16

      4.   Awards in Similar Cases ....................................................................... 16

    C.   A Lodestar Crosscheck Verifies that Class Counsel's Request is Reasonable............. 17

V.    CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF COSTS......................... 18

VI.   THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS .............. 19

VII.  CONCLUSION............................................................................................ 19

## TABLE OF AUTHORITIES

**Rules**

California Code, Civil Code § 1780(e) ................................................................ 9

Federal Rules of Civil Procedure, Rule 23(e)(3) .............................................. 10

Federal Rules of Civil Procedure, Rule 12(b)(6) ........................................... 6, 8

Federal Rules of Civil Procedure, Rule 23(f) ................................................. 5, 7

**Federal Cases**

*Alvarez v. Farmers Ins. Exch.*,

2017 WL 2214585, at *5 (N.D. Cal. Jan. 18, 2017) ....................................... 17

*Bellinghausen v. Tractor Supply Co.*,

306 F.R.D. 245, 261 (N.D. Cal. 2015) ...................................................... 14, 17

*Bennett v. SimplexGrinnell LP*, No.

11 Civ. 01854, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) ....... 11, 15

*Blanco, et al. v. Mondelez, Int'l, Inc., et al.*, No. 1:24-cv-13193 .............. 8, 9

*Brazil v. Dell Inc.*, 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) ......... 13

*Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) ......... 13

*Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) ............. 16

Fed. R. Civ. P. 23(h); ....................................................................................... 9

Federal Rules of Civil Procedure, Rule 23(h) ..................................... 9, 10, 17

*Fowler*, 2019 WL 330910, at *8 ................................................................. 18

*Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 04960, 2015 WL 12976106, at *4

(N.D. Cal Aug. 20, 2015) ............................................................................. 11

*Guttmann v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *3 (N.D. Cal. Aug. 1, 2016) ....... 14

*Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK (N.D. Cal.)................................................. 16

*Hardy v. Embark Tech., Inc.*, 2024 WL 1354416, at *9 (N.D. Cal. Mar. 29, 2024) ................... 17

*Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011)................... 18

*Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) ................. 17

*Howell v. Advantage RN, LLC*, No. 17-CV-883 JLS (BLM), 2020 WL 5847565, at *5 (S.D. Cal.

    Oct. 1, 2020) ..................................................................................................................... 11, 16

*In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) 10, 12

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)................................. 10

*In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *4 ....................................................... 15

*In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) ............... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597

    (9th Cir. 2018)........................................................................................................................ 12

*James v. AT&T W. Disability Benefits Program*, 2014 WL 7272983, at *2 (N.D. Cal. Dec. 22,

    2014) ..................................................................................................................................... 17

*Krommenhock v. Post Foods LLC*, No. 16-cv-4958-WHO (N.D. Cal.) ....................................... 16

*Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *10 (N.D. Cal. July

    11, 2014) ............................................................................................................................... 18

*McMorrow v. Mondelez*, 3:17-cv-02327-BAS-JLB, ECF No. 212 (S.D. Cal., Apr. 8, 2022)11, 13,

    15, 16

*O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019).............. 18

*Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020) ............. 16

*Relente v. Viator, Inc.*, 2015 WL 3613713, at *3 (N.D. Cal. June 9, 2015) ................................ 13

*Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)......................................... 12, 18

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055-56 (9th Cir. 2019) ................................. 14

*Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *8 (S.D. Cal.

Dec. 20, 2017) ............................................................................................................. 11, 16

*Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *9 (N.D. Cal. Jan. 31, 2020) ... 14

*Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) .............. 9

*Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ........................................................ 18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................... 4, 11, 12, 16

*Werner v. Mondelez, Int'l, Inc. et al.*, No. 1:24-cv-06957 ........................................................ 8, 9

*Zamora v. Lyft, Inc.*, No. 3:16-CV-02558-VC, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26,

2018) ........................................................................................................................... 11, 15


**State Statues**

Florida Statues Ann. § 501.2105 ................................................................................................ 10

Illinois Statutes Chapter 815. Business Transactions 505/10a(c) ................................................ 10

New York General Business Law §§ 349, 350 ......................................................................... 8, 9

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on December 11, 2025 at 2:00 p.m. or as soon thereafter as the matter may be heard, Plaintiffs and Class Representatives David Wallenstein, Matthew Werner, Ivan Blanco and Kathryn Swiggum, will move the Court, the Honorable Vince Chhabria presiding, for an Order (i) awarding attorneys' fees to Class Counsel totaling 33 1/3% ($3,333,333) of the Settlement Fund, (ii) reimbursing litigation costs in the amount of $587,577.05, and (iii) granting service awards to each Court-appointed Class Representative of the Settlement Class as follows: David Wallenstein - $7,500; Matthew Werner - $5,000; Ivan Blanco - $3,500; Kathryn Swiggum - $3,500.

This Motion is made pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure on the grounds that attorneys' fees are authorized by both the Parties' Settlement Agreement and the law. In addition, the *Vizcaino* factors support Class Counsel's request for 33 1/3% of the Settlement Fund under the circumstances of this case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

This Motion is based upon this Notice of Motion, the below Memorandum, the concurrently-filed Declaration of Courtney Vasquez ("Vasquez Decl.), and all exhibits thereto, the concurrently-filed Declarations of Plaintiffs David Wallenstein, Matthew Werner, Ivan Blanco and Kathryn Swiggum, and all prior pleadings and proceedings in this action, including Plaintiffs' Motion for Preliminary Approval (ECF No. 117), the Settlement Agreement, attached as Exhibit 1 to the Vasquez Declaration in support of Plaintiff's Motion for Preliminary Approval (ECF No. 117-2, ("SA")), the Court's Order Granting Preliminary Approval of Class Settlement (ECF No. 122), and any additional evidence and argument submitted in support of the Motion.

Dated:  June 6, 2025

**FOX LAW, APC**

_____
COURTNEY VASQUEZ
courtney@foxlawapc.com

5

*Attorneys for Plaintiffs, the California*
*Class, and the Nationwide Settlement Class*

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

This consumer class action centers around the representation that Wheat Thins are "100% WHOLE GRAIN."  Plaintiffs alleged that this representation was false and misleading because *not* all grain ingredients in Wheat Thins are whole grain.

Plaintiffs instituted this action to challenge this deceptive food labeling practice by one of the world's largest snack manufacturers.  After extensive litigation through class certification, a Rule 23(f) petition and summary judgment briefing, Class Counsel secured a ten million ($10,000,000) all-cash, non-reversionary common fund for the Settlement Class.  Importantly, the dedication of Plaintiffs and the performance of Class Counsel also generated benefits to the Settlement Class beyond just cash.  The Settlement included a label change.  Defendants agreed to revise their packaging and advertising to stop using the representation "100% WHOLE GRAIN" either by itself or before the brand name "Wheat Thins" without other qualifiers.

Because of the common benefit obtained by this action, Plaintiffs respectfully submit this Motion for an Order (i) awarding attorneys' fees to Class Counsel totaling 33 1/3% ($3,333,333) of the Settlement Fund, (ii) reimbursing litigation costs in the amount of $587,577.05, and (iii) granting service awards to each Class Representative of the Settlement Class: David Wallenstein - $7,500; Matthew Werner - $5,000; Ivan Blanco - $3,500; Kathryn Swiggum - $3,500.

The requested fees and service awards are consistent with Ninth Circuit precedent and are well-justified under both the percentage-of-the-fund and lodestar cross-check methodologies when factoring in the 4,420.1 hours Class Counsel devoted to the California, New York, and Illinois actions totaling a lodestar of $3,019,150.  Plaintiffs and Class Counsel achieved an outstanding Settlement in this case.  They restored dollars to consumers, changed corporate behavior, and vindicated core principles of consumer protection law. The requested attorneys' fees, litigation costs and service awards are not only justified—they are essential to recognizing and sustaining

6

the kind of advocacy that makes enforcement of consumer protection laws possible. Plaintiffs'
Motion for attorneys' fees, costs and service awards should be granted.

## II.    FACTUAL AND PROCEDURAL HISTORY

By now, the Court is aware of Plaintiffs' claims in this action that sought redress for the
amounts overpaid by consumers of Wheat Thins based on the representation that the crackers are
"100% Whole Grain," which Plaintiffs allege misled consumers into believing that there are no
grain ingredients in the cracker that are not whole grain. (*See, e.g.* ECF No. 1, ¶¶ 1-2.)

### A.  The California Action

After an unsuccessful attempt to resolve the matter through Plaintiff's CLRA Pre-Suit
Demand, Plaintiff Wallenstein filed this action on October 13, 2022. (ECF No. 1.) On December
12, 2022, Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6). (ECF No. 21.)
Defendants argued that the phrase "100% WHOLE GRAIN" is not misleading because it is only
ever used immediately before the word "wheat" as used in the product name "Wheat Thins," such
that only the wheat ingredient is whole grain, and thus the representation "100% WHOLE
GRAIN" is not false or misleading. (ECF No. 21, at 7-9.) The Court denied Defendants' Motion
to Dismiss as to Mr. Wallenstein's claims under California law. (ECF No. 40.)[1]

After the ruling on the Motion to Dismiss, the Parties scheduled a full-day mediation
before the Hon. Philip M. Pro (Ret.) that was held on August 30, 2023. (Vasquez Decl., ¶ 2.) The
case did not settle, and the Parties proceeded through discovery. (*Id.*)

Fact discovery in this case was extensive. (Vasquez Decl., ¶¶ 3-8.) The Parties exchanged
written discovery that included Plaintiff propounding 58 document requests that resulted in over
102,000 pages of documents produced by Defendants. (*Id.* ¶¶ 3-4.) Plaintiff also conducted third-
party discovery that sought documents from the Whole Grains Council and retail sales data from

---

[1] The Complaint also included claims brought by New York resident, Montgomery Summa, for
violation of New York consumer protection laws and breach of warranty. The Court found that it
lacked personal jurisdiction and granted Defendants' Motion in part. (ECF No. 40.) Class Counsel
has excluded time spent on this jurisdictional issue or with this client from their fee request.

Circana[2] and various retailers including Amazon.com, Costco, Grocery Outlet, 99 Cent Stores, and Dollar Tree Stores.  (*Id.* ¶ 5.)

Over a dozen fact and expert witness depositions were taken in this case.  (*Id.* ¶ 6.) Plaintiff took the depositions of Defendants' 30(b)(6) designees and four other corporate percipient witnesses, one of whom was a former employee.  (*Id.*)  Defendants took the deposition of Plaintiff Wallenstein, who traveled to San Francisco and sat through a full-day, in-person deposition.  (*Id.* ¶ 7; *see also* Wallenstein Decl., ¶ 11.)

On May 24, 2024, Plaintiffs moved for class certification.  (ECF No. 57.)  Defendants opposed the motion and also filed an affirmative motion to deny class certification.  (ECF Nos. 56, 67.)  Defendants designated two experts on materiality and damages in their effort to oppose class certification.  (Vasquez Decl. ¶ 8.)  Plaintiff designated two damages experts to support his classwide damages model and a rebuttal expert on materiality.  (*Id.*)  The Parties prepared and submitted rebuttal reports of their experts and all experts were deposed in the case.[3]  (*Id.* ¶¶ 6, 8.)

On September 9, 2024, the Court granted Plaintiff's motion to strike Defendants' Motion to Deny Class Certification.  (ECF No. 78.)  The Court held an in-person hearing on Plaintiff's class certification motion on September 12, 2024.  (ECF No. 80.)  The Court issued its ruling on September 25, 2024, granting Plaintiff's Motion for Class Certification and certifying a class of all California purchasers of Wheat Thins from October 13, 2018, to present.  (ECF No. 85.)

On October 10, 2024, Defendants filed a Rule 23(f) Petition for Permission to Appeal the Court's class certification ruling (ECF No. 93), which Plaintiff answered (USCA Case Number 24-6192, Dkt. # 7).

On October 18, 2024, Plaintiff filed a proposed Notice Plan to the California Class of the pendency of the class action, which the Court approved.  (ECF Nos. 99-100.)  Internet and print notice started December 20, 2024, and ran through January 30, 2025.  (*See* ECF No. 99-2.)

---

[2] Circana compiles comprehensive through-the-register, point-of-sale retail sales data for food products, including Wheat Thins.  (Vasquez Decl. ¶ 5.)
[3] Defense expert Bruce Blacker was deposed twice given the procedural effects of Defendants' Motion to Deny Class Certification.  (Vasquez Decl. ¶ 6.)

Following the Court's class certification ruling, the Parties agreed to revisit mediation, which they scheduled for December 6, 2024, before the Hon. Jay Gandhi (Ret.) for a full day session. (Vasquez Decl., ¶ 9.)  The case did not settle.  (*Id.*)

On December 19, 2024, Defendants filed a motion for summary judgment.  (ECF No. 105).  The next day, the Ninth Circuit denied Defendants permission to appeal.  (ECF No. 107.) On January 2, 2025, Plaintiff filed his opposition to Defendants' motion for summary judgment. (ECF No. 108.)

**The New York Action.**  On September 16, 2024, Plaintiff Matthew Werner filed an action in the Southern District of New York against Defendants that alleged similar claims as Plaintiff Wallenstein under New York consumer protection statutes N.Y. Gen. Bus. Law §§ 349, 350.  (*See Werner v. Mondelez, Int'l, Inc. et al.*, No. 1:24-cv-06957.)  The same counsel in this action is representing the Parties in the *Werner* action.  (Vasquez Decl., ¶ 10.)

On January 6, 2025, pursuant to the Judge Torres' Individual Practices in Civil Cases, Defendants filed their Pre-Motion Letter of Intent to File a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6).  (*Werner* Dkt. # 21.)  After preparing and filing a motion for *pro hac vice admission*, Class Counsel filed Plaintiff's response to Defendants' Pre-Motion letter.  (*Id.* Dkt. # 23.)  On January 14, 2025, just two days before the January 16, 2025 further mediation before Judge Gandhi, the Court granted Defendants' motion for leave to file a motion to dismiss, and the Parties anticipated imminent full briefing on that Motion.  (*Id.* Dkt. # 24.)

**The Illinois and Florida Actions.**  On December 23, 2024, Plaintiffs Ivan Blanco and Kathryn Swiggum filed an action in the Northern District of Illinois against Defendants that alleged similar claims as Plaintiffs Wallenstein and Werner under Illinois and Florida law, respectively.  (*Blanco, et al. v. Mondelez, Int'l, Inc., et al.*, No. 1:24-cv-13193.)  The same counsel in this action is representing the Parties in the *Blanco* action.  (Vasquez Decl., ¶ 11.)[4]

While Defendants' summary judgment motion was pending in the California Action, trial

---

[4] The Parties are unaware of any other related cases besides the *Wallenstein, Werner* and *Blanco* Actions.  (*Id.* ¶ 12.)

scheduled to commence on March 11, 2025, and the new actions pending in the other federal district courts, the Parties attempted another mediation before Judge Gandhi on January 16, 2025. (*Id.* ¶ 13.)  During this mediation, the Parties reached and agreed to the material terms of the Settlement.  (*Id.*)  The Parties stipulated to stay the *Werner* and *Blanco* actions pending approval of the Parties' classwide Settlement by this Court.  (*Id.* ¶ 14.)

For the next month following the settlement in principle, Class Counsel continued to negotiate various terms of the Settlement at arm's length to ensure Class Members' rights are protected.  (*Id.* ¶ 15.)

On February 18, 2025, Plaintiffs filed their Motion for Preliminary Approval of the Class Settlement and a Notice Plan to the Settlement Class.  (ECF No. 117.)  The Parties appeared for the preliminary approval hearing on April 8, 2025.   (ECF. No. 120.)  No objectors appeared and the Court granted preliminary approval of the Class Settlement.  (ECF Nos. 120, 122.)  Pursuant to the Notice Plan approved by the Court, notice to the Settlement Class commenced May 9, 2025 and is continuing to run through June 23, 2025.  (Vasquez Decl. ¶ 16.)

Plaintiffs now submit this Motion seeking an Order (i) awarding attorneys' fees to Class Counsel totaling 33 1/3% ($3,333,333) of the Settlement Fund, (ii) reimbursing litigation costs in the amount of $587,577.05, and (iii) granting service awards to each Court-appointed Class Representative of the Settlement Class as follows: David Wallenstein - $7,500; Matthew Werner - $5,000; Ivan Blanco - $3,500; Kathryn Swiggum - $3,500.  This matter is scheduled to be heard contemporaneously with Plaintiffs' Motion for Final Approval of Class Settlement presently scheduled for December 11, 2025 at 2:00 p.m. via videoconference only.  (ECF No. 122.)

## III.    LEGAL STANDARD

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (quoting Fed. R. Civ. P. 23(h)).  Both conditions exist, here.  Plaintiffs are authorized to seek fees by both agreement and by law.  (SA ¶ 3.1.); *see* Fed. R. Civ. P. 23(h); Cal. Civ. Code § 1780(e); N.Y. Gen. Bus. Law § 349(h); 815

ILCS 505/10a(c); Fla. Stat. Ann. § 501.2105.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted).

"The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized." *Id.* at 941. On the other hand, "[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.*; *see also In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) ("The percentage-of-recovery method is commonly used in the legal marketplace to determine attorneys' fees in contingency fee cases.") (citing 5 Newberg on Class Actions § 15:62 (5th ed. 2018)). Ultimately, "any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards . . . the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23(e)(3) adv. comm.'s note to 2018 amendment.

## IV.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES

Class Counsel requests 33 1/3% of the $10 million settlement fund under a percent-of-recovery method. The Settlement Agreement includes a provision whereby the Class Administrator pays Class Counsel the amount of attorneys' fees and costs awarded by the Court within twenty-one (21) calendar days from the entry of the Final Settlement Approval Order, without regard to the filing of any appeals, or any other proceedings which may delay the Effective Date. (SA ¶ 3.2.) However, in the event that Settlement does not become final or is ultimately overturned on appeal, Class Counsel shall immediately return in full the amount of attorneys' fees and expenses paid to them. (*Id.*) Consistent with this Court's Standing Order, Plaintiffs' request that the Court withhold 10% of the attorneys' fees granted at final approval until after the Post-Distribution Accounting has been filed.

### A. Counsel's Fee Request is Reasonable Under the Percent-of-Recovery Method

The $10 million common fund, together with a label change, represents an extraordinary result and benefit to the Settlement Class. The requested fee is 33 1/3% of the total fund, which is consistent with the Ninth Circuit precedent and the practice in this District in circumstances such as this. As this Court has previously explained:

> "The Ninth Circuit benchmark for megafund class action settlements of $50-200 million of 25% is to be adjusted upward or downward based on the size of the fund made available and in light of the lodestar cross-check. The $1.95 million settlement fund is well below the megafund range. **In this District, fee awards of approximately 33 1/3% are typical for settlements up to $10 million.**"

*Zamora v. Lyft, Inc.*, No. 3:16-CV-02558-VC, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) (citing *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 04960, 2015 WL 12976106, at *4 (N.D. Cal Aug. 20, 2015) (Chhabria, J.) (33 1/3% fee; $10 million fund) (emphasis added); *Bennett v. SimplexGrinnell LP*, No. 11 Civ. 01854, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (Tigar, J.) (38.8%; $4.9 million fund); *see also McMorrow v. Mondelez*, 3:17-cv-02327-BAS-JLB, ECF No. 212 (S.D. Cal., Apr. 8, 2022) (33.33% fee; $8 million fund); *Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *8 (S.D. Cal. Dec. 20, 2017) (35% fee; $13.9 million fund); *Howell v. Advantage RN, LLC*, No. 17-CV-883 JLS (BLM), 2020 WL 5847565, at *5 (S.D. Cal. Oct. 1, 2020) (33.33% fee; $3.2 million common fund).

### B. The Vizcaino Factors Support the Request for 33 1/3% of the Class Fund

The Ninth Circuit has approved a number of factors which may be relevant to a district court's determination of whether the percent-of-recovery method yields a reasonable fee or should be adjusted upward or downward. *Vizcaino*, 290 F.3d at 1048. These factors are: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. *Id.* (citation omitted). Here, the *Vizcaino* factors support Class Counsel's request for 33 1/3% of the Class Fund.

#### 1. The Results Achieved for the Class

12

"Exceptional results are a relevant circumstance." *Vizcaino*, 290 F.3d at 1048.  Indeed, this factor has even been called "the most critical factor in granting a fee award."  *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *9.  (quotation omitted).  Considering the monetary *and* corrective action achieved here, the Settlement is exceptional.

First, the all-cash, direct monetary relief is the touchstone of a beneficial class action settlement.  *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (recognizing that "cash, not in kind, is a good indicator of a beneficial settlement.").  In addition, the Class Fund is non-reversionary, meaning that it will never go back to the Defendants.  (SA ¶ 4.7.)  Instead, any unpaid amounts will be distributed to *cy pres* recipients eliminating any chance of fraud, overreaching, or collusion.  (*Id*.)  This type of Class Fund is further indicia of a great benefit for the Settlement Class that offers them clear and concrete relief.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("A reversion can benefit both defendants and class counsel, and thus raise the specter of their collusion . . . .").

Second, the Settlement offers Class Members $4.50 – nearly a full refund of a box of the crackers – without any proof of purchase or minimum $8.00 with any proof of purchase up to $20.00.  (SA ¶ 4.1.)  Because Plaintiff's damages model produced a premium of just $0.15/box that consumers paid because of the misrepresentation, the Settlement entitles Class Members to receive the value of 30 boxes under Plaintiff's damages theory *without* proof of purchase, and more than 53 boxes with a showing of just one proof of purchase.  (SA ¶ 4.1; Vasquez Decl. ¶ 17.)  This is an excellent result for the Settlement Class.

Third, the $10 million Class Fund is a great result when considering the risk and potential trial damages for the certified California Class and Defendant's total potential liability nationwide.  Even if the jury were to accept Plaintiff's damages model in full, the price premium damages to the California Class would have produced damages of approximately $7,626,546, which is significantly *less* than the $10 million fund achieved by the Settlement.  (*Id.* ¶ 18.)  Thus, the $10 million Settlement Fund here represents about 131% of the approximately $7.6 million Plaintiffs could have recovered at trial for the California Class.  (*Id.*)  Extrapolating Plaintiff's

13

damages in the California Action nationwide (using California's 12% population), hypothetical price premium damages on behalf of a nationwide class are at best approximately $63 million, such that the $10 million common fund represents a recovery of about 16%. (*Id.* ¶ 19.) Because there is likely no single forum in which this case could be brought to trial on a nationwide basis and it might be impossible to get relief for consumers in some states – for example where class actions are not permitted, or individual showings of reliance are required – a nationwide settlement at 16% of the best possible outcome that could potentially be achieved is an excellent result and benefit to the Settlement Class. *See, e.g., See McMorrow*, 2022 WL 1056098, at *6 ("The fact that some states preclude class actions and others require individual proof of reliance for consumer fraud claims makes them impossible to adjudicate on a class-wide basis, and weighs in favor of granting Plaintiffs' fee request.") (citation omitted).

Fourth, the label change brought about by the Settlement is significant and meaningful. As further consideration for the Settlement, Defendants agreed to stop using the representation "100% WHOLE GRAIN" either by itself or before the brand name "Wheat Thins" without other qualifiers on the package of the Class Products. (SA ¶ 2.2).

A label change is a crucial remedy in consumer fraud cases alleging misleading labeling and advertising because it ensures that consumers can rely on the accuracy of product labels and protects the market at large from deceptive practices. This is why courts have found that "[i]njunctive relief in a consumer case alleging misleading advertising is almost always likely to be an important remedy." *Relente v. Viator, Inc.*, 2015 WL 3613713, at *3 (N.D. Cal. June 9, 2015) (citations omitted); *see also Brazil v. Dell Inc.*, 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) (The "elimination of allegedly false representations . . . confer[s] a benefit on both the class members and the public at large.") (citation omitted); *Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) ("[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes, which benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products."); *McMorrow*, 2022 WL 1056098, at *6 (holding that precluding the allegedly deceptive practice

"is undoubtedly beneficial to class consumers, the marketplace, and even competitors who do not mislabel their products.") (citation omitted)); *Guttmann v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *3 (N.D. Cal. Aug. 1, 2016) (settlement requiring labeling changes "provides substantial health benefits to all purchasers"). "[T]hat counsel obtained injunctive relief in addition to monetary relief for their clients is . . . a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055-56 (9th Cir. 2019) (emphasis in original and quotation omitted).

## 2. The Complexity of the Case, Risk and Expense to Counsel, and Contingency Nature of the Fee

This case was complex, risky, and expensive. Class Counsel paid $587,577.05 to prosecute this case, and spent over 3 years and 4,000 hours of attorney and paralegal time on a pure contingency-based fee structure. (Vasquez Decl. ¶¶ 20-21.) Class Counsel litigated this case through certification with trial just mere months away. (*Id.* ¶¶ 3-13.) They filed similar actions expanding the relief to consumers of Wheat Thins in four different states. (*Id.* ¶¶ 10-11.)

The case involved difficult, complex, and highly disputed expert-driven issues regarding damages methodologies and consumer survey analysis. Plaintiffs designated three (3) experts and Defendants designated two (2) expert witnesses that each offered affirmative and rebuttal opinions regarding materiality, conjoint analysis and damages. (*Id.* ¶ 8.) Multiple factual issues, extensive expert testimony, class certification, summary judgment, subpoenas and witness testimony weigh in favor of an award of Class Counsel's requested fees. (*See id.* ¶¶ 3-13.)

Courts routinely recognize the great risk that that class counsel takes in actions such as this, which in turn justifies a greater fee award. *Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *9 (N.D. Cal. Jan. 31, 2020) (recognizing that counsel "assume[d] substantial risk in litigating this action on a contingency fee basis, and incurr[ed] costs without the guarantee of payment for its litigation efforts"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award" and

further recognizing that "[C]ourts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees") (citation omitted); *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at \*4 (contingent case involving millions of dollars in time and expenses represented a "significant risk").

### 3. The Skill, Experience, and Performance of Counsel on Both Sides

Class Counsel has considerable experience in nationwide prosecution of complex consumer class actions, mass torts, and serious personal injury matters, including those involving false and misleading food labels. (Vasquez Decl. ¶ 29, Ex. 3.) Indeed, Class Counsel has been at the forefront of some of the largest mass torts across the country over the last decade. (*Id.*) Class Counsel brought decades of collective experience to this action from established backgrounds from the United States Department of Justice, Cooley LLP, Morrison Foerster, LLP, DLA Piper, Quinn Emmanuel Urquhart and Sullivan, LLP, and Luce Forward. (*Id.*)

With this background, comes skill. Great skill was required by Class Counsel to successfully prosecute this case. It involved a critical understanding of issues involving consumer protection statutes across four jurisdictions on complex issues involving consumer behavior. (Vasquez Decl. ¶ 30.) Class Counsel successfully opposed two sets of highly skilled defense attorneys throughout the life of the case against a well-financed corporate giant. (*Id.* ¶ 31.)

In similar circumstances, Courts have recognized that the experience and skill of counsel to "navigate[] substantial offensive, defensive, and expert discovery; brief[] class certification multiple times and ultimately prevail[]; and engage[] in a successful mediation to resolve the case" demonstrates great skill supporting a fee request of 33 1/3% of the class fund. *McMorrow*, 2022 WL 1056098, at \*7.

### 4. Awards in Similar Cases

The fee requested is in line with other consumer class action settlements of comparable size within this district and State. *Zamora*, 2018 WL 4657308, at \*3 (Chhabria, J.) (33 1/3% fee; $10 million fund); *Bennett*, 2015 WL 12932332, at \*6 (38.8%; $4.9 million fund); *McMorrow*,

16

3:17-cv-02327-BAS-JLB, ECF No. 212 (S.D. Cal., Apr. 8, 2022) (33.33% fee; $8 million fund); *Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *8 (S.D. Cal. Dec. 20, 2017) (35% fee; $13.9 million fund); *Howell v. Advantage RN, LLC*, No. 17-CV-883 JLS (BLM), 2020 WL 5847565, at *5 (S.D. Cal. Oct. 1, 2020) (33.33% fee; $3.2 million fund); *Krommenhock v. Post Foods LLC*, No. 16-cv-4958-WHO (N.D. Cal.) (Dkt. No. 303) (30% fee; $15 million fund); *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK (N.D. Cal.) (Dkt. No. 407) (30% fee; $13 million fund).

### C.  A Lodestar Crosscheck Verifies that Class Counsel's Request is Reasonable

Where a court determines fees using the percent-of-fund method, the Ninth Circuit "has consistently refused to adopt a [lodestar] crosscheck requirement." *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (collecting cases).  Nevertheless, "[c]ourts in the Ninth Circuit sometimes examine the lodestar calculation as a crosscheck on the percentage fee award to ensure the reasonableness of the percentage award." *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020) (citing *Vizcaino*, 290 F.3d at 1050).  "The lodestar figure is calculated by multiplying the number of hours reasonably spent by a reasonable hourly rate," after which "[c]ourts may 'adjust [the lodestar figure] upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (citations omitted).

Here, Class Counsel's request of 33 1/3% of the Settlement Fund is reasonable and consistent with Class Counsel's lodestar.  The $3,333,333 fee request represents approximately 1.10 multiplier of counsel's reasonable lodestar of $3,019,150.  (Vasquez Decl. ¶¶ 25-26.); *see, e.g., McMorrow*, 2022 WL 1056098, at *8 ("[T]he quality of Class Counsel's representation and benefit obtained by the class, among other factors, support the modest 1.54 multiplier to Plaintiffs' lodestar and justify the fee award of 33.3%." (citations omitted)).

Specifically, Class Counsel's hours are reasonable and efficient.  Between sending the initial CLRA Notice Letter on May 3, 2022 and the present (*excluding* time spent on preparing and filing this Motion) —1,132 days in total, or about 37 months— Class Counsel and their staff

expended 4,420.1 hours litigating this action, equal to about 1,473.33 hours per year, or 122 hours per month, or 4.1 hours per day.  (*See* Vasquez Decl. ¶ 27.)  This time was spent investigating the case and drafting the pleadings, taking and defending fact and expert discovery, reviewing Defendants' document production of over 100,000 pages, successfully moving for class certification and opposing Defendants' motion to deny certification, effectuating notice of the class action to the California Class, opposing summary judgment, negotiating the settlement and, most significantly, commencing preparation for trial which was just two months away at the time of Settlement.  (*See id.* ¶¶ 3-13.)  The Court should find these hours reasonable and necessary, particularly in light of the result obtained for the Settlement Class.

In addition, Class Counsel's rates are reasonably "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *James v. AT&T W. Disability Benefits Program*, 2014 WL 7272983, at *2 (N.D. Cal. Dec. 22, 2014) (quotation omitted).  Here, all attorneys that devoted time to this action were partners or senior counsel with the support of junior and paralegals.  (Vasquez Decl. ¶ 21.)  The rates Class Counsel seek range from $800-$1,000/hour for attorney time and from $175-$275/hour for paralegal time.  (*Id.*)  These rates are consistent with prevailing rates in this State for class action litigation. *Hardy v. Embark Tech., Inc.*, 2024 WL 1354416, at *9 (N.D. Cal. Mar. 29, 2024) ("Class Counsel's current rates rang[ing] from $900 for partners" were "generally in line with rates prevailing in this community for similar services by lawyers of reasonably comparable skill, experience and reputation." (citing *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) ($650 to $1,250 for partners or senior counsel).

**V.    CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF COSTS**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Bellinghausen*, 306 F.R.D. at 265 (quotation omitted); *see also Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *5 (N.D. Cal. Jan. 18, 2017) ("Class counsel is entitled to reimbursement of reasonable expenses." (quoting Fed. R. Civ. P. 23(h))).  Here, Class Counsel seeks

reimbursement of $587,577.05, the majority of which relates to expert witness opinion and testimony and deposition costs. (Vasquez Decl. ¶ 28, Ex. 2.) Because "[t]he categories of expenses for which plaintiffs' [sic] seek reimbursement are the type of expenses routinely charged to hourly clients . . . the full amount should be reimbursed." *Larsen v. Trader Joe's Co.,* No. 11-CV-05188-WHO, 2014 WL 3404531, at *10 (N.D. Cal. July 11, 2014).

## VI.    THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS

"[T]he Ninth Circuit has recognized that service awards to representatives in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009)). "An incentive award of $5,000 is considered 'presumptively reasonable' in this District." *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019).

Plaintiffs request service awards totaling $19,500: (1) David Wallenstein - $7,500; (2) Matthew Werner - $5,000; (3) Ivan Blanco - $3,500; (4) Kathryn Swiggum - $3,500. The requested amounts are reasonable and justified when considering each of their active roles and participation in the litigation, acceptance of their duties as a Class Representative, and for the benefit they achieved for the Settlement Class. (Wallenstein Decl. ¶¶ 5-21; Werner Decl. ¶¶ 4-18; Blanco Decl. ¶¶ 4-18; Swiggum Decl. ¶¶ 4-18.)

As for Plaintiff David Wallenstein, specifically, a modest increase above the $5,000 benchmark for a service award is warranted. Plaintiff Wallenstein estimates that he devoted 38 hours to this case, traveled to and sat for a full-day deposition in San Francisco, and had his credibility publicly attacked in Defendants' filings that unsuccessfully opposed certification. (Vasquez Decl., ¶ 32; Wallenstein Decl. ¶¶ 4-18.)

Moreover, the total $19,500 for all Representatives is just 0.00195 of the Settlement Fund and thus "significantly less"—over 100 times less— "than the approximately 1% of the total settlement awarded by some courts." *See Fowler*, 2019 WL 330910, at *8 (citation omitted).

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Class Counsel's request for an award of $3,333,333 in fees and $587,577.05 in litigation costs, and grant the Class Representatives the service awards as requested herein.


Dated:  June 6, 2025                          **FOX LAW, APC**

                                              _____
                                              COURTNEY VASQUEZ
                                              courtney@foxlawapc.com
                                              *Attorneys for Plaintiffs, the California*
                                              *Class, and the Nationwide Settlement Class*