DAVE FOX (Bar No. 254651)
Dave@FoxLawAPC.com
JOANNA FOX (Bar No. 272593)
Joanna@FoxLawAPC.com
COURTNEY VASQUEZ (Bar No. 267081)
Courtney@FoxLawAPC.com
**FOX LAW, APC**
201 Lomas Santa Fe Drive, Suite 420
Solana Beach, CA 92075
Tel: 858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs, the California Class,
and the Settlement Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALLENSTEIN, *individually and on behalf of all others similarly situated*,<br><br>        Plaintiffs,<br><br>  v.<br><br>MONDELĒZ INTERNATIONAL, INC., a Virginia corporation, MONDELĒZ GLOBAL, LLC, a Delaware limited liability company, AND NABISCO, INC., a New Jersey corporation,<br><br>        Defendants. | Case No. 3:22-cv-06033-VC<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:   December 11, 2025<br>Time:  2:00 p.m. (Via Videoconference Only)<br>Judge: The Hon. Vince Chhabria<br>Ctrm:  4, 17th Floor |

## **NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e), the Court's Civil Standing Order, the Northern District's Procedural Guidance for Class Action Settlements, and the Court's April 10, 2025 Order Granting Preliminary Approval of Class Settlement (ECF No. 122), Plaintiffs and Class Representatives David Wallenstein, Matthew Werner, Ivan Blanco and Kathryn Swiggum (collectively "Plaintiffs"), individually and on behalf of the Settlement Class, hereby move the Court, the Honorable Vince Chhabria presiding, for an Order:

1. Granting final certification of the Settlement Class;

2. Confirming final appointment of Fox Law, APC as Class Counsel and Plaintiffs as Class Representatives;

3. Granting final approval of the Settlement as fair, reasonable, and adequate to the Settlement Class;

4. Granting Plaintiffs' Motion for Attorney Fees, Costs, and Service Awards (ECF No. 126) which seeks (a) attorney's fees of 33 1/3% of the Settlement Fund, (b) reimbursement of litigation costs in the amount of $587,577.05, and (c) service awards to each Court-appointed Class Representative of the Settlement Class as follows: David Wallenstein - $7,500; Matthew Werner - $5,000; Ivan Blanco - $3,500; Kathryn Swiggum - $3,500.

5. Directing the parties to undertake the obligations set forth in the Settlement Agreement that arise out of the Court's final approval;

6. Entering Final Judgment; and

7. Maintaining jurisdiction over for purpose of enforcing the Judgment.

This Motion is based upon this Notice of Motion, the below Memorandum, the concurrently-filed Declarations of Courtney Vasquez ("Vasquez Decl.) and Christie K. Reed of Kroll Administration LLC ("Reed Decl."), and all exhibits thereto, the Class Action Settlement Agreement attached to the Vasquez Decl. as Exhibit 1 ("Settlement Agreement" or "SA") that was

1

preliminarily approved on April 10, 2025, Plaintiffs' Motion for Attorneys Fees, Costs and Service Awards filed on June 6, 2025 (ECF No. 126), all prior pleadings and proceedings in this action, and any additional evidence and argument submitted in support of the Motion.

A proposed Final Approval Order and a Proposed Final Judgment are submitted herewith.

Respectfully submitted,

Dated: November 28, 2025

**FOX LAW, APC**

_____
COURTNEY VASQUEZ
courtney@foxlawapc.com
*Attorneys for Plaintiff, the*
*California Class, and the*
*Settlement Class*

2

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 6

II.    PROCEDURAL HISTORY ................................................................................ 7

   A.   The Litigation History and Arm's Length Settlement Negotiations .................................. 7

   B.   The Settlement ............................................................................................ 10

     1.   $10 Million All-Cash, Non-Reversionary Settlement Fund ......................... 10

     2.   Changes to Wheat Thins Labeling ......................................................... 11

     3.   Preliminary Approval of the Settlement .................................................... 11

III.   THE COURT-APPROVED NOTICE PLAN HAS BEEN COMPLETED ........................ 12

IV.    LEGAL STANDARD FOR FINAL APPROVAL ......................................................... 13

V.     THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS ................................................................................................................. 13

VI.    THE SETTLEMENT SATISIFIES RULE 23(e)(2) ...................................................... 14

     1.   The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Duration of Further Litigation. .................................................................. 14

     2.   The Risk of Maintaining Class Action Status Through Trial. .................................. 15

     3.   The Settlement Benefit is Fair, Adequate and Reasonable ...................................... 16

     4.   The Extent of Discovery Completed and Procedural Posture .................................. 17

     5.   The Experience and Views of Counsel .................................................... 18

     6.   Governmental Participation .................................................................... 19

     7.   Class Member Reaction was Positive ...................................................... 19

VII.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........................ 20

     A.   The Monetary Relief is Fair in Relation to Potential Damages ........................... 20

     B.   The Label Change is Appropriate and Meaningful ............................................. 21

     C.   The Attorneys' Fees, Costs, and Service Awards are Reasonable ....................... 21

VIII.  CONCLUSION .................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**<u>Statutes</u>**
N.Y. Gen. Bus. Law §§ 349, 350 .................................................................................. 9

**<u>Federal Cases</u>**
*Allen v. Hyland's, Inc.*,
No. 12-cv-1150 DMG (MANx) (C.D. Cal.) ...................................................... 15
*Allen v. Similasan Corp.*,
2017 WL 1346404, at *4 (S.D. Cal., Apr. 12, 2017) .................................. 18, 19
*Arnold v. DMG Mori USA, Inc.*,
2022 WL 18027883, at *2 (N.D. Cal., Dec. 30, 2022) ...................................... 18
*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467, 478 (S.D.N.Y. 2013) ............................................................... 23
*Blanco, et al. v. Mondelez, Int'l, Inc., et al.*,
No. 1:24-cv-13193 ............................................................................................. 10
*Boyd v. Bechtel Corp.*,
485 F. Supp. 610, 622 (N.D. Cal. 1979) ............................................................ 19
*Bruno v. Quten Research Inst., LLC*,
2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) ........................................... 21
*Chevron Envt'l. Mgmt. Co. v. BKK Corp.*,
2013 WL 5587363, at *3 n.2 (E.D. Cal. Oct. 10, 2013) .................................... 17
*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566, 575 (9th Cir. 2004) .................................................. 13, 14, 15, 20
*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268, 1276 (9th Cir. 1992) ............................................................ 13, 18
*Create-A-Card, Inc. v. Intuit, Inc.*,
2009 WL 3073920, at *15 (N.D. Cal. Sept. 22, 2009) ...................................... 20
*Donald v. Xanitos, Inc.*,
2017 WL 1508675, at *2 (N.D. Cal. Apr. 27, 2017) ......................................... 15
*Edwards v. Nat'l Milk Producers Fed'n*,
2017 WL 3623734, at *2, *8 (N.D. Cal. June 26, 2017) ................................... 20
*Farar v. Bayer AG*,
No. 14-cv-4601 (N.D. Cal.) ............................................................................... 15
*Galeener v. Source Refrigeration & HVAC, Inc.*,
2015 WL 12976106, at *4 (N.D. Cal Aug. 20, 2015) ........................................ 22
*Gaudin v. Saxon Mortg. Servs., Inc.*,
2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) ......................................... 18
*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1026 (9th Cir.1998) .............................................................. 13, 20
*Heim v. Heim*,
2014 WL 1340063, at *5, *6 (N.D. Cal. Apr. 2, 2014) ..................................... 17
*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935, 946 (9th Cir. 2011) ..................................................................... 13
*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454, 459 (9th Cir. 2000) ..................................................................... 17
*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823, 831 (N.D. Cal. 2017) ......................................... 14, 16, 20
*Larsen v. Trader Joe's Co.*,
2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ............................... 14, 15, 20
*Linner v. Cellular Alaska P'ship*,
151 F.3d 1234, 1239 (9th Cir. 1998) .................................................................. 18
*Mandujano v. Basic Vegetable Prods. Inc.*,
541 F.2d 832, 837 (9th Cir. 1976) ..................................................................... 20

*Manner v. Gucci*,
2016 WL 1045961, at *7 (Mar. 16, 2016) ................................................................ 19
*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581, 590-94 (9th Cir. 2012) ...................................................................... 17
*McCabe v. Six Continents Hotels, Inc.*,
2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) ............................................. 17
*McMorrow v. Mondelez Int'l, Inc.*,
2022 WL 1056098, at *6 (Apr. 8, 2022) ............................................................. 20, 22
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523, 526 (C.D. Cal. 2004) ......................................................... 15, 18, 20
*Noll v. eBay, Inc.*,
309 F.R.D. 593, 608 (N.D. Cal. 2015) ..................................................................... 20
*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615, 625 (9th Cir. 1982) ........................................................................... 14
*Pennington v. Tetra Tech EC, Inc.*,
2022 WL 899843, at *4 (N.D. Cal. Mar. 28, 2022) .................................................. 14
*Racies v. Quincy Bioscience, LLC*,
No. 15-cv-292 (N.D. Cal.) .................................................................................. 15, 16
*Rieckborn v. Velti, PLC, et al.*,
2015 WL 468329, at *5 (N.D. Cal. Feb. 3, 2015) .................................................... 15
*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948, 966 (9th Cir. 2009) ........................................................................... 16
*Rodriguez*,
563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995) .......... 19
*Stull v. Baker*,
410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) ............................................................... 19
*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370, 1375 (9th Cir. 1993) ........................................................................... 13
*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) ................................................ 17
*Watkins v. Hireright, Inc.*,
2016 WL 1732652, at *7 (S.D. Cal. May 2, 2016) ................................................... 15
*Werner v. Mondelez, Int'l, Inc. et al.*,
No. 1:24-cv-06957 ................................................................................................ 9, 10
*Winters I*,
2020 WL 5642754, at *4 ......................................................................................... 21
*Zamora v. Lyft, Inc.*,
2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) ............................................... 22
*Zepeda v. PayPal, Inc.*,
2017 WL 1113293, at *15 (N.D. Cal. Mar. 24, 2017) .............................................. 20

**Federal Statutes**
28 U.S.C. §1715 ......................................................................................................... 14
Class Action Fairness Act ("CAFA") .................................................................. 14, 19
Federal Rules of Civil Procedure, Rule 12(b)(6) ......................................................... 7
Federal Rules of Civil Procedure, Rule 23 ........................................................... 14, 20
Federal Rules of Civil Procedure, Rule 23(e) ............................................................ 13
Federal Rules of Civil Procedure, Rule 23(e)(2) .................................................. 13, 14
Federal Rules of Civil Procedures, Rule 23(e)(2)(C)(iii) ........................................... 22

## MEMORANDUM OF POINTS & AUTHORITIES

I.    **INTRODUCTION**

This action challenges Defendants' labeling of Wheat Thins as "100% WHOLE GRAIN" because the cracker contains cornstarch, which Plaintiffs alleged was a refined (not whole) grain ingredient. Plaintiffs litigated the case through discovery, class certification, answered a Petition to Appeal the certification order which was denied, opposed summary judgment, and engaged in three (3) settlement conferences with two different retired judges.

On the brink of summary judgment being heard and with trial just two months away, Plaintiffs obtained the sizable relief embodied in the present settlement: a ten million ($10,000,000) all-cash, non-reversionary common fund for a nationwide settlement class, and an agreement by Defendants not to use the representation "100% WHOLE GRAIN" either by itself or before the brand name "Wheat Thins" without other qualifiers.  The Settlement fulfilled both purposes of consumer protection laws: meaningful cash restitution and labeling changes that protect all consumers, the competitive market, and the public at large.

Notice of the Settlement was successfully implemented in accordance with the approved Notice Plan. The Notice Plan included: (1) online media that delivered 59,982,769 impressions (resulting in more than 15,596,769 impressions than the Court-approved Notice Plan anticipated); and (2) print publication in *USA Today* for four consecutive weeks in May 2025. (Reed Decl. ¶¶ 6-10.) The approved notices directed potential class members to the Settlement Website www.wheatthinsclasssettlement.com, which contained important information about the lawsuit, the Settlement, and how to make a claim.

The Notice proved effective and the website received significant use with 2,898,348 users accessing the site, 3,005,401 page views, and 2,936,774 sessions/hits. (Reed Decl. ¶ 11.) The Notice also published a toll-free telephone number for Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system, which recorded a total of 482 incoming calls, amounting to an aggregate call duration of

1,133 minutes. (Reed Decl. ¶ 13.)  As a result, the Notice Plan successfully reached approximately 80% of likely Class Members an average of 3.3x each, which was more than the 2.5x reach that the Court-approved Notice Plan anticipated. (Reed Decl. ¶ 3.)

The broad reach of the Notice was met with an overwhelmingly positive response to the Settlement: **<u>Not a single person objected to it. No one opted out.</u>** The Class Administrator calculated 111,388 valid claims, which included 2,412 claims submitted with proof of purchase. (Reed Decl. ¶¶ 16-17, 24.) This claims rate fell directly in line with the rate the Class Administrator predicted for this case. (*See* Vasquez Decl. ¶ 14 (Class Administrator predicted 100,000 valid claims.).)

Based on the substantial relief obtained, the uniformly positive response following completion of the comprehensive Court-approved Notice program, and the elimination of risk and expense of continued litigation after more than three years of skillful prosecution, this is a fair, reasonable, and adequate result for the Class, and the Court should grant final approval of the Settlement.

## II.    PROCEDURAL HISTORY

### A.  The Litigation History and Arm's Length Settlement Negotiations

Plaintiff David Wallenstein commenced this action on October 13, 2022, seeking relief for California purchasers of Wheat Thins crackers based on Defendants' misrepresentation that Wheat Thins are "100% WHOLE GRAIN" when in fact an ingredient in Wheat Thins is cornstarch, which Plaintiff alleged is a refined grain. (ECF No. 1, ¶¶ 1-2.)

On December 12, 2022, Defendants sought to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6). (ECF No. 21.) Defendants argued that the phrase "100% WHOLE GRAIN" is not misleading because it is only ever used immediately before the word "wheat" as used in the product name "Wheat Thins," such that only the wheat ingredient is whole grain, and thus the representation "100% WHOLE GRAIN" is not false or misleading.  (ECF No. 21, at 7-9.) The Court denied Defendants' Motion to Dismiss as to Mr. Wallenstein's claims under California law. (ECF No. 40.)

After the ruling on the Motion to Dismiss, the Parties scheduled full-day mediation before the Hon. Philip M. Pro (Ret.) that was held on August 30, 2023. (Vasquez Decl., ¶ 3.)  The case did not settle, and the Parties proceeded through discovery. (*Id.*)

Fact discovery in this case was extensive. (Vasquez Decl., ¶¶ 4-9.)  The Parties exchanged written discovery that included Plaintiff propounding 58 document requests that resulted in over 102,000 pages of documents produced by Defendants. (*Id.* ¶¶ 4-5.) Plaintiff Wallenstein also conducted third-party discovery that sought documents from the Whole Grains Council and retail sales data from Circana[1] and various retailers including Amazon.com, Costco, Grocery Outlet, 99 Cent Stores, and Dollar Tree Stores. (*Id.* ¶ 6.)

Over a dozen fact and expert witness depositions were taken in this case. (*Id.* ¶ 7.) Plaintiff took the depositions of Defendants' 30(b)(6) designees and four other corporate percipient witnesses, one of whom was a former employee. (*Id.* ¶ 7.) Defendants took the deposition of Plaintiff Wallenstein, who traveled to San Francisco and sat through a full-day, in- person deposition. (*Id.* ¶ 8.)

On May 24, 2024, Plaintiffs moved for class certification. (ECF No. 57.) Defendants opposed the motion and also filed an affirmative motion to deny class certification. (ECF Nos. 56, 67.) Defendants designated two experts on materiality and damages in their effort to oppose class certification. (Vasquez Decl. ¶ 9.) Plaintiff designated two damages experts to support his classwide damages model and a rebuttal expert on materiality. (*Id*.) The Parties prepared and submitted rebuttal reports of their experts, and all experts were deposed in the case.[2] (*Id.* ¶¶ 7, 9.)

On September 9, 2024, the Court granted Plaintiff's motion to strike Defendants' Motion to Deny Class Certification. (ECF No. 78.) The Court held a hearing on Plaintiff's class certification motion on September 12, 2024, and took the matter under submission. (ECF No. 80.)

---

[1] Circana compiles comprehensive through-the-register, point-of-sale retail sales data for food products, including Wheat Thins.  (Vasquez Decl. ¶ 17.)
[2] Defense expert Bruce Blacker was deposed twice given the procedural effects of Defendants' Motion to Deny Class Certification.  (*See* Vasquez Decl. ¶ 7.)

The Court issued a written ruling on September 25, 2024, granting Plaintiff's Motion for Class Certification and certifying a class of all California purchasers of Wheat Thins from October 13, 2018, to present. (ECF No. 85.)

On October 10, 2024, Defendants filed a Rule 23(f) Petition for Permission to Appeal the Court's class certification ruling (ECF No. 93), which Plaintiff answered (USCA Case Number 24-6192, Dkt. # 7).

On October 18, 2024, Plaintiff filed a proposed Notice Plan giving notice to the California Class of the pendency of the class action, which the Court approved. (ECF Nos. 99-100.) Internet and print notice commenced on December 20, 2024, and ran through January 30, 2025, to the California Class. (*See* ECF No. 99-2.)

Meanwhile, on September 16, 2024, Plaintiff Matthew Werner filed an action in the Southern District of New York against Defendants that alleged similar claims as Plaintiff Wallenstein under New York consumers protection statutes N.Y. Gen. Bus. Law §§ 349, 350. (*See Werner v. Mondelez, Int'l, Inc. et al.*, No. 1:24-cv-06957.) The same counsel in this action represents the Parties in the *Werner* action. (Vasquez Decl., ¶ 10.)

Following the Court's class certification ruling, the Parties agreed to revisit mediation, which they scheduled for December 6, 2024, before the Hon. Jay Gandhi (Ret.) for a full day session. (Vasquez Decl., ¶ 20.) The case did not settle. (*See id.*)

On December 19, 2024, Defendants filed a motion for summary judgment. (ECF No. 105.) The next day, the Ninth Circuit denied Defendants permission to appeal. (ECF No. 107.)

On December 23, 2024, Plaintiffs Ivan Blanco and Kathryn Swiggum filed an action in the Northern District of Illinois, Eastern Division against Defendants that alleged similar claims as Plaintiffs Wallenstein and Werner under Illinois and Florida law, respectively. (*Blanco, et al. v. Mondelez, Int'l, Inc., et al.*, No. 1:24-cv-13193.) The same counsel in this action represents the Parties in the *Blanco* action. (Vasquez Decl., ¶ 10.)[3]

---

[3] The Parties are unaware of any other related cases besides the *Wallenstein, Werner* and *Blanco* Actions. (*Id.* ¶ 10.)

On January 2, 2025, Plaintiff filed his opposition to Defendants' motion for summary judgment. (ECF No. 108.)

While Defendants' summary judgment motion was pending, trial mere months away, and the new actions pending in other federal district courts, the Parties attempted another mediation before Judge Gandhi on January 16, 2025. (*Id.* ¶ 11.)  During this mediation, the Parties reached and agreed to the material terms of the Settlement. (*Id.*)  The Parties stipulated to stay the *Werner* and *Blanco* actions pending approval of the Parties' classwide Settlement by this Court. (*Id.* ¶ 12.)

### B.  The Settlement

The Settlement provides two primary benefits to the Class: (1) meaningful cash restitution and (2) a label change.

### 1.  $10 Million All-Cash, Non-Reversionary Settlement Fund

Defendants agreed to establish a $10,000,000 all cash, non-reversionary common fund (the "Settlement Fund") to pay Class Notice and Claims Administration, Court-approved attorneys' fees, expenses, and service awards, and Class Member claims. (*See* SA ¶ 2.1.)  In accordance with the terms of the Settlement Agreement, the Settlement Fund was established and timely and fully funded. (Vasquez Decl. ¶ 21.)

To obtain monetary relief, a Class Member must submit an online or hard copy Claim Form. (SA at ¶ 4.1.)  Claimants had the option to submit a claim with proof or without proof. Class Members that submitted a valid Claim without proof of purchase will be entitled to four dollars and fifty cents ($4.50) per Household. (*Id.* at ¶ 4.1(c). Class Members that submitted a valid Claim with more than one proof of purchase will be entitled to a minimum of $8.00, or $0.15 per unit purchased shown in the proof up to a maximum of $20.00. (*Id.* ¶ 4.1(c).)

The $4.50 standard Cash Award without proof was agreed to between the Parties based on information produced during discovery that the average consumer purchases one box every two months at an average price of $4.65/box. The calculation assumed a refund of $0.15 per unit

purchased, which is based on the 3.24% premium determined by the damages model submitted in the California Action, and then extrapolated those damages over a five-year period of time to determine a reasonable damages value for a Class Member that had no proof of purchase. (*Id.* at ¶ 4.1(c); Vasquez Decl. ¶¶ 15-16.)

Cash Awards will be subject to pro rata reduction if all claims exceed the money remaining in the Settlement Fund after all other approved expenses. (SA at ¶¶ 4.2, 4.5; Reed Decl. ¶ 24.) Any remaining balance will be donated *cy pres* in equal shares to the Resnick Center for Food Law and Policy at the University of California, Los Angeles, School of Law and Feeding America ("Cy Pres Recipients"). (SA at ¶¶ 1.16; Vasquez Decl., ¶ 24; Reed Decl. ¶ 24.) Any amounts remaining uncleared after 180 days will be provided to Claimants in a supplemental distribution, or donated *cy pres* in equal shares. (*Id.* at ¶ 4.7; Reed Decl. ¶ 24.)

### 2. Changes to Wheat Thins Labeling

As further consideration for the Settlement, Defendants agreed not to use the representation "100% WHOLE GRAIN" either by itself or before the brand name "Wheat Thins" without other qualifiers on the package of the Class Products ("Label Change"). (SA ¶ 2.2.) Defendants are granted a reasonable "sell through period" of 18 months after the final date to make the Label Change is established to permit Defendants to sell through all existing product and packaging inventory produced before the date of the Label Change. (*Id.*)

### 3. Preliminary Approval of the Settlement

On April 10, 2025, the Court held that "[t]he proposed Settlement Agreement is fair, reasonable, adequate" and "is the result of serious, informed, non-collusive, arms-length negotiations" and "meets all applicable requirements of law." (ECF No. 122.) The Court preliminarily approved the Settlement and the proposed Notice Plan and certified a conditional Settlement Class for settlement purposes. (*Id*.) On June 6, 2025, Plaintiffs timely filed their Motion for Attorneys' Fees, Costs and Service Awards. (ECF No. 126.) The Motion was immediately posted to the Settlement Website. (Vasquez Decl. ¶ 22.) Class Members thus had full access to the motion for 30 days prior to the July 7, 2025 objection deadline. (*Id*.) No Class

Member objected to any aspect of the Motion.  (Reed Decl. ¶¶ 15-16; Vasquez Decl. ¶¶ 22-23.)

## III.    THE COURT-APPROVED NOTICE PLAN HAS BEEN COMPLETED

The Court ordered Kroll Administration, LLC ("Kroll") to act as Class Administrator and execute the approved Notice Plan. (ECF No. 122, ¶ 7.) Notice of the settlement was accomplished using a mix of online display advertising, social media advertising, keyword search advertising, newspaper advertising, CAFA Notice, a neutral, informational Settlement Website, and a toll-free telephone information line. (Reed Decl. ¶¶ 3-5.)

The online media notice delivered 59,982,769 digital impressions (resulting in more than 15,596,769 impressions than the Court-approved Notice Plan anticipated. (Reed Decl. ¶¶ 6-10.) The Settlement Website received 2,898,348 users accessing the site, 3,005,401 page views, and 2,936,774 sessions/hits. (Reed Decl. ¶ 11.)  The Notice also published a toll-free telephone number for Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system, which recorded a total of 482 incoming calls, amounting to an aggregate call duration of 1,133 minutes. (Reed Decl. ¶ 13.)

The Notice Plan achieved approximately 80% reach among likely Class Members, on average 3.3 times each, which was greater than the 2.5 times reach the Notice Plan anticipated. (Reed Decl., ¶ 3.)  In total, Kroll received 111,388 valid claims. (Reed Decl. ¶¶ 20, 24.) This is consistent with the number of claims Kroll predicted, which included a scenario of 100,000 claims. (Vasquez Decl. ¶ 14.)  The 108,976 class members who submitted a valid claim without proof will receive a payment of $4.50 per household. (SA § 4.1.)  The 2,412 class members who submitted a valid claim with proof will receive a minimum of $8.00 per household, or if proof submitted is more than $8.00, then $0.15 per unit purchased shown in the proof up to twenty dollars ($20.00) maximum per household. (*Id.*)

Importantly, there were no requests for exclusion and not a single objection was made to the Settlement. (Reed Decl. ¶¶ 16-17; Vasquez Decl. ¶ 23.)  This included no objections from the Attorneys General of all 50 states and its territories, or the U.S. Attorney General, all of whom

were given CAFA notice. (*See id.*)  The positive response and anticipated claims rate confirms the success, strength, and adequacy of the Notice Plan in favor of final approval.

## IV.    LEGAL STANDARD FOR FINAL APPROVAL

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, a class action may not settle without court approval. Fed. R. Civ. P. 23(e).

Rule 23(e)(2) of the Federal Rules of Civil Procedure states that the district court may only approve the settlement if "it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). Courts within the Ninth Circuit apply what is commonly known as the *Churchill* factors to determine whether the Settlement meets the standard of Rule 23(e)(2) which balance: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."  *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). While considering all these interests, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

## V.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS

Plaintiffs ask this Court to confirm certification of a nationwide class for settlement purposes under Rule 23. The Settlement Class comprised all persons 18 and older in the United States, including U.S. territories, who during the Class Period purchased one or more of the Class Products in the United States for personal use, and not for resale or distribution. (SA ¶ 1.6.)

The Court previously certified the Settlement Class, finding that it was preliminarily "fair, reasonable, adequate . . . [and] meets all applicable requirements of law, including Federal Rule of Civil Procedure 23, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715." (ECF No. 122.) "Nothing material has changed on this score since preliminary approval," and "[n]o class member or party has challenged the propriety of class certification." *Pennington v. Tetra Tech EC, Inc.*, 2022 WL 899843, at *4 (N.D. Cal. Mar. 28, 2022). Accordingly, the Court should "certif[y] a final settlement class" and "confirm[] the appointment" of the Class Representatives and Class Counsel. *See id.*

## VI.    THE SETTLEMENT SATISIFIES RULE 23(e)(2)

A consideration of the Rule 23(e)(2) requirements and *Churchill* factors shows the Settlement is fair, reasonable, and adequate and should be approved.

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Duration of Further Litigation.

"In determining whether the settlement is fair, reasonable, and adequate" the Court first "balance[s] the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp*, 283 F. Supp. 3d at 831-32. (citing *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014)). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at 832 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Plaintiffs and their counsel believe the theory underlying liability in this case was and is strong on the merits and believe that this Court was inclined to agree. (*See, e.g.,* ECF No. 40, at 4

(referring to Defendants' arguments against liability as "borderline silly").)  Nevertheless, the case was not without its risks.

At the time of the Settlement, the case was on the footsteps of trial just two months away. Plaintiff Wallenstein faced the risk the California Class could lose at trial and recover nothing—as has happened in seemingly meritorious consumer fraud class actions that have gone to trial in California with judgments returned for defendants. *See Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.), ECF No. 327 (entering judgment for all defendants); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.), ECF No. 520 (entering judgment for defendants); *cf. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.), ECF No. 285 and 310 (declaring mistrial and decertifying class). Such a result would have seriously impacted the likelihood of success of the other pending actions in New York, Illinois and Florida, or any other states. Here, the Settlement "achieves a definite and certain result for the benefit of the Settlement Classes," making it "preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay, and cost" and weighs in favor of approval. *See Donald v. Xanitos, Inc.*, 2017 WL 1508675, at *2 (N.D. Cal. Apr. 27, 2017); *see also Rieckborn v. Velti, PLC, et al.*, 2015 WL 468329, at *5 (N.D. Cal. Feb. 3, 2015) (the "first two [*Churchill*] factors weigh in favor of approval" where further "litigation is likely to be costly and time-intensive, with no guarantee of a more beneficial outcome for class members as a result.").

### 2.    The Risk of Maintaining Class Action Status Through Trial.

Continued litigation of this matter would have included trial and appeal and further litigation would have significantly delayed any relief to Class Members. This factor also favors approval. *See Watkins v. Hireright, Inc.*, 2016 WL 1732652, at *7 (S.D. Cal. May 2, 2016) ("The Court agrees with the parties that the proposed Settlement eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed Settlement."). In addition, Plaintiff Wallenstein faced the reality that a "district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009);

*see also Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.), ECF No. 285 and 310 (declaring mistrial and decertifying class). Thus, the fact that the Court had certified the California Class was not necessarily the end of the line and Plaintiffs risked facts and evidence that could have been revealed to decertify the class.

### 3.  The Settlement Benefit is Fair, Adequate and Reasonable

"Assessing the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832 (citing *Rodriguez*, 563 F.3d at 965. A settlement that "[a]lso provides for injunctive relief" is an important consideration in evaluating its benefit, since "class members that choose to continue doing business with [the defendant] will benefit from this aspect as well." *See Knapp*, 283 F. Supp. 3d at 833.

Here, Plaintiffs and Class Counsel secured both a direct monetary benefit and a label change. The $10 million direct monetary benefit was significant, meaningful and reasonable in relation to the risk and potential trial damages for the certified California Class and Defendants' total potential liability nationwide.  Plaintiffs' damages model produced a premium of just $0.15/box that consumers overpaid for the cracker because of the alleged misrepresentation. (Vasquez Decl. ¶¶ 15-17.)  When applying Plaintiff's price premium to the total sales in California, the price premium damages to the California Class would have produced damages of approximately $7,626,546, assuming that the jury were to accept Plaintiffs' damages model in full. (*Id.* ¶ 17.)  These damages are significantly *less* than the $10 million fund achieved by the Settlement. In fact, the $10 million Settlement Fund represents about 131% of the approximately $7.6 million Plaintiffs could have recovered at trial for the California Class. (*Id.*)

Extrapolating Plaintiff's damages in the California action to the nationwide Settlement Class (using California's 12% population), hypothetical price premium damages on behalf of a nationwide class here are approximately $63 million, such that the $10 million common fund represents a recovery of about 16% of the total potential damages to a nationwide class.  (*Id.* ¶ 18.)  District courts have approved settlements as being in good faith for payment of much lower

percentage of a defendants' potential liability. *McCabe v. Six Continents Hotels, Inc.*, 2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) (approving class settlement representing between 0.3% and 2% of potential recovery); *see also Heim v. Heim*, 2014 WL 1340063, at *5, *6 (N.D. Cal. Apr. 2, 2014) (citing *Chevron Envt'l. Mgmt. Co. v. BKK Corp.*, 2013 WL 5587363, at *3 n.2 (E.D. Cal. Oct. 10, 2013) (recognizing settlement representing less than 3% of total clean-up costs was a good faith settlement)); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.") (quotation omitted).

But even so, there is likely no single forum in which this case could be brought to trial on a nationwide basis. *See*, *e.g.*, *Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-94 (9th Cir. 2012) ("Nationwide class certification under the laws of multiple states can be very difficult for plaintiffs' counsel."). Instead, Class Counsel (or other attorneys) would have to file and prosecute actions in all other states which would cost the other state classes millions of dollars to prosecute, be inherently risky, and continue for years. (Vasquez Decl., ¶ 19.) Even then it might be impossible to get relief for consumers in some states, such as states where class actions are not permitted, or individual showings of reliance are required.

### 4. The Extent of Discovery Completed and Procedural Posture

"The extent of discovery completed and the state of the proceedings at the time of settlement is a strong indicator of whether the parties have sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291(9th Cir. 1992). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (internal quotation marks and citation omitted). "For that reason, '[a] settlement following sufficient discovery and genuine arms-length negotiation is

*presumed fair.*" *Id.* at 528.

Here, the Parties litigated the case for two years before reaching the Settlement. The workup included motion practice on the pleadings, extensive fact discovery including the review of over 102,000 pages of documents produced by Defendants, eight (8) subpoenas, and seven (7) percipient witness depositions, expert reports and depositions, answering a petition to appeal, opposing summary judgment, and two mediations before separate retired judges before reaching an agreement in principal at a third session. (Vasquez Decl. ¶¶ 4-9, 20.) The only remaining step was trial.

Because fact and expert discovery were completed and only summary judgment and trial remained, "the parties ha[d] sufficient information to make an informed decision about settlement." *Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted). This factor favors preliminary approval. *See Allen v. Similasan Corp.*, 2017 WL 1346404, at *4 (S.D. Cal., Apr. 12, 2017) (factor favored approval where "Plaintiffs engaged in substantial discovery and negotiations" and "briefed, and the Court has ruled on, [] motions to dismiss . . . [and] a motion for class certification"); *Arnold v. DMG Mori USA, Inc.*, 2022 WL 18027883, at *2 (N.D. Cal., Dec. 30, 2022) (where "the parties participated in two days of private mediation, and ultimately reached a settlement in principle after a full-day conference facilitated by a magistrate judge," this "establishes that the settlement agreement was negotiated at arm's length, which weighs in favor of final approval") (internal record citations omitted); *Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (factor supported final approval where plaintiff "conduct[ed] extensive discovery and investigation (before and after class certification), reviewing approximately 25,000 pages of [Defendant's] documents, and participating in three separate rounds of settlement negotiations") (citation omitted).

### 5. The Experience and Views of Counsel

The Ninth Circuit has "held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome

in litigation.'" *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)). "Generally, '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Allen*, 2017 WL 1346404 at *5 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *accord Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience).

Here, Class Counsel has considerable experience in mass torts and consumer class actions, including those involving false and misleading food labels. (Vasquez Decl. ¶ 25.)  Through this experience, Class Counsel has been exposed to a wide variety of information about these types of claims and defenses, and ultimately the potential upside and risks attendant to this case, to endorse the Settlement. (*Id.*)  Accordingly, this factor favors preliminary approval. *See Manner v. Gucci*, 2016 WL 1045961, at *7 (Mar. 16, 2016) ("[G]iving the appropriate weight to class counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.").

### 6.  Governmental Participation

"There is no governmental participant in this case, so this factor is neutral."  *Allen*, 2017 WL 1346404, at *5. In addition, the Class Administrator notified officials of the proposed settlement pursuant to CAFA, and no government entity raised an objection. (Reed Decl. ¶¶ 5, 16-17) (no state attorney general objections).

### 7.  Class Member Reaction was Positive

Class Notice reached 80% of the millions of potential class members that purchased Wheat Thins in the United States. (Reed Decl. ¶ 3.)  Out of the millions of class members that received notice, **not a single person objected** to the Settlement, and **no one elected to Opt-Out**. (Reed Decl. ¶¶ 16-17, Vasquez Decl. ¶¶ 22-23.) The Class Administrator calculated 111,388 valid claims, without 2,412 of those claims submitted with proof of purchase. (Reed Decl. ¶¶ 20, 24.)

This response strongly favors final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members," *Larsen*, 2014 WL 3404531,

at *5 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529)). Courts "appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *id.* (quoting *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *15 (N.D. Cal. Sept. 22, 2009)); *see also McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *6 (Apr. 8, 2022) ("the Claims Administrator's notice program achieved an overwhelmingly positive reaction from the class" where "[o]nly 46 exclusions and one objection were filed") (citation omitted); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) (citing *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.")); *Zepeda v. PayPal, Inc.*, 2017 WL 1113943, at *15 (N.D. Cal. Mar. 24, 2017) (citing *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) ("The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered.")); *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *2, *8 (N.D. Cal. June 26, 2017) (approval favored where "only eight objections and one request for exclusion were received out of the millions of class members receiving notice").)

## VII.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

In addition to all the requirements of Rule 23(e) and the *Churchill* factors, the Settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties" and "the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Knapp*, 283 F. Supp. 3d at 831 (quoting *Officers for Justice*, 688 F.2d at 625).

### A.  The Monetary Relief is Fair in Relation to Potential Damages

Plaintiffs and Class Counsel secured direct monetary benefits of $10 million for the Settlement Class, which is reasonable in relation to the potential damages in this case. Plaintiffs' damages model suggested actual damages of no more than about $0.15 per unit based on the price premium found applied to Class Products' average price.

Without proof, Class Members will be entitled to recover $4.50, which assumes 30 boxes purchased over a five-year period at the average rate of 6 boxes per year the average consumer

purchases. (Vasquez Decl. ¶ 16.) This likely exceeds many Class Members' actual damages since many may not have purchased with that frequency for the entire length of time. Moreover, with an average price of about $4.65 per unit, the $4.50 average recovery without proof of purchase represents a near full refund for a box of Wheat Thins, which is significant when the evidence shows that consumers only paid $0.15/box more for Wheat Thins because of the challenged representation. Thus, the monetary relief is fair in relation to each consumer's potential damages. *See Winters I*, 2020 WL 5642754, at *4 (Where "Class Members who file for monetary relief are likely on average to receive approximately $17.70, which represents a 31% refund on the purchase price of the product," concluding that "monetary compensation and the stipulated injunctive relief offered in the Settlement Agreement is sufficient for approval.").

### B. The Label Change is Appropriate and Meaningful

In addition to the monetary relief achieved, the Settlement corrects the alleged mislabeling of Wheat Thins. Courts recognize that "[t]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes because it benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). The label change obtained here is especially noteworthy because Plaintiffs have obtained through litigation Defendants' agreement to modify its business practices they had implemented for decades in accordance with Plaintiffs' allegations that labeling "100% WHOLE GRAIN" was false and misleading.

### C. The Attorneys' Fees, Costs, and Service Awards are Reasonable

In evaluating the fairness of a settlement, Rule 23(e)(2)(C)(iii) instructs courts to consider "the terms of any proposed award of attorney's fees, including timing of payment." Here, Class Counsel seeks an award of attorneys' fees amounting to 33 1/3% of the Settlement Fund, in the amount of $3,33,333, as well as reimbursement of reasonable litigation costs in the amount of $ 587,577.05. (ECF No. 126.) The Settlement Agreement includes a provision whereby the Class

Administrator pays Class Counsel the amount of attorneys' fees and costs awarded by the Court within twenty-one (21) calendar days from entry of the Final Settlement Approval Order, without regard to the filing of any appeals, or any other proceedings which may delay the Effective Date. (SA ¶ 3.2.) However, if the Settlement does not become final or is overturned on appeal, Class Counsel shall immediately return in full the attorneys' fees and expenses paid to them. (*Id.*) Consistent with this Court's Standing Order, Plaintiffs request that the Court withhold 10% of the attorneys' fees granted at final approval until after the Post-Distribution Accounting has been filed.

As detailed more fully in the Memorandum in support of Plaintiffs' Motion for Attorneys' Fees, Costs and Service Awards filed June 6, 2025 (ECF No. 126), the requested fee is 33 1/3% of the total fund, which is consistent with the Ninth Circuit precedent and the practice in this District in cases like this. *Zamora v. Lyft, Inc.*, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018) (citing *Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 WL 12976106, at *4 (N.D. Cal Aug. 20, 2015) (Chhabria, J.) ("In this District, fee awards of approximately 33 1/3% are typical for settlements up to $10 million.").) The requested fee represents approximately 1.10 multiplier of counsel's reasonable lodestar of $3,019,150, which district courts in consumer class actions have found appropriate. *McMorrow*, 2022 WL 1056098, at *8 (["T]he quality of Class Counsel's representation and benefit obtained by the class, among other factors, support the modest 1.54 multiplier to Plaintiffs' lodestar and justify the fee award of 33.3%.") (citations omitted). The reasonableness of the attorneys' fees is further supported by the fact that no Class Member or Defendant has objected to the fee request, or any other aspect of the Settlement, and none requested to be excluded from the Settlement. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 478 (S.D.N.Y. 2013) ("[N]o Class Member objected to Class Counsel's request for 33% of the fund, which also provides support for Class Counsel's fee request").

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (a) granting final certification of the Settlement Class; (b) confirming final appointment of Fox Law,

APC as Class Counsel and Plaintiffs as Class Representatives; (c) finding Settlement fair, reasonable and adequate; (d awarding Plaintiffs' requested reasonable attorneys' fees, costs, and service awards; (e) directing the parties to undertake the obligations set forth in the Settlement Agreement; (f) entering Final Judgment; and (g) maintaining jurisdiction over this matter for purpose of enforcing the Final Judgment.

Dated: November 28, 2025

**FOX LAW. APC**

**COURTNEY VASQUEZ**
courtney@foxlawapc.com
*Attorneys for Plaintiff, the California Class, and the Settlement Class*